UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DEBRA HALL, Individually and on Behalf of All Others Similarly Situated, <br><br>                          Plaintiff, <br><br>        vs. <br><br> THE CHILDREN'S PLACE RETAIL STORES, INC., et al., <br><br>                          Defendants. | Civil Action No. 1:07-cv-08252-SAS <br><br> <u>CLASS ACTION</u> |
| DAVID SALKIN, Individually and on Behalf of All Others Similarly Situated, <br><br>                          Plaintiff, <br><br>        vs. <br><br> THE CHILDREN'S PLACE RETAIL STORES, INC., et al., <br><br>                          Defendants. | Civil Action No. 1:07-cv-08708-SAS <br><br> <u>CLASS ACTION</u> |

MEMORANDUM IN SUPPORT OF THE MOTION OF LABORERS PENSION TRUST
FUND FOR NORTHERN NEVADA FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL

**I.     PRELIMINARY STATEMENT**

Presently pending before this Court are at least two-related securities class action lawsuits (the "Actions") brought on behalf of all purchasers of The Children's Place Retail Stores, Inc. ("The Children's Place" or the "Company") securities between August 3, 2006 and August 23, 2007, inclusive (the "Class Period"). The Actions allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78) and the Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor Laborers Pension Trust Fund for Northern Nevada ("Northern Nevada Laborers Fund") hereby moves this Court for an Order to: (i) consolidate the Actions; (ii) appoint Northern Nevada Laborers Fund as Lead Plaintiff in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve Northern Nevada Laborers Fund's selection of the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") to serve as Lead Counsel.

This motion is made on the grounds that Northern Nevada Laborers Fund is the most adequate plaintiff, as defined by the PSLRA. Northern Nevada Laborers Fund is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.,* No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *10 (S.D.N.Y. July 15, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs). Moreover, as an institutional investor, Northern Nevada Laborers Fund is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

During the Class Period, Northern Nevada Laborers Fund incurred a substantial $53,682.93 loss on its transactions in The Children's Place shares. *See* Alba Decl., Ex. B.[1] To the best of its knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, Northern Nevada Laborers Fund, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.   FACTUAL BACKGROUND[2]

The Children's Place, through its subsidiaries, operates as a specialty retailer of merchandise for children from newborn to ten years of age. The Company designs, contracts to manufacture, and sells apparel and accessories, and other children's-oriented merchandise under The Children's Place and Disney Store brand names.

The complaint charges The Children's Place and certain of its officers and directors with violations of the Exchange Act. According to the complaint, during the Class Period, defendants issued materially false and misleading statements that misrepresented and failed to disclose: (i) that the Company was experiencing difficulties meeting certain deadlines for the remodeling and maintenance of its Disney stores and Disney was not satisfied with the Company's performance under their agreement; (ii) that, as a result of the Company's performance issues, the Company's exclusive ability to contract, manufacture, source, offer and sell merchandise featuring Disney-

---

[1] References to the "Alba Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr., dated November 20, 2007, and submitted herewith.

[2] These facts are drawn from the allegations in the complaint entitled *Debra Hall vs. The Children's Place Retail Stores, Inc., et al.,* Civil Action No. 1:07-cv-08252-SAS (the "*Hall* Action").

branded characters, past, present and future was at risk of being materially altered and/or lost completely; and (iii) as a result of the foregoing, Defendants lacked a reasonable basis for their positive statements about the Company, its prospects and revenue growth.

On August 23, 2007, the Company announced, among other things, its preliminary fiscal 2007 second quarter financial results, the Company's revised earnings guidance and an update regarding its license agreement with the Walt Disney Company. Specifically, the Company revealed that it would no longer have an exclusive license agreement with Disney and that certain executives violated Company policies and procedures with regard to the Company's stock option granting process. In response to this announcement, shares of the Company's common stock fell $5.59 per share, or 17%, to close at $27.43 per share, on heavy trading volume.

### III.  ARGUMENT

#### A.  The Actions Should Be Consolidated for All Purposes

The Actions each assert class claims on behalf of The Children's Place shareholders for alleged violations of the Exchange Act. The Actions name similar defendants (*i.e.*, the officers and directors of The Children's Place) and involve the same factual and legal issues. The Actions are each brought by shareholders of The Children's Place during the relevant time period who were injured by the defendants' fraud that was perpetrated through the issuance of materially false and misleading statements. Consolidation is appropriate where there are actions involving common questions of law or fact. *See* Fed. R. Civ. P. 42 (a); *see also Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

### B. Northern Nevada Laborers Fund Should Be Appointed Lead Plaintiff

#### 1. The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a lead plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the *Hall* Action caused the first notice regarding the pendency of these Actions to be published on *Business Wire*, a national, business-oriented newswire service, on September 21, 2007. *See* Alba Decl., Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class who the Court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

        **2.**      **Northern Nevada Laborers Fund Satisfies the "Lead Plaintiff" Requirements of the Exchange Act**

          **a.**      **Northern Nevada Laborers Fund Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on November 20, 2007. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice on September 21, 2007, Northern Nevada Laborers Fund timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Northern Nevada Laborers Fund has duly signed and filed a certification stating that it is willing to serve as a representative party on behalf of the class. *See* Alba Decl., Ex. C. In addition, Northern Nevada Laborers Fund has selected and retained competent counsel to represent itself and the class. *See* Alba Decl., Ex. D. Accordingly, Northern Nevada Laborers Fund has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and approval of selection of Lead Counsel as set forth herein, considered and approved by the Court.

          **b.**      **Northern Nevada Laborers Fund Is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA**

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately

benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Northern Nevada Laborers Fund, as an institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See id*.

### c. Northern Nevada Laborers Fund Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Alba Decl., Ex. C, Northern Nevada Laborers Fund incurred a substantial $53,682.93 loss on its transactions in The Children's Place shares. *See* Alba Decl., Ex. B. Northern Nevada Laborers Fund thus has a significant financial interest in this case. Therefore, Northern Nevada Laborers Fund satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).

### d. Northern Nevada Laborers Fund Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.  *See Lax v. First Merchants Acceptance Corp.*, No. 97-C-2175, 1997 U.S. Dist. LEXIS 11866, at *20, (N.D. Ill. Aug. 6, 1997).  Northern Nevada Laborers Fund satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  *See Sofran v. Labranche & Co.,* 220 F.R.D. 398, 402 (S.D.N.Y. 2004) ("The possibility of factual distinctions between the claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact").  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See Impath,* 2004 U.S. Dist. LEXIS 13898, at *18.

Northern Nevada Laborers Fund satisfies this requirement because, just like all other class members, it: (1) purchased The Children's Place shares during the Class Period; (2) was adversely affected by defendants' false and misleading statements; and (3) suffered damages as a result

thereof. Thus, Northern Nevada Laborers Fund's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Northern Nevada Laborers Fund to represent the class to the existence of any conflicts between the interest of Northern Nevada Laborers Fund and the members of the class. The Court must evaluate adequacy of representation by considering: (i) whether the class representatives' claims conflict with those of the class; and (ii) whether class counsel is qualified, experienced, and generally able to conduct the litigation. *See In re Global Crossing Sec. & ERISA Litig.*, No. 02 MD 1472 (GEL), 2004 U.S. Dist. LEXIS 23946, at *53 (S.D.N.Y. Nov. 23, 2004).

Here, Northern Nevada Laborers Fund is an adequate representative of the class. As evidenced by the injuries suffered by Northern Nevada Laborers Fund and the class, the interests of Northern Nevada Laborers Fund are clearly aligned with the members of the class, and there is no evidence of any antagonism between Northern Nevada Laborers Fund's interests and those of the other members of the class. Further, Northern Nevada Laborers Fund has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Northern Nevada Laborers Fund's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Northern Nevada Laborers Fund *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### C. The Court Should Approve Northern Nevada Laborers Fund's Choice of Counsel

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard,

Northern Nevada Laborers Fund has selected the law firm of Coughlin Stoia as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions, including serving as lead counsel in *In re Enron Corp. Secs. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which represent the largest recovery ever obtained in a shareholder class action. *See* Alba Decl., Ex. D. Specifically, the court in *Enron* stated:

> "The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit."

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, H-01-3624, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006).

Accordingly, the Court should approve Northern Nevada Laborers Fund's selection of counsel.

## IV.   CONCLUSION

For all the foregoing reasons, Northern Nevada Laborers Fund respectfully requests that the Court: (i) consolidate the Actions; (ii) appoint Northern Nevada Laborers Fund as Lead Plaintiff in the Actions; (iii) approve its selection of Lead Counsel as set forth herein; and (iv) grant such other relief as the Court may deem just and proper.

DATED:  November 20, 2007            COUGHLIN STOIA GELLER
                                     RUDMAN & ROBBINS LLP


                                           /s/ *Mario Alba Jr.*
                                          MARIO ALBA JR.

- 9 -

                          SAMUEL H. RUDMAN
                          DAVID A. ROSENFELD
                          MARIO ALBA JR.
                          58 South Service Road, Suite 200
                          Melville, NY  11747
                          Telephone:  631/367-7100
                          631/367-1173 (fax)

                          [Proposed] Lead Counsel for Plaintiffs

I:\Childrens Place\LP Motion\LP Memo.doc

## CERTIFICATE OF SERVICE

I, Mario Alba Jr., hereby certify that on November 20, 2007, I caused a true and correct copy of the attached:

> Notice of Motion for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel;
>
> Memorandum in Support of the Motion of Laborers Pension Trust Fund for Northern Nevada for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel; and
>
> Declaration of Mario Alba Jr. in Support of the Motion of Laborers Pension Trust Fund for Northern Nevada for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel,

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to any additional counsel.

*/s/ Mario Alba Jr.*
Mario Alba Jr.

CHILDREN'S PLACE
Service List - 11/16/2007   (07-0201)
Page 1 of 1

**Counsel For Defendant(s)**

Richard P. Swanson
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
 212/715-1179
 212/715-1399 (Fax)

Michael J. Gilbert
Dechert LLP
30 Rockefeller Plaza
New York, NY 10112
 212/698-3500
 212/698-3599 (Fax)

Jonathan D. Polkes
Anthony J. Albanese
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153-0119
 212/310-8000
 212/310-8007 (Fax)

**Counsel For Plaintiff(s)**

Evan J. Smith
Brodsky & Smith, LLC
240 Mineola Blvd., 1st Floor
Mineola, NY 11501
 516/741-4977
 516/741-0626 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Mario Alba, Jr.
Coughlin Stoia Geller Rudman & Robbins LLP
58 South Service Road, Suite 200
Melville, NY 11747
 631/367-7100
 631/367-1173 (Fax)

Richard A. Maniskas
Schiffrin Barroway Topaz & Kessler, LLP
280 King of Prussia Road
Radnor, PA 19087
 610/667-7706
 610/667-7056 (Fax)