UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK

---

DEBRA HALL, Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,

    v.

THE CHILDREN'S PLACE RETAIL
STORES, INC., et al.,

                Defendants.

---

No. 07-CV-8252-SAS

**(Consolidated)**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EZRA DABAH'S MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM

Robert J. Jossen
Michael J. Gilbert
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112-2200
(212) 698-3500

*Attorneys for Defendant Ezra Dabah*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

ARGUMENT ............................................................................................................ 4

I.    PLAINTIFF FAILS TO STATE A CLAIM AGAINST DABAH FOR
      VIOLATING § 10(b) OF THE EXCHANGE ACT AND RULE 10B-5 .......................... 5

      A.    Plaintiff Fails to Allege Sufficient Facts Evidencing Material
            Misrepresentation .................................................................................. 6

      B.    Plaintiff Fails to Allege Sufficient Facts Evidencing Scienter ............................ 10

II.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST DABAH FOR
      VIOLATING § 20(a) OF THE EXCHANGE ACT ........................................................ 13

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Acito v. IMCERA Group, Inc.,*
    47 F.3d 47 (2d Cir. 1995)..........................................................................2, 10, 12

*In re Axis Capital Holdings Ltd. Sec. Litig.,*
    456 F. Supp. 2d 576 (S.D.N.Y. 2006)...................................................................12

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (U.S. 2007)...................................................................................4

*In re Bisys Sec. Litig.,*
    397 F. Supp. 2d 430 (S.D.N.Y. 2005)..................................................................13

*Boguslavky v. Kaplan,*
    159 F.3d 715 (2d Cir. 1998).................................................................................14

*Caiafa v. Sea Containers Ltd.,*
    525 F. Supp. 2d 398 (S.D.N.Y. 2007)..................................................................10

*Cantor Fitzgerald Inc. v. Lutnick,*
    313 F.3d 704 (2d Cir. 2002)...................................................................................4

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994)................................................................................................6

*Chill v. General Elec. Co.,*
    101 F.3d 263 (2d Cir. 1996).......................................................................5, 12, 13

*Davidoff v. Farina,*
    No. 04-CV-7617-NRB, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ...........12

*In re Duetsche Telekom AG Sec. Litig.,*
    No. 00-CV-9475-SHS, 2002 WL 244597 (S.D.N.Y. Feb. 20, 2002) ................14

*Dresner v. Utility.com, Inc.,*
    371 F. Supp. 2d 476 (S.D.N.Y. 2005)...................................................................5

*Dura Pharms., Inc. v. Broudo,*
    544 U.S. 336 (2005)................................................................................................5

*In re eSpeed, Inc. Sec. Litig.,*
    457 F. Supp. 2d 266 (S.D.N.Y. 2006).............................................................10, 11

*Ganino v. Citizens Utils. Co.,*
    228 F.3d 154 (2d Cir. 2000)..................................................................................6, 8

*Halperin v. eBanker USA.com, Inc.,*
    295 F.3d 352 (2d Cir. 2002)......................................................................................9

*Hayden v. County of Nassau,*
    180 F.3d 42 (2d Cir. 1999)......................................................................................15

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001)........................................................................10, 11, 12

*In Re Razorfish, Inc. Sec. Litig.,*
    No. 00-CV-9474-JSR, 2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001) .............................14

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004)......................................................................................9

*Salomon Analyst Winstar Litig.,*
    No. 02-CV-6171-GEL, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)................................12

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.,*
    75 F.3d 801 (2d Cir. 1996)........................................................................................5

*Shields Citytrust Bancorp, Inc.,*
    25 F.3d 1124 (2d Cir. 1994)..................................................................................8, 10

*In re Sterling Foster & Co. Sec. Litig.,*
    222 F. Supp. 2d 289 (E.D.N.Y. 2002) ........................................................................5

*Stevelman v. Alias Res. Inc.,*
    174 F.3d 79 (2d Cir. 1999)......................................................................................13

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    128 S. Ct. 761 (2008)...............................................................................................6

*Tellabs, Inc. v. Makor Issuers & Rights, Ltd.,*
    127 S. Ct. 2499 (2007)..........................................................................................4, 5

*In re Time Warner Sec. Litig.,*
    9 F.3d 259 (2d Cir. 1993)...................................................................................10, 11

*In re Worldcom, Inc. Sec. Litig.,*
    294 F. Supp. 2d 392 (S.D.N.Y. 2003)..................................................................12, 13

- iii -

**Statutes, Regulations & Rules**

15 U.S.C. § 78j(b) (Section 10(b))...................................................................................*passim*

15 U.S.C. § 78t(a) (Section 20(a)) ...........................................................................1, 13, 14

15 U.S.C. § 78u-4(b) ...............................................................................................................2

15 U.S.C. § 78u-4(b)(2) ...................................................................................................4, 14

15 U.S.C. § 78u-5(c)(1)(A).............................................................................................8, 9

17 C.F.R. § 240.10b-5 (Rule 10b-5) ..................................................................*passim*

Fed. R. Civ. P. 9(b) ..........................................................................................................2, 4

Fed. R. Civ. P. 12(b)(6)...................................................................................................1, 4

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted on behalf of Ezra Dabah, in support of his motion to dismiss the Consolidated Amended Class Action Complaint (the "Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted.

The Amended Complaint alleges, in two counts, violations of the securities laws against The Children's Place Retail Stores, Inc. ("Children's Place" or "the Company"), its former Chief Executive Officer ("CEO"), Ezra Dabah, and its former Senior Vice President and Chief Financial Officer (and current Executive Vice President of Finance and Administration), Susan Riley. Lead plaintiff, Laborers Pension Trust Fund for Northern Nevada (hereinafter "Plaintiff"), purports to represent a class of purchasers of Children's Place common stock during the class period, between March 9, 2006 and August 23, 2007.[1]

The gravamen of the Amended Complaint is that Defendants made material misrepresentations about the status of the Children's Place's dealings with the Walt Disney Company ("Disney") following the Company's 2004 acquisition of rights to operate the "Disney Store" chain. In essence, the Amended Complaint alleges that Defendants understated the issues that routinely arose between the Company and Disney during the course of their relationship. Plaintiff also separately attacks the Company's disclosures regarding its practices for the granting of stock options. The misstatements were allegedly included in the Company's filings

---

[1]    Count I alleges a violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, with respect to certain statements made before and during the class period. Count II alleges a violation of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against Riley and Dabah as "control persons" of the Children's Place.

with the Securities and Exchange Commission, in press releases, and in statements made by Company representatives, including Dabah, during conference calls with investors.

When measured against the familiar governing pleading standard of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b), and Federal Rule of Civil Procedure 9(b), it is clear that Plaintiff has failed to plead facts that would even approach establishing several required elements of a Section 10(b) claim – including materiality, scienter and loss causation. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (to state a cause of action under § 10(b) and Rule 10b-5, a plaintiff must plead that, "in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that Plaintiff's reliance on defendant's action caused [plaintiff] injury"). The failure to allege adequately a primary violation in Count I means that Count II must also fail *a fortiori*. Likewise, Plaintiff has not pleaded facts sufficient to establish scienter necessary to support a claim of "control person" liability against Dabah.

Dabah joins in and hereby incorporates the entirety of the Children's Place's and Susan Riley's memorandum of law in support of their motion to dismiss. Dabah submits this separate memorandum of law to highlight Plaintiff's failure to plead facts demonstrating that Dabah made any material misstatements with the requisite scienter.

## FACTUAL BACKGROUND

The Children's Place operates as a specialty retailer of merchandise for children ranging from newborn to ten years of age. Compl. ¶ 2. The Company designs, contracts to manufacture and sells apparel and accessories and other children-oriented merchandise under the Children's Place and Disney Stores brand names. *Id.* In 2004, Children's Place acquired Disney Stores, which sells Disney-related merchandise in malls and shopping centers throughout the country.

Compl. ¶6. Dabah served as CEO of the Children's Place for 16 years, from 1991 until September 2007, when he resigned. Compl. ¶ 4.

The Children's Place's acquisition of the Disney Store represented a significant expansion of the Company's business. Compl. ¶ 38. As a result of the transaction, Children's Place acquired a total of 313 Disney Stores, along with certain other assets used in the Disney Store's business. *Id.* In exchange for the exclusive right to operate Disney Stores in the United States and Canada under a long-term license agreement, the Children's Place agreed to pay Disney $101 million. Compl. ¶ 39. Under the licensing agreement, the Children's Place was obligated to maintain the quality of the Disney Stores; consequently, the Children's Place committed to invest up to $100 million to remodel and upgrade the Disney Stores. *Id.* Under amendments to the licensing agreement in 2006 and 2007, the Children's Place committed to meeting specific goals concerning the remodeling or "refreshing" of each Disney Store within specified time periods. Compl. ¶ 42, ¶ 60. This included converting older Disney Store formats to new store formats – including one named the "Mickey" store – which had to meet Disney's rigorous design standards. Compl. ¶ 51.

Plaintiff alleges that Dabah "created the false impression that the Mickey Store Format was being successfully deployed." Compl. ¶ 83. However, the Amended Complaint itself details numerous statements by Dabah in which he pointedly described various problems related to "deploying" the Mickey Store Format. *See, e.g.,* Compl. ¶¶ 82, 105, 129. As a separate matter, although entirely unrelated to stock options or the Disney agreement, Plaintiff includes allegations related to Dabah's alleged violation of internal company policy requiring him to obtain pre-approval from the Company before pledging shares of Children's Place stock as collateral for a margin loan. S*ee* Compl. ¶8, 102, 130. These allegations provide absolutely no

basis for an inference of scienter. There is *no allegation* that Dabah *sold* any shares, simply that he pledged them. His general interest in maintaining the value of the stock provides no basis to infer a particularized motive to make any misstatement about the Company's business. Indeed, the allegations are entirely unrelated to the Company's financial performance or its financial statements.

## ARGUMENT

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a District Court must accept all factual allegations pleaded in a complaint as true. *Tellabs, Inc. v. Makor Issuers & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). Although the Court does "not require heightened fact pleading of specifics," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007), the Court should "give no credence to plaintiff's conclusory allegations," *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). A complaint arising under the federal securities laws is subject to the "exacting pleading requisites" of the Private Securities Litigation Reform Act (PSLRA). *Tellabs*, 127 S. Ct. at 2504. Among other things, the PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter . . . ." *Id.* In particular, "plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u-4(b)(2)). That stringent standard,[2] the Supreme Court explained in

---

[2]     This action is also governed by Federal Rule of Civil Procedure 9(b), which provides that, in all fraud claims, "the circumstances constituting fraud or mistake must be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." Fed. R. Civ. P. 9(b). Notwithstanding Rule 9(b)'s proscription that the requisite knowledge and intent "may be alleged generally," the Second Circuit holds that "we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Acito*, 47 F.3d at 52. Plaintiff still has the "burden of pleading circumstances that provide at least a minimal factual

*Tellabs*, dictates dismissal of a complaint alleging a violation of § 10(b) and Rule 10b-5 unless the inference of scienter is "cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Id.* at 2505. "[S]peculation and conclusory allegations" do not suffice. *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 813 (2d Cir. 1996).[3]

## I.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST DABAH FOR VIOLATING § 10(b) OF THE EXCHANGE ACT AND RULE 10b-5

To state a cause of action under § 10(b) and Rule 10b-5, a plaintiff must allege (1) a misstatement or omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) which proximately caused the plaintiff's injury.[4] *See Dura Pharms., Inc. v. Broudo*,

---

basis for [its] conclusory allegation of scienter . . . [and] must allege facts that give rise to a strong inference of fraudulent intent." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).

[3]    *See, e.g., Dresner v. Utility.com, Inc.*, 371 F. Supp. 2d 476 (S.D.N.Y. 2005) (dismissing §10(b) claim for failure to plead with particularity)*; In re Sterling Foster & Co. Sec. Litig.*, 222 F. Supp. 2d 289, 308 (E.D.N.Y. 2002) (same).

[4]    Section 10(b), 15 U.S.C. § 78j(b), makes it unlawful:

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b-5, 17 C.F.R. § 240.10b-5, makes it unlawful for any person to use interstate commerce:

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statements of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

544 U.S. 336, 341 (2005).  Among other things, Plaintiff has failed to plead sufficient facts evidencing material misrepresentation or scienter.[5]

### A.    Plaintiff Fails to Allege Sufficient Facts Evidencing Material Misrepresentation

To be liable as a primary violator of Section 10(b) and Rule 10b-5, a defendant must actually make a material false or misleading statement.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768-69 (2008); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994).  No such material misrepresentation has been adequately alleged.

Plaintiff alleges that Defendants fraudulently:  (1) withheld information concerning certain issues arising from the Company's business relationship with Disney; (2) misled investors by making positive statements in this regard; and (3) overstated some reported income figures due to certain stock options backdating practices.  However, nothing in any of Dabah's alleged statements to investors, *see* Compl. ¶¶ 82, 84, 86, 88, 90, 92, 102, 105, 109, 118, 120, 127, 129, constitutes a material misrepresentation.  In the various press releases and conference calls referenced in the Amended Complaint, Dabah and the Company described the difficulties the Children's Place was having meeting certain requirements of its licensing agreement with Disney, difficulties which are not uncommon in a licensing arrangement and which the Company, in an excess of caution, disclosed.  Indeed, Dabah could not have misled investors about the Company's status with Disney because his statements described the very problems Plaintiff alleges were withheld.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 167 (2d Cir.

---

[5]    As set forth in the Company's brief, Plaintiff also fails to allege facts sufficient to establish the requisite element of loss causation.

2000) (under "truth-on-the-market" doctrine, no material misrepresentation occurs if the allegedly withheld information "is already known to the market") (citations omitted).

For example, as alleged in the Amended Complaint, when asked by investors on a conference call about the Company's delays rolling out the Disney Store prototypes, Dabah responded:

> It's not the first time we talk about it. This is why we have changed the design and look forward to roll out a substantially different design beginning in the summer of this year. *So, to address certain issues as it relates to the design, as well as the constructions of the store, we are expediting some of the capital investments that we have made in the stores because we have to make some changes.*
>
> * * *
>
> *The thing that really threw us back, unfortunately, was the fact that we all were not happy with the outcome of the Mickey prototype, which delayed our remodel programs.* So, our intentions were to full force do whatever we can to complete everything we had committed to. *But unfortunately because of the Mickey prototype that was not well received, frankly, both by us as well as the Walt Disney Company, is what threw us off that schedule.* So we look forward to do our very best to complete that program as soon as we possibly can.

Compl. ¶ 105 (emphasis added).

Similarly, on an earlier conference call that occurred the day the putative class was alleged to have commenced, Dabah clearly indicated that the Children's Place was still wrestling with the kinks of the Mickey format, again as articulated in the Amended Complaint itself:

> And as it relates to the Mickey store prototype, *we are in the process of, I would say, tweaking that, or more than tweaking that prototype as we speak to get it somewhat more exciting,* and there has been some changes as to what we think about it. So although the Mickey store prototype is actually performing slightly above the chain, *we are looking to enhance it,* and therefore, *we ratcheted down the remodels to the minimum that we could so that we have the opportunity to kind of tweak it, get it to be more satisfying to all before we roll it out.*

Compl. ¶ 82 (emphasis added).

Finally, on a conference call at the end of the putative class period, in response to a question regarding the Company's progress under its licensing agreement with Disney, Dabah responded:

> As you know, we signed a letter agreement in June, and we bound ourselves to certain deadlines, especially as it relates to '07 remodels and refreshes. *Unfortunately, in view of these deadlines, we were not able to meet, mostly because of circumstances beyond our control.*

Compl. ¶ 129 (emphasis added).

These comments cannot reasonably be read as anything but forthright with regard to the status of the Company's progress under its licensing agreement with Disney. Thus, Plaintiff's allegations that Dabah did not inform investors of the Company's difficulties with Disney are, in fact, refuted by the very comments excerpted in the Amended Complaint. Because the information Dabah allegedly concealed was "already known to the market . . . the misrepresentation cannot then defraud the market." *Ganino*, 228 F.3d at 167. To the extent that Plaintiff is complaining that Dabah should have expressed greater pessimism, that is not warranted by law or the underlying factual situation. *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (officers need not "take a gloomy, fearful, or defeatist view of the future"). At most, Plaintiff is alleging a "forward-looking" claim that is not cognizable under the securities law. *See* 15 U.S.C. § 78u-5(c)(1)(A).[6]

As for the other alleged misrepresentations charged to Dabah, each is either a forward-looking statement protected by the PSLRA's "safe harbor" provision, *see* 15 U.S.C. § 78u-

---

[6]    As highlighted in the Company's brief, the Children's Place repeatedly identified the risk (in its April 14, 2005 Form 10-K, which was incorporated by reference in the Company's subsequent press releases) that its relationship with Disney could be cut off at any time upon a material breach of the licensing agreement. *See* Compl. ¶ 41. As made clear above, Dabah informed investors whenever the Children's Place faced challenges that might suggest a potential breach. *See, e.g.,* Compl. ¶¶ 82, 105, 129.

5(c)(1)(A), or the judicially created "bespeaks caution" doctrine, *see Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002), or is a non-actionable statement of corporate optimism or "puffery," *see Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). *See, e.g.* Compl. ¶¶ 84 ("At Disney Store, we are pleased with the continued positive trend of the business."); 86 ("This is truly an exciting time for The Children's Place. Our first quarter performance reflects the progress we are making toward our 2006 goals . . . ."); 88 ("We are pleased to see our strong sales momentum continue into July . . . ."); 90 ("We are particularly pleased with our first half results, are encouraged by our initial start to the Back-to-School season, and we look forward to the second half of the year."); 92 ("Looking ahead, we are excited about the DVD release of the . . . Little Mermaid platinum edition . . . . Importantly, we are leveraging the ideas and talent across The Children's Place and the Disney Store."); 109 ("we have exchanged proposals and we believe we are making progress"); 118 ("We are extremely excited about the remodel. . . . [W]hat Disney is requiring of us to do is what we want to do as well, so it's a win-win."); 120 ("We are committed to executing on this important remodel program which will contribute to our goal of elevating the guest experience."); & 127 ("We remain cautiously optimistic regarding the second half and are pleased with month-to-date sales trends.").

Finally, as explained in the Company's brief, which Dabah joins in its entirety, Dabah's alleged misrepresentations were immaterial as they concerned unremarkable disputes between business partners. *See Rombach*, 355 F.3d at 173-74 (rejecting fraud claim based on nondisclosure of events that were "consistent with unremarkable circumstances short of financial peril or instability"). Plaintiff attempts to transform these ordinary disputes into something more by pleading "fraud by hindsight." But such attempts have been repeatedly rejected in this circuit.

- 9 -

*See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) (rejecting attempt to plead

fraud by hindsight); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398 (S.D.N.Y. 2007) (same);

*In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 294 (S.D.N.Y. 2006) (Scheindlin, J.) ("'fraud

by hindsight' allegations have long been rejected").

### B.     Plaintiff Fails to Allege Sufficient Facts Evidencing Scienter

As for scienter, Plaintiff seeks to establish this required element by referencing a wholly

irrelevant, unrelated topic – Dabah's pledging of shares of his Children's Place common stock as

collateral for margin loans in his personal stock brokerage account. Compl. ¶ 8. Under

Plaintiff's logic, "Dabah was motivated to engage in the fraudulent scheme detailed herein in

order to protect the value of Children's Place shares he had pledged as collateral for margin

loans." Compl. ¶ 137. In other words, Dabah was motivated to mislead investors in order to

inflate the value of the Children's Place stock he had pledged. However, Dabah's ownership and

pledging of Children's Place shares fails to establish scienter as a matter of law.

Specifically, Plaintiff has failed to allege: (1) facts showing that Dabah "had both motive

and opportunity to commit fraud"; or (2) facts that constitute "strong circumstantial evidence of

conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001)

(quotation omitted). In the Second Circuit, "[m]otive [entails] concrete benefits that could be

realized by one or more false statements and wrongful nondisclosures alleged," while

"[o]pportunity [entails] the . . . likely prospect of achieving concrete benefits by the means

alleged." *Shields*, 25 F.3d at 1130. While courts in the Second Circuit will "often assume that

corporations, corporate officers and corporate directors would have the opportunity to commit

fraud if they so desired," the same does not hold for motives "generally possessed by most

corporate directors and officers." *In re eSpeed*, 457 F. Supp. 2d at 281 (citing *In re Time Warner*

*Sec. Litig.*, 9 F.3d 259, 269 (2d Cir. 1993) and quoting *Kalnit*, 264 F.3d at 139). "[I]nstead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." *Kalnit*, 264 F.3d at 139.  Plaintiff has not done so.

The only allegations in the Amended Complaint that are offered to evidence scienter on the part of Dabah relate to Dabah's "pledging of shares of his common stock as collateral for margin loans in his stock brokerage account at the time that the Company precluded Company insiders from selling shares – the so-called 'black-out period.'" Compl. ¶ 8; *see also* Compl. ¶¶ 102 & 130.  Plaintiff claims that Dabah's violation of company policies on two occasions when "he pledged shares" as collateral to obtain margin loans without "prior approval of the Company's Board," Compl. ¶ 130, demonstrates a strong inference of scienter.[7]  The Amended Complaint alleges that this shows "Dabah was motivated to . . . protect the value of Children's Place shares he had pledged as collateral for margin loans." Compl. ¶ 137.  But this highly innocuous motive – to protect the value of his company's stock, whether pledged or not – is "generally possessed by most corporate directors and officers" and thus insufficient by itself to establish scienter. *In re eSpeed*, 457 F. Supp. 2d at 281; *see also In re Time* Warner, 9 F.3d at 269; *Kalnit*, 264 F.3d at 139.

Indeed, if the general desire of a corporate officer to protect the value of company stock – some of which he owned or had pledged as collateral[8] – then *all* corporate officers holding company stock would possess the requisite scienter for §10(b) and Rule 10b-5 purposes.  *See*

---

[7]    It bears emphasis that, as the Amended Complaint makes clear, pledging shares as collateral for margin loans is perfectly permissible under Company policy, even during a "black-out" period, provided board pre-approval is obtained.  Dabah violated *internal* company policies – but not securities laws – by failing to obtain *pre-approval* before pledging his shares during a black-out period.

[8]    Pledging shares as collateral provides no more interest in seeing share price maintained that does simply owning shares.

- 11 -

*Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996) ("If we accept this as sufficient motive, then we must accept as motive that every publicly-held corporation desires its stock to be priced highly by the market. At that point, the motive requirement becomes meaningless."); *see also In re Worldcom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 412 (S.D.N.Y. 2003) ("General allegations that identify the same motives possessed by virtually all corporate insiders are not sufficient to create a strong inference of fraudulent intent. Plaintiffs cannot, for example, rest solely on allegations that defendants sought to prolong their employment at certain positions, [or] that defendants owned stock . . . .") (citations omitted).

In fact, this Court already has rejected that circumstance as providing sufficient motive for purposes of inferring fraudulent intent: "the law is clear that the desire of individual defendants 'to keep their jobs or increase their compensation by artificially inflating stock price' is not sufficient to establish motive." *In re Axis Capital Holdings Ltd. Sec. Litig.*, 456 F. Supp. 2d 576, 594 (S.D.N.Y. 2006) (citing *Davidoff v. Farina*, No. 04-CV-7617-NRB, 2005 WL 2030501, at *17, n.30 (S.D.N.Y. Aug. 22, 2005)); *see also Acito*, 47 F.3d at 54 ("Plaintiffs' allegations that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit. . . . Incentive compensation can hardly be the basis on which an allegation of fraud is predicated.").

Plaintiff also has failed to plead facts evidencing "strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit,* 264 F.3d at 138. To establish conscious misbehavior, a plaintiff must plead particularized facts, not conclusory allegations, that "point strongly to an inference that defendant harbored an intent to deceive, manipulate or defraud." *Salomon Analyst Winstar Litig.*, No. 02-CV-6171-GEL, 2006 WL 510526, at *7 n.11, *14 (S.D.N.Y. Feb. 28, 2006). To establish recklessness, Plaintiff must allege particularized facts

- 12 -

demonstrating that Dabah's conduct was "highly unreasonable, representing an *extreme departure* from the *standards of ordinary care*." *In re WorldCom*, 294 F. Supp. 2d at 412 (emphasis added). The allegation that Dabah pledged shares without the requisite pre-approval, in violation of *internal company policy*, falls far short of the required showing.

Without evidence of fraudulent intent, the isolated instances of Dabah's failure to comply with internal company policies and similar rules, such as generally accepted accounting principles (GAAP), fails to establish strong circumstantial evidence of conscious misbehavior or recklessness. *See, e.g., In re Bisys Sec. Litig.*, 397 F. Supp. 2d 430, 448 (S.D.N.Y. 2005) (without evidence of fraudulent intent, GAAP violations may simply be the product of "negligence or mismanagement"); *see also Stevelman v. Alias Res. Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) (citing *Chill*, 101 F.3d at 270). Here, Plaintiff has not alleged a single fact that – even if true – could give rise to a reasonable inference that Dabah engaged in anything worse than "negligence or mismanagement" in pledging shares during a blackout period without board pre-approval.

In sum, having failed to allege motive to defraud or strong circumstantial evidence of conscious misbehavior or recklessness, the required element of scienter is not satisfied, and thus Plaintiff's §10(b) claims against Dabah must be dismissed.[9]

## II.  PLAINTIFF FAILS TO STATE A CLAIM AGAINST DABAH FOR VIOLATING § 20(a) OF THE EXCHANGE ACT

The failure of the Amended Complaint to allege a prima facie violation of the securities laws likewise dooms Count II, in which controlling person liability is asserted against Dabah pursuant to Section 20(a) of the Exchange Act. In order to establish a prima facie case of

---

[9]    With regard to the allegations concerning stock options backdating, Dabah relies on and hereby incorporates the arguments for dismissal made in the Company's brief.

liability under § 20(a), a plaintiff must show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) "that the controlling person was in some meaningful sense a culpable participant" in the primary violation. *Boguslavky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (quotation omitted). Plaintiff has not pleaded facts making this showing.

Where a complaint contains no detailed allegations regarding the state of mind of the "control person," a § 20(a) claim must be dismissed for failure to allege culpable participation. *See In re Duetsche Telekom AG Sec. Litig.*, No. 00-CV-9475-SHS, 2002 WL 244597, at *6 (S.D.N.Y. Feb. 20, 2002) ("Culpable participation must be pled to allege control person liability pursuant to Section 20(a) as a consequence of the pleading requirements of the PSLRA that require that where money damages are recoverable 'on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'") (quoting 15 U.S.C. § 78u-4(b)(2)).

As set forth above, this is precisely what Plaintiff has failed to plead with respect to Dabah. For this reason, Plaintiff's § 20(a) claim against Dabah also must be dismissed. *See In Re Razorfish, Inc. Sec. Litig.*, No. 00-CV-9474-JSR, 2001 WL 1111502, at *3 (S.D.N.Y. Sept. 21, 2001) ("first count of the two-count Complaint, alleging securities fraud violations, and the second count, alleging 'control person' liability, must fall" where "Complaint utterly fails to meet the requirements of the PSLRA for alleging even a single actionable false statement, not to mention one made with the requisite scienter").

Finally, given the circumstances alleged in the Amended Complaint, and the fact that this is Plaintiff's second attempt to allege a cause of action, it is respectfully submitted that Plaintiff

should not be afforded leave to replead. *See, e.g., Hayden v. County of Nassau*, 180 F.3d 42, 54

(2d Cir. 1999) (affirming denial of motion for leave to amend dismissed complaint).

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Children's Place's and

Susan Riley's memorandum of law, it is respectfully requested that this Court dismiss with

prejudice the Amended Complaint against defendant Ezra Dabah.


Dated: New York, New York
       March 28, 2008

DECHERT LLP

By:  /s/ Robert J. Jossen
Robert J. Jossen
robert.jossen@dechert.com
Michael J. Gilbert
michael.gilbert@dechert.com
30 Rockefeller Plaza
New York, NY 10112-2200
(212) 698-3500

*Attorneys for Defendant Ezra Dabah*

- 15 -