UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBRA HALL, Individually and on Behalf of All Others Similarly Situated<br><br>                 Plaintiff,<br><br>   v.<br><br>THE CHILDREN'S PLACE RETAIL STORES, INC., et al.,<br><br>                 Defendants. | No. 07 Civ. 8252 (SAS)<br><br>**(Consolidated)** |

**DEFENDANTS THE CHILDREN'S PLACE RETAIL STORES, INC.'S AND SUSAN RILEY'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Jonathan D. Polkes (JP-4265)
David R. Fertig (DF-5068)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendants The Children's Place Retail Stores, Inc., and Susan Riley*

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................................... ii

Preliminary Statement .................................................................................................................. 1

Argument ...................................................................................................................................... 1

I.  Plaintiffs Have Failed to Rebut Defendants' Clear Showing That No §10(b) Claim Lies Based on Defendants' Statements About Disney ....................................................... 1

II. Plaintiffs May Not Recast Their Fraud Claim as One Based on an Alleged "Options Backdating Scheme." .......................................................................................... 8

III. Plaintiffs' Allegations Are, in Any Event, Insufficient to State a §10(b) Claim Based on Options Backdating ............................................................................................ 10

Conclusion .................................................................................................................................. 10

## TABLE OF AUTHORITIES

**CASES**

*Acito v. IMCERA Group, Inc.*,
 47 F.3d 47 (2d Cir. 1995) ....................................................................................... 2, 3, 4

*In re Affiliated Computer Servs. Derivative Litig.*,
 2007 WL 4440920 (N.D. Tex. Dec. 13, 2007) .................................................................. 6

*In re Alstom SA Securities Litigation*,
 406 F.Supp.2d 433 (S.D.N.Y. 2005) .................................................................................. 4

*Babaev v. Grossman*,
 2007 U.S. Dist. LEXIS 13087 (E.D.N.Y. Feb. 26, 2007) .................................................. 4

*In re Bayer AG Sec. Litig.*,
 2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) .................................................................. 6

*Caiafa v. Sea Containers Ltd.*,
 525 F.Supp.2d 398 (S.D.N.Y. 2007) .................................................................................. 4

*Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc.*,
 2007 WL 54534 (S.D.N.Y. Jan. 5, 2007) ........................................................................... 9

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ................................................................................................ 7, 8, 10

*In re eSpeed, Inc. Sec. Litig.*,
 457 F.Supp.2d 266 (S.D.N.Y. 2006) ......................................................................... 4, 7, 8

*In re Elan Corp. Sec. Litig.*,
 2008 WL 839744 (S.D.N.Y. Mar. 27, 2008) ..................................................................... 4

*Geiger v. Solomon-Page Group, Ltd.*,
 933 F.Supp. 1180 (S.D.N.Y.1996) ..................................................................................... 4

*In re Initial Pub. Offering Sec. Litig.*,
 2008 U.S. Dist. LEXIS 24148 (S.D.N.Y. Mar. 26, 2008) ................................................. 6

*Lentell v. Merrill Lynch & Co., Inc.*,
 396 F.3d 161 (2d Cir. 2005) ........................................................................................... 7, 8

*In re NTL, Inc. Sec. Litig.*,
 347 F.Supp.2d 15 (S.D.N.Y. 2004) .................................................................................... 3

*In re Open Joint Stock Co. Sec. Litig.*,
 2006 WL 647981 (S.D.N.Y. March 14, 2006) .................................................................. 4

*In re Openwave Sys. Sec. Litig.*,
    528 F.Supp.2d 236 (S.D.N.Y. 2007)..................................................................................6, 7

*In re Pfizer, Inc. Sec. Litig.*,
    538 F.Supp.2d 621 (S.D.N.Y. 2008).......................................................................................5

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004).....................................................................................................4

**PRELIMINARY STATEMENT**

Defendants TCP and Riley established in their motion to dismiss that Plaintiffs' allegations – which centered on the alleged "Disney debacle" – fail to establish *any* of the elements of a §10(b) claim. Recognizing this, Plaintiffs have retreated from their Disney-based theory and have instead attempted to recast their claim as one based on options backdating. But aside from the fact that Plaintiffs are improperly attempting to amend their Complaint through their opposition brief with this new and unpleaded theory, Plaintiffs allegations fail to state a claim based on options backdating as a matter of law. Moreover, in their effort to overcome Defendants' motion based on their "options backdating" theory, Plaintiffs have offered no basis for sustaining their Disney-based claims. Accordingly, the Complaint must be dismissed.

**ARGUMENT**

**I.  PLAINTIFFS HAVE FAILED TO REBUT DEFENDANTS' CLEAR SHOWING THAT NO §10(B) CLAIM LIES BASED ON DEFENDANTS' STATEMENTS ABOUT DISNEY.**

In their motion, Defendants demonstrated that the allegation that is at the heart of Plaintiffs' Complaint – that Defendants deceived investors about the status of TCP's relationship with Disney – fails to state a viable §10(b) claim. Specifically, Defendants demonstrated that Plaintiffs' Complaint is devoid of particularized facts showing that Defendants' statements about Disney were false or misleading when made, Mot.3-8, that the allegedly "omitted" facts concerning the Disney–TCP relationship were "material," *id.* 8-14, that Defendants made their statements about Disney with scienter, *id*. 15-22, or that Plaintiffs suffered any economic loss resulting from revelation of the allegedly "concealed" facts concerning the Disney–TCP relationship, *id*. 22-24. In their opposition, Plaintiffs half-heartedly attempt to respond, while focusing the bulk of their arguments on a theory of "options backdating fraud" not actually

1

pleaded in the Complaint. As set forth in Defendants' moving papers, however, Plaintiffs' Disney-based "fraud" allegations offer no basis for denying Defendants' motion.

While taking issue with Defendants' argument that the challenged statements about Disney were not false and misleading when made because the supposedly "omitted" facts did not actually exist at the time of the alleged misstatements, Plaintiffs *admit* that the Second Circuit's decision in *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995), holds that "dismissal [i]s warranted" whenever the facts allegedly omitted by a defendant are "not material and there [a]re no allegations that the company reasonably could have predicted an adverse consequence from its actions." Opp.8, n.8. Yet, as demonstrated in Defendants' motion, that is the *very* portrait painted by Plaintiffs' own Complaint because, despite Plaintiffs' rhetoric about TCP's supposed "[in]adequate[ ] perform[ance]" under the Disney agreement, its "tense relationship" with Disney, the fact that Disney and TCP representatives occasionally "butted heads," and the fact that certain Disney stores had fallen into disrepair and/or were not renovated on time, *see* Opp.7, the Complaint is devoid of *any* allegation that Disney *ever* claimed a breach, or threatened to terminate its relationship with TCP, at any time prior to early 2007 when TCP promptly disclosed that fact. *See* ¶¶59, 103, 105, 108. Not only is this evident from the Complaint, *id.*,[1] but Plaintiffs' opposition admits that, prior to the time TCP disclosed Disney's assertion of breach, Disney "did not actually invoke [its] right [to terminate]" but "instead chose to work through the problems with Children's Place." Opp.9.

In an effort to establish that TCP's statements were nevertheless "false" for failing to disclose the Company's "problems" with Disney, Plaintiffs argue that Disney's decision not to

---

[1] Plaintiffs' suggestion that Defendants are "inappropriately ask[ing] this Court to disregard the well-pleaded allegations of the CAC and give *them* the benefit of every favorable inference," Opp.7, is thus demonstrably untrue.

invoke its right to terminate or claim breach "does not mean that the problems alleged in the CAC … were not material or did not exist." Opp.9. But that is *precisely* what Disney's conduct means because, *unless and until Disney articulated its view that there was a breach* of the license agreement, *there was no breach*, and so the facts allegedly omitted from Defendants' otherwise non-actionable statements – *i.e.*, that TCP had "breach[ed] . . . the License Agreement," ¶58, and was "struggling to maintain its relationship" with Disney, ¶7 – did not actually exist.[2] This is precisely why Plaintiffs' claims constitute impermissible fraud by hindsight. As in *Acito*, Plaintiffs essentially suggest that TCP should have been "clairvoyant" in predicting – and in disclosing to the public – that its conduct constituted a breach of the license agreement and rendered termination of the agreement imminent, *when even Disney had not espoused that view or belief.* 47 F.3d at 53. The law does not require this. *See In re NTL, Inc. Sec. Litig.*, 347 F.Supp.2d 15, 26-27, 34 (S.D.N.Y. 2004) ("[w]e have not yet come to the point that a lack of clairvoyance constitutes fraud"). Plaintiffs have thus failed to rebut Defendants' showing that Defendants' otherwise admittedly truthful, innocuous, and accurate statements about Disney were "false and misleading" when made.[3]

Plaintiffs also have failed to rebut Defendants' showing that the allegedly "omitted" facts regarding the Disney–TCP relationship were not "material."[4] In the absence of any claim of

---

[2] Plaintiffs base their argument regarding the materiality of the allegedly "omitted" facts on the premise that TCP had in fact "breached" its license agreement with Disney. *See, e.g.,* Opp.9 (arguing that Disney's failure to terminate "does not undercut Plaintiffs' claims that the Company *breached* the License Agreement" (emphasis added)); *id.* 11 (arguing that "Defendants concealed and downplayed the severity and extent of [the] *breaches* that triggered Disney's right to terminate the License Agreement and endangered the relationship" (emphasis added)); *id.* 12 (arguing that "[a] fair reading of the CAC ... compels the conclusion that the Company's *breaches* were regarded by Disney as much more than mere delays" (emphasis added)).

[3] As the Complaint makes clear, TCP promptly and fully disclosed the existence of Disney's claim of breach in March 2007, so any subsequent Disney-related statements could not possibly have been "false or misleading" when made. ¶108; Mot.12-14.

[4] Plaintiffs make the familiar argument that "[m]ateriality is a mixed question of law and fact and is ... not generally suitable for treatment on a motion to dismiss." Opp.10. However, "[t]he

3

breach or threatened termination by Disney, the alleged "problems" amounted to nothing more than routine business disputes unattended by adverse consequences, which, as a result, were not "material" and required to be disclosed. *Acito*, 47 F.3d at 53; *Rombach v. Chang*, 355 F.3d 164, 173-74 (2d Cir. 2004); *Caiafa v. Sea Containers Ltd.*, 525 F.Supp.2d 398, 410-11, 412-14 (S.D.N.Y. 2007); *In re Open Joint Stock Co. Sec. Litig.*, 2006 WL 647981, at *6 (S.D.N.Y. Mar. 14, 2006).[5] Nor have Plaintiffs rebutted Defendants' showing that the Disney-related statements are immaterial as a matter of law under the PSLRA or the "bespeaks caution" and "puffery" doctrines. *See In re eSpeed, Inc. Sec. Litig.*, 457 F.Supp.2d 266, 280 (S.D.N.Y. 2006).

Plaintiffs contend that these doctrines are inapplicable because Defendants had "no reasonable basis" for their positive statements because, at the time those statements were made, Defendants knew or should have known that TCP's relationship with Disney was in jeopardy. *See* Opp.14. But this is merely a regurgitation of Plaintiffs' argument that TCP was actually in

---

question of materiality may be decided on a motion to dismiss if the alleged omission is 'so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of [its] importance.'" *Geiger v. Solomon-Page Group, Ltd.*, 933 F.Supp. 1180, 1184 (S.D.N.Y.1996); *see also Acito*, 47 F.3d at 53; *In re Elan Corp. Sec. Litig.*, 2008 WL 839744, *12 (S.D.N.Y. Mar. 27, 2008). Moreover, Disney's motives in refraining from declaring a breach prior to early 2007, or from terminating TCP's license agreement, are irrelevant and do not present a fact issue that must be resolved on this motion. *See* Opp.12. As a matter of law, the undisputed fact that Disney did *not* terminate the license agreement or declare a breach before TCP disclosed as much – *for whatever reason* – is sufficient to establish that the alleged "problems" were *not* material. Mot.8-9.

[5] Plaintiffs' reliance on *In re Alstom SA Securities Litigation*, 406 F.Supp.2d 433, 454 (S.D.N.Y. 2005), for the proposition that their claims are "insulated" from a fraud-by-hindsight defense, is thus unavailing because, as Plaintiffs concede, *Altsom* says only that a defendant's omission of "*material*" facts insulates claims from fraud by hindsight. Opp.8. Likewise, Plaintiffs' reliance on *Babaev v. Grossman*, 2007 U.S. Dist. LEXIS 13087 (E.D.N.Y. Feb. 26, 2007), and their argument that "[t]he materiality of the License Agreement and the disputes relating to it is beyond question," is similarly misplaced. Opp.11. While the license agreement itself may have been material to investors, that does not make every single development or disagreement relating thereto material as a matter of law. In fact, the *Babaev* case actually supports this distinction since, in *Babaev*, unlike here, the development that was found to be "material" was not merely an ordinary and unremarkable disagreement between the parties to the admittedly material contract, but the defendant's receipt of a notice from its contracting counterparty that *it was in default thereunder*. 2007 U.S. Dist. LEXIS 13087, at *10.

4

breach of the Disney license agreement, and knew it, before even Disney had suggested as much – a "clairvoyance" argument that flies in the face of Second Circuit precedent. Plaintiffs also argue that the statutory "safe harbor" and common-law doctrines are inapplicable because Defendants' Disney-related statements were not "forward-looking" and were not accompanied by "sufficiently specific" cautionary language. Opp.15-16. Plaintiffs offer no explanation, however, for their suggestion that Defendants' cautionary language was not sufficiently specific,[6] nor do they identify *even a single* challenged statement that was not forward-looking.

Plaintiffs have also failed to offer any meaningful response to Defendants' argument that TCP's Disney statements were protected by the truth-on-the-market defense. Plaintiffs' only response is to suggest that Defendants' disclosures were not sufficiently "adequate," or that the adequacy of those disclosures presents a question of fact that may not be resolved on a motion to dismiss. Opp.16. But the law is clear that §10(b) claims *may* be dismissed where "[i]t is evident that the allegedly omitted information was available to the market" from publicly available sources quoted in the plaintiff's complaint. *In re Pfizer, Inc. Sec. Litig.*, 538 F.Supp.2d 621, 633 (S.D.N.Y. 2008); ¶¶103-10. And while Plaintiffs suggest that there is some fact issue as to whether Defendants' disclosures sufficiently "advised investors that their renegotiations [with Disney] resulted from Children's Place's breaches" or "disclosed enough information to permit investors to appreciate the true extent of the adverse consequences that could result from those breaches," the Complaint confirms that these facts were disclosed with painstaking specificity.[7]

---

[6] As demonstrated in Defendants' motion, the cautionary language accompanying each of the challenged statements *specifically* referred to the Company's license agreement with Disney and "the Company's discussions with the Walt Disney Company." *See* Mot.11 n.12.

[7] *See*, *e.g.*, ¶105 ("[a]nd that's all in connection with these discussions that are underway with [Disney]"); ¶108 ("These discussions began after the Company was notified by Disney that the Company had failed to comply with certain of its obligations … Disney has asserted that these failures constitute material breaches …"); ¶41 ("Upon the occurrence of certain specified events, including … material breaches of the License Agreement … Disney will have the right to

5

Similarly, for the reasons set forth in the accompanying reply submitted by Defendant Dabah, Plaintiffs have failed to rebut Defendants' clear showing that the Complaint fails to allege any facts supporting a strong inference of scienter.[8]

Finally, Plaintiffs have offered no basis for refuting Defendants' showing that Plaintiffs have failed to adequately plead loss causation. Plaintiffs suggest, in reliance on this Court's decision in *In re Initial Public Offering Securities Litigation*, 2008 U.S. Dist. LEXIS 24148 (S.D.N.Y. Mar. 26, 2008) ("*IPO II*"), that they have satisfied their burden because the Complaint generally alleges a $26.32 decline in stock prices over a period between April 11, 2007 and August 23, 2007 – a decline that Plaintiffs spin as a "dissipation of the artificial inflation caused by the fraud" that resulted from "a series of disclosing events." Opp.22. But as the Court made clear in *IPO II*, the dissipation theory applies *only* in "market manipulation cases," *not* in "pure misrepresentation" cases like this one. 2008 U.S. Dist. LEXIS 24148, at *53 (remarking that *IPO II* was "not a pure misrepresentation case" and that a plaintiff in a "pure misrepresentation" case "*[may] not rely on an inference that the artificial inflation ... dissipate[d] over time*."). In "pure misrepresentation" cases, a plaintiff must allege facts that establish an *immediate* and

---

terminate the License Agreement … [and to] require us to sell the Disney Store business back to Disney or … wind down the Disney Store business …").

[8] Defendants TCP and Riley expressly adopt and incorporate the arguments set forth in Defendant Dabah's reply. In addition, TCP and Riley note that Plaintiffs have offered no response to Defendants' argument that the Complaint fails to plead scienter as to Riley individually. To establish scienter, Plaintiffs point to Dabah's alleged stock pledge and Defendants' signing of SEC filings and Sarbanes-Oxley certifications. Opp.17-22. But Plaintiffs cannot establish Riley's or TCP's scienter on the basis of Dabah's individual conduct. *See*, *e.g.*, *In re Bayer AG Sec. Litig.*, 2004 WL 2190357, at *15 (S.D.N.Y. Sept. 30, 2004) (even where statements are imputed to all defendants pursuant to the group-pleading doctrine, "plaintiffs must still establish scienter as to each defendant"). Nor is the signing of SEC filings or certifications sufficient in and of itself to give rise to a strong inference of scienter, particularly where Plaintiffs have failed to plead particularized facts showing that Defendants had contemporaneous knowledge of information regarding the Disney–TCP relationship that contradicted their signed certifications. *See In re Openwave Sys. Sec. Litig.*, 528 F.Supp.2d 236, 252 (S.D.N.Y. 2007) (allegations of corporate authority and signing of financial statements insufficient to infer scienter); *In re Affiliated Computer Servs. Derivative Litig.*, 2007 WL 4440920, at *5 (N.D. Tex. Dec. 13, 2007) (same).

*direct* connection between plaintiff's alleged economic loss and the misstated or concealed information. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 174 (2d Cir. 2005); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005).[9]

Hoping to persuade the Court that this standard has been met, Plaintiffs point to various specific "disclosures" by TCP on multiple dates between February 1, 2007 and August 23, 2007, and argue that "[s]tock drops accompanied nearly every [one of these] disclosure[s]." Opp.23. But Plaintiffs' reliance on these "disclosures" is foreclosed by the Complaint, which expressly alleges that "The Truth Beg[an] to Emerge" on July 9, 2007, and that their alleged losses arose only "[a]s a direct result of Defendants' disclosures on July 9, 2007 and August 2[3], 2007," when "the nature and extent of Defendants' fraud finally [was] being revealed to investors and the market." Compl. p.47 & ¶¶140-41. Thus, Plaintiffs cannot now argue that the "truth" about Disney was actually revealed, or that Plaintiffs establish loss causation, through Defendants' *pre*-July 9, 2007 disclosures – disclosures that Plaintiffs have apparently "cherry-picked" because they were followed by temporary (albeit insignificant) declines in the price of TCP stock. In fact, the Complaint expressly characterizes the Company's *pre*-July 9, 2007 announcements as "Materially False and Misleading Statements" that continued to *conceal* the true facts regarding TCP's relationship with Disney and "artificially inflate" the price of TCP stock. ¶¶103-21. Plaintiffs thus cannot now assert that these same announcements amounted to "corrective" disclosures that revealed the alleged fraud and "remove[d] ... the artificial inflation" from TCP's stock price. *See* Opp.23.

---

[9] Indeed, Plaintiffs' own cases involved an immediate decline in stock price following disclosures that specifically revealed the allegedly concealed facts. *See, e.g., eSpeed*, 457 F.Supp.2d at 296 (*immediate* 25% drop in stock price upon announcements); *Openwave*, 528 F.Supp.2d at 253 ("marked" decline in the stock price immediately following announcements).

Nor can Plaintiffs establish loss causation based on any of Defendants' *post*-July 8, 2007 "disclosures" because the Complaint contradicts any suggestion that they "revealed" the allegedly concealed facts regarding Disney. *See eSpeed*, 457 F.Supp.2d at 283 (quoting *Lentell*, 396 F.3d at 173). Indeed, neither the July 9, 2007 nor the July 11, 2007 press releases *even mentioned* Disney or its license agreement with TCP.[10] And the August 23, 2007 press release did not "disclose" the Company's disagreements with Disney, but provided an "update" regarding those "previously announced" and disclosed disagreements. ¶¶127, 103, 105; Mot.13-14 & nn.14-16.

## II. PLAINTIFFS MAY NOT RECAST THEIR FRAUD CLAIM AS ONE BASED ON AN ALLEGED "OPTIONS BACKDATING SCHEME."

Unable to overcome the infirmities of the claim they *actually* pleaded, Plaintiffs, through their opposition, have now sought to spin a new theory of their case, focusing almost entirely on their scant allegations relating to an "options backdating scheme." As the unambiguous allegations of the Complaint make clear, however, the fraud claims pleaded in the Complaint are simply *not* based on options backdating – something that is mentioned in only 15 paragraphs of Plaintiffs' 152-paragraph Complaint.[11]

For example, Plaintiffs expressly allege that Defendants' supposed false and misleading statements "operated as a fraud or deceit on Class Period purchasers of Children's Place common stock *by failing to disclose the problems with the license agreement with Disney and the Company's improper internal controls.*" ¶138 (emphasis added). Plaintiffs' own allegations thus confirm that the alleged fraud consisted of (i) the failure to disclose problems with the

---

[10] Rather, each of these press releases merely reported lower-than-expected sales. *See* ¶¶122-23, 124-25. Thus, Plaintiffs' reliance on these disclosures would actually *negate* their ability to establish loss causation because they suggest that the ensuing decline in TCP's stock price resulted from "changed economic circumstances, changed investor expectations, [or] new industry-specific or firm-specific facts, conditions, or other events." *Dura*, 544 U.S. at 343.

[11] *See* ¶¶63-74, 80-81, 86-87.

8

Disney–TCP relationship and (ii) the failure to disclose that Defendant Dabah had pledged TCP stock during a Company-imposed black-out period – *not* stock-options backdating.

Similarly, Plaintiffs allege that "The Truth Beg[an] To Emerge" on July 9, 2007, and that the price of TCP common stock fell precipitously "[a]s a direct result of Defendants' disclosures on July 9, 2007 and August 2[3], 2007" – disclosures which resulted in *"the nature and extent of Defendants' fraud finally being revealed* to investors and the market." See ¶¶122-32, 140-41 (emphasis added). But the announcements on July 9, 2007 and August 23, 2007 said *nothing* about "options backdating," nor would they have, because the Company disclosed that it had erroneously backdated certain options as early as September 7, 2006 – *a full 10 months before Plaintiffs allege that the "truth" about the supposed fraud on which their claims are based first "began to emerge."* ¶¶94, 96, 101. It is thus clear that the fraud claims that are *actually pleaded* in the Complaint *are not* – and cannot possibly be – based on Plaintiffs' unfounded allegations of some "options backdating scheme." Indeed, were the alleged "backdating scheme" the *true* basis for Plaintiffs' claims, the putative class period necessarily would have had to end – at the very latest – on January 31, 2007, when, as alleged in the Complaint, the final results of the Company's stock options investigation were fully revealed and the need to restate the Company's financials was fully and finally disclosed. *See* ¶101. But the Complaint extends the putative class period through August 23, 2007, when, according to Plaintiffs, the fact of Defendants' alleged fraud was "finally being revealed." ¶141.

Knowing this, Plaintiffs attempt to salvage their claims by now arguing that "the truth regarding the backdating scheme … first began leaking out to the market on September 7, 2006." Opp.22. But "[i]t is axiomatic that [a] [c]omplaint cannot be amended by the briefs in opposition to a motion to dismiss." *Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc.*, 2007 WL 54534, at *6 (S.D.N.Y. Jan. 5, 2007). Given the expressly contradictory allegations set

9

forth in the Complaint, this Court should not countenance Plaintiffs' improper attempt to amend the Complaint to assert a claim based on options backdating.

### III. PLAINTIFFS' ALLEGATIONS ARE, IN ANY EVENT, INSUFFICIENT TO STATE A §10(B) CLAIM BASED ON OPTIONS BACKDATING.

Even if the Court were inclined to entertain Plaintiffs' newly fashioned "options backdating" theory, the Complaint must be dismissed because this theory fails to satisfy the essential elements of a §10(b) claim.[12]  For the reasons discussed in Defendant Dabah's reply, which are expressly incorporated herein, the Complaint fails to adequately plead materiality, loss causation, and scienter with respect to Plaintiffs' would-be "options backdating" theory of fraud.

Indeed, as fully explained in Dabah's reply, after – and as admitted in the Complaint – a temporary and insubstantial dip on the day the Company first disclosed it was conducting an investigation into its stock option grant practices, the price of TCP stock actually soared upwards by over $11 as the market was absorbing this information.  *See* ¶¶94-98.  And after the Company announced the final results of its backdating investigation, the price of TCP stock actually "surged."  ¶102.  Under *Dura* and its progeny, Plaintiffs thus cannot allege – and have not alleged – the necessary causal connection between their alleged loss and disclosure of the allegedly fraudulent "backdating scheme," particularly given that the alleged losses that form the basis of the Complaint actually occurred in response to unrelated announcements occurring *almost a full year later*.

### CONCLUSION

For the reasons set forth above, and those stated in Defendants' motion, Plaintiffs' Complaint should be dismissed with prejudice.

---

[12] Because Plaintiffs fail to state a primary violation of §10(b), and because Plaintiffs have not alleged control of a primary violator by Dabah or Riley, as a culpable participants in the fraud, Plaintiffs cannot state a claim under §20(a), and that claim must also be dismissed.  Mot.24-25.

Dated: May 13, 2008
New York, New York

         WEIL, GOTSHAL & MANGES LLP


         By:_____/s/_____
          Jonathan D. Polkes (JP-4265)
          David R. Fertig (DF-5068)
          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, NY  10153-0119
          Telephone: (212) 310-8000

         *Attorneys for Defendants The Children's Place*
         *Retail Stores, Inc. and Susan Riley*