UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT COURT OF NEW YORK

——————————————————————
|
DEBRA HALL, Individually and on Behalf of          |          No. 07-CV-8252-SAS
All Others Similarly Situated,                             |
                                                                        |          **(Consolidated)**
                                     Plaintiff,               |
                                                                        |
              v.                                                     |
                                                                        |
THE CHILDREN'S PLACE RETAIL                      |
STORES, INC., et al.,                                       |
                                                                        |
                                     Defendants.          |
——————————————————————|


## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT EZRA DABAH'S MOTION TO DISMISS THE COMPLAINT
## FOR FAILURE TO STATE A CLAIM


Robert J. Jossen
Michael J. Gilbert
David M. Bigge
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112-2200
(212) 698-3500

*Attorneys for Defendant Ezra Dabah*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ...................................................................................................... 2

I.   PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE ANY MATERIAL
     MISREPRESENTATIONS WITH REGARD TO THE DISNEY STORES ................... 2

II.  PLAINTIFF HAS FAILED TO DEMONSTRATE THAT OPTIONS
     BACKDATING CAUSED ITS CLAIMED LOSS ............................................. 3

III. THE CAC FAILS TO SUFFICIENTLY ALLEGE SCIENTER ..................................... 6

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*ATSI Comm. Inc. v. The Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..........................................................................................3

*Acito v. Imcera Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) ........................................................................................8

*In re: Apple Computer Sec. Litig.*,
    886 F.2d 1109 (2d Cir. 1989)..................................................................................9

*Basic v. Levinson*,
    485 U.S. 224 (1988)................................................................................................6

*In re: BYSIS Sec. Litig.*,
    397 F. Supp. 2d 430 (S.D.N.Y. 2005).....................................................................7

*Chemical Bank v. Arthur Anderson & Co.*,
    726 F.2d 930 (2d Cir. 1984)....................................................................................9

*Chill v. General Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)....................................................................................7

*Dura Pharms. Inc. v. Broudo*,
    544 U.S 336 (2005)..........................................................................................3, 4, 6

*In re: eSpeed, Inc. Sec. Litig.*,
    457 F. Supp. 2d 266 (S.D.N.Y. 2006)...................................................................10

*In re: IBM Corporate Sec. Litig.*,
    163 F.3d 102 (2d Cir. 1998)....................................................................................6

*Kalnit v. Eichler*,
    264 F. 3d 131 (2d Cir. 2001)..........................................................................6, 8, 10

*Lentell v. Merrill Lynch & Co. Inc.*,
    396 F.3d 161 (2d Cir. 2005)................................................................................3, 6

*Malin v. XL Capital Ltd.*,
    499 F. Supp. 2d 117 (D. Conn. 2007).....................................................................9

*Masters v. Reynolds*,
    2008 U.S. App. LEXIS 6392 (2d Cir. Mar. 26, 2008)............................................4

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)....................................................................................6

*Rieger v. Drabinsky*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)....................................................................6

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)....................................................................................8

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*,
    75 F.3d 801 (2d Cir. 1996)....................................................................................8

*Serabian v. Amoskeag Bank Shares, Inc.*,
    24 F.3d 357 (1st Cir. 1994)...................................................................................7

*In re Take-Two Interactive Sec. Litig.*,
    2008 U.S. Dist. LEXIS 31463 (S.D.N.Y. April 16, 2008) ..................................9

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003)..................................................................6

## STATUTES

15 U.S.C. § 78u-4(b)(4) ................................................................................................3

-iii-

Ezra Dabah ("Dabah") respectfully submits this reply memorandum of law in further support of his motion to dismiss the Consolidated Amended Class Action Complaint ("CAC"), and in response to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition Memorandum," "Plaintiff's Memorandum" or "Pl. Mem.").[1]

## PRELIMINARY STATEMENT

Plaintiff apparently now recognizes that the allegation at the heart of the CAC – that Defendants deceived investors about the status of the Children's Place's partnership with Disney – is fatally flawed because the Children's Place repeatedly made forthright public statements about problems with the Disney relationship. In the Opposition Memorandum, therefore, Plaintiff seeks to recast the CAC as a stock options backdating case (Pl. Mem. at 5-6, 10, 17-23), despite the fact that the CAC contains only a handful of references to backdating and no allegations establishing a claim for securities fraud. In any event, this theory of liability is plainly insupportable. The Company's public announcements about options backdating did not cause the price of the Children's Place shares to drop. In fact, as the CAC itself recognizes, the announcement that the Children's Place was restating its financials to reflect increased compensation costs was met with a sharp increase in the share price. Plaintiff therefore cannot establish the requisite loss causation (or materiality). As to scienter, nothing in the CAC undercuts the conclusions of an independent investigation by an outside law firm that found no intentional wrongdoing in the issuance of stock options by the Children's Place. Plaintiff's

---

[1]      Dabah joins in and hereby incorporates the entirety of the reply memorandum of law submitted by the Children's Place Retail Stores, Inc. (the "Children's Place") and Susan Riley (collectively with Dabah, "Defendants"). Dabah further reiterates all arguments made in the previous memoranda of law submitted by Dabah ("Dabah Mem.") and the Children's Place and Susan Riley ("CP Mem."). All of the arguments submitted therein demonstrate the inadequacy of the CAC and make clear the grounds for dismissal. Dabah submits this reply memorandum of law to address two issues raised by Plaintiff's Memorandum: loss causation and scienter.

reference to Dabah's violation of unrelated internal company policies is a thinly veiled attempt to tar him with conduct that cannot conceivably support a finding of scienter.  In particular, Dabah's pledge of Children's Place shares as collateral in his personal margin account provided no more motivation for him to make misrepresentations about the Children's Place than any other executive who holds shares in the company.  Courts in this Circuit repeatedly have held that this is insufficient to establish scienter.

## ARGUMENT

### I.     PLAINTIFF HAS FAILED TO SUFFICIENTLY ALLEGE ANY MATERIAL MISREPRESENTATIONS WITH REGARD TO THE DISNEY STORES.

Nothing in Plaintiff's Memorandum remedies its failure to allege a material misrepresentation about the Children's Place's contract with Disney.  Plaintiff's argument that "Defendants never told investors the full story of how the Company's repeated breaches prompted Disney to raise the possibility of terminating the license" (Pl. Mem. at 3) is refuted by the allegations in the Complaint, which plainly show that Defendants notified investors of Disney's right to terminate the agreement, the circumstances under which the right arose, and the fact that Disney did not exercise that right during the Class Period.  *See* Complaint ¶¶ 103, 105, 108, 109, 116, 118, 120, 127, 129.  Plaintiff next argues that the representation that "*both* companies [the Children's Place and Disney] were dissatisfied with the progress of renovations" was inconsistent with Defendant's representations about Disney's right to terminate.  Pl. Mem. at 3 (emphasis in original).  Plaintiff does not bother to articulate how these two representations are incompatible.  For these reasons and the reasons discussed in Dabah's previous memorandum, the claims against Defendants involving the Disney stores should be dismissed.  *See* Dabah Mem. at 6-10.

## II.     PLAINTIFF HAS FAILED TO DEMONSTRATE THAT OPTIONS BACKDATING CAUSED ITS CLAIMED LOSS.

Despite the lengthy arguments in the Opposition Memorandum regarding options backdating, Plaintiff has failed to sufficiently allege loss causation, a requirement of all securities fraud claims.  15 U.S.C. § 78u-4(b)(4) ("In any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages;") *Dura Pharms. Inc. v. Broudo*, 544 U.S 336, 338 (2005) ("A private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss").  The requirement of loss causation necessitates that a complaint be dismissed where, as here, Plaintiff "fails . . . to establish any causal connection between [loss in share price] and the misrepresentation." *ATSI Comm. Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007).  In particular, to establish loss causation, Plaintiff must have adequately alleged that "the misstatement or omission concealed something from the market that, *when disclosed*, negatively affected the value of that security." *Lentell v. Merrill Lynch & Co. Inc.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis added); *see also Dura*, 544 U.S. at 344 (citing Restatement of Torts for the proposition that a defendant is only liable "for the loss the purchaser sustains when the facts . . . become generally known and as a result share value depreciates") (internal quotations omitted).

With regard to misrepresentations related to options backdating, Plaintiff does not allege in the CAC any loss associated with the supposed "backdating scheme."  Indeed, Plaintiff does not even refer to options backdating in the portion of the CAC titled "Loss Causation/Economic Loss."  CAC ¶¶ 138-141.[2]  In any event, the attempt to belatedly argue in the Opposition

---

[2]     In particular, the one paragraph in the CAC that purports to address loss causation from a drop in share price is ¶ 140, which relates only to disclosures about the business of the Company (including Disney stores) and its disappointing sales.

Memorandum that Plaintiff suffered losses proximately caused by misrepresentations related to options backdating is unavailing because when the alleged "backdating scheme" was disclosed, there was no negative effect on the value of the Children's Place shares.  Pl. Mem. at 22-23.

According to the CAC, when the Children's Place announced on September 7, 2006 that it had launched an investigation into possible options backdating, its shares were trading at $57.27.  After the announcement, the share price dipped only by 2.4%, and shortly thereafter rose steeply.  CAC ¶ 95; Chart, CAC ¶ 10.  The Children's Place made another announcement regarding its options backdating investigation on October 5, 2006, but Plaintiff makes no allegation regarding share price fluctuations after this announcement, presumably because there was little change in the share price as a result of the announcement.  CAC ¶ 96.

The CAC next alleges that the Children's Place announced a delay in its third quarter earnings on November 13, 2006 due to the options backdating investigation.  CAC ¶ 97.  The CAC further alleges that the share price at the time of this announcement was $70.01 – a 25% *increase* in share price during two months in which the Children's Place had made three public statements about the options backdating issue.  CAC ¶ 98.  In response to the November 13, 2006 announcement, shares dipped only slightly, by 3.7%.  *Id.*

The slight drops in the value of Children's Place shares on September 7 and November 13, 2006, respectively, are the *only* losses Plaintiff now claims to have suffered related to options backdating.  Pl. Mem. at 23.  These insignificant price declines are insufficient to establish loss causation in light of the 25% increase in share value between the announcements.  *See Masters v. Reynolds*, 2008 U.S. App. LEXIS 6392 *11-12 (2d Cir. Mar. 26, 2008) (finding no loss causation where the share price increased between the two alleged negative market reactions); *see also Dura*, 544 U.S. at 339, 347 (finding no loss causation unless the "share price fell significantly,"

4

noting that Dura's share price temporarily fell after the alleged misrepresentation was revealed, but "almost fully recovered within one week").

Critically, Plaintiff alleges that when the Children's Place announced the *results* of the internal investigation – admitting to instances of options pricing that required revision of previous financial statements for 2003, 2004, 2005 and parts of 2006 – the price of Children's place shares actually "*surged* from $54.21 to $59.26."[3] CAC ¶ 102 (emphasis added). Although Plaintiff tries to downplay this "surge" (CAC ¶ 102),[4] the facts detailed in the CAC amply demonstrate that the Children's Place's disclosure of the options backdating issue was not deemed as material by the market and led to no loss in share value. In fact, according to the chart included in the CAC, the share price of the Children's Place stock remained between the high $40s and the high $50s – at all times above the share price listed at the start of the class period – for months after the announcement of the results of the options backdating investigation. Chart, CAC ¶ 10.

Because Plaintiff cannot allege that the revelation of the "backdating scheme" led to a loss in value of the Children's Place stock, all claims for relief relying on the alleged "backdating

---

[3]    Between November 13, 2006 and January 31, 2007, the shares returned to the price range at which they were trading before the announcement of the internal investigation, in the mid-$50s. Plaintiff has made no allegation that this drop in share price was due to any misrepresentation, nor could it do so. The share price in the mid-$50s was significantly higher than the share price at the start of the class period. Chart, CAC ¶ 10.

[4]    Plaintiff suggests that the market was misled by omissions in the results of the investigation. However, the only omission alleged by Plaintiff – that Dabah had pledged some of his shares in violation of company policy during the pendancy of the investigation – has nothing to do with the options backdating issue, and would not have affected the market's reaction to the results of the investigation itself. In light of these facts, Plaintiff could only argue that "[h]ad the market known the true facts about Defendant Dabah's conduct, the price of Children's Place stock *would not have risen as substantially as it did, if at all*." CAC ¶ 102 (emphasis added). Obviously, this conjecture is a far cry from alleging actual loss.

scheme" must be dismissed. *Lentell*, 396 F.3d at 175 (affirming dismissal of complaint because "[t]here is no allegation that the market reacted negatively to [the] corrective disclosure" at issue); *Dura*, 544 U.S. at 346 ("Our holding about plaintiffs' need to *prove* proximate causation and economic loss leads us also to conclude that the plaintiffs' complaint here failed adequately to *allege* these requirements.") (emphasis in original).

## III. THE CAC FAILS TO SUFFICIENTLY ALLEGE SCIENTER.

Plaintiff fails to sufficiently allege facts that would "point strongly to an inference that defendants harbored an intent to deceive, manipulate or defraud," particularly with regard to misrepresentations arising from options backdating. *Rieger v. Drabinsky*, 151 F. Supp. 2d 371, 424 (S.D.N.Y. 2001). Plaintiff argues two possible bases for scienter: *(1)* recklessness and *(2)* motive related to Dabah's options and pledge of securities. Pl. Mem. at 17-19. These arguments both fail, and are ineffective in supporting Plaintiff's claims regarding scienter.

In order to base scienter on recklessness, Plaintiff must demonstrate that Defendants misrepresented "material facts related to the corporation." Pl. Mem. at 17; *Kalnit v. Eichler*, 264 F. 3d 131, 142 (2d Cir. 2001), *citing Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). "A statement is material only if there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re: IBM Corporate Sec. Litig.*, 163 F.3d 102, 106-107 (2d Cir. 1998), *citing Basic v. Levinson*, 485 U.S. 224, 231-32 (1988). As discussed above, the options backdating investigation was not material to investors; to the contrary, the announcements regarding the investigations either had little or no effect on share price, or actually led to a price "surge."

Furthermore, to base scienter on recklessness, the alleged misrepresentations must demonstrate "an extreme departure from the standards of ordinary care." *In re WorldCom, Inc.*

*Sec. Litig.*, 294 F. Supp. 2d 392, 412 (S.D.N.Y. 2003) (internal citation omitted).  Here, the only

"standards of ordinary care" Plaintiff argues Defendants violated were GAAP rules and internal

company policies.  Pl. Mem. at 17-19.  Violations of GAAP rules and internal policies, without

corresponding knowledge and fraudulent *intent*, are not sufficient to support a finding of

recklessness necessary to establish scienter.  *See Chill v. General Elec. Co.*, 101 F.3d 263, 270

(2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without

corresponding fraudulent intent, are not sufficient to state a securities fraud claim"); *In re: BYSIS*

*Sec. Litig.*, 397 F. Supp. 2d 430, 448 (S.D.N.Y. 2005) ("plaintiffs' allegations that the

Company's financial reports violated GAAP or their own internal policies merely establish that

the reports were false. They do not establish that the Individual Defendants issued those reports

with the requisite fraudulent intent"); *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 362

(1st Cir. 1994) ("The fact that the company was in violation of federal law . . . may reflect poorly

on its management, but in no way demonstrates a 10b-5 violation").

Plaintiff has not made any allegation demonstrating a knowing and fraudulent violation

of these standards, aside from the conclusory argument that Defendants must have known their

actions were improper because "stock options do not backdate themselves."  Pl. Mem. at 18.

Even if Plaintiff had so alleged, an allegation that any individual defendant knowingly violated

GAAP and internal policies would directly contradict the conclusions of the independent

investigation, which found that "there was no conclusive evidence of intentional backdating of

options" and that "there was no evidence of an intent to mislead about option grant dates or

exercise prices."  CAC ¶ 101.

Plaintiff's attempt to establish Dabah's scienter is similarly flawed.  To establish a motive

that creates a strong inference of scienter, Plaintiff must allege that a "concrete benefit" accrued

to Dabah as a result of the alleged misrepresentation.  *Kalnit*, 264 F.3d at 139.  Where that

"concrete benefit" is based on allegations of the exploitation of shares, showing a mere sale is

not enough to establish motive; rather, Plaintiff must demonstrate "unusual" insider dealings.

The Second Circuit has held that the amount of profit from the sales, the portion of stockholdings

sold, the change in volume of insider sales, and the number of insiders selling are relevant to the

determination of whether insider sales are "unusual."  *Rothman v. Gregor*, 220 F.3d 81, 94 (2d

Cir. 2000).[5]

    Plaintiff argues that Dabah received three benefits that provided a motive to misrepresent

the Children's Place financial status:  *(1)* Dabah's alleged receipt of "spring-loaded" options *(2)*

the exercise of expired options, and *(3)* Dabah's pledge of shares as collateral during the

investigation of options backdating.  Pl. Mem. at 21.  None of these alleged benefits constitutes a

"concrete benefit" or an "unusual" insider sale such that they could be used to establish motive.

    With respect to each of these alleged benefits, Plaintiff has failed to allege details

sufficient to create an inference of scienter.  Plaintiff has not alleged that the "spring-loaded"

options were exercised, nor that any shares gained in the exercise of "spring-loaded" options

were sold, nor that Defendants earned any profit on such a sale, nor that the "spring-loaded"

options represented a significant portion of any Defendant's shareholdings.  Similarly, while

Plaintiff claims that Dabah exercised expired options in April 2006 representing "85% of his

---

[5]    For example, in *Rothman*, a defendant sold shares for $20 million in profit, and still the Second Circuit did not consider this to be unusual enough to establish a strong inference of scienter because the defendant had only sold 9.3% of his shares.  220 F.3d at 94.  The Second Circuit similarly held that the sale of stock for $2 million in profit by a single company executive did not support an inference of fraudulent intent, *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 814 (2d Cir. 1996), and that the sale of 11% of one officer's holdings did not amount to "unusual" insider trading for scienter purposes, *Acito v. Imcera Group, Inc.* 47 F.3d 47, 54 (2d Cir. 1995).

IPO-granted options," Plaintiff fails to allege what percentage of Dabah's total stock holdings these options represented, whether the shares gained in the exercise of these options were sold, and whether any profit was earned on such a sale. And although pledges of shares may be considered "sales" for some purposes,[6] Plaintiff has made no allegations regarding the amount Dabah received for pledging his collateral, the portion of shares he pledged, or a change in volume in Dabah's holdings. Thus, Plaintiff fails to sufficiently allege any unusual sale giving rise to scienter. *See, e.g., In re Take-Two Interactive Sec. Litig.*, 2008 U.S. Dist. LEXIS 31463 * 69-70 (S.D.N.Y. April 16, 2008) (finding no scienter where "the [complaint] fails to specify the amount of profit [defendants] garnered through their sales; what percentage of their total stockholdings these sales constituted; and the volume of these defendants' insider sales"); *Malin v. XL Capital Ltd.,* 499 F. Supp. 2d 117, 151 (D. Conn. 2007) (it was "impossible" to determine whether stock sales were unusual even when plaintiffs alleged the number of shares sold, the share price on the date of sale, and defendants' profit).

The argument that Dabah's receipt of "spring-loaded" options provides motive also fails because, according to Plaintiff, Dabah allegedly received these options long before the class period, and thus the options are unrelated to any misrepresentations made during the class period. *See In re: Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (2d Cir. 1989) ("Large sales of stock *before* the class period are inconsistent with plaintiffs' theory that defendants attempted to drive up the price of Apple stock *during* the class period") (emphasis in original).

---

[6]     The case cited by Plaintiff, *Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 939 (2d Cir. 1984), and other cases holding that a pledge of shares is equivalent to a sale under Rule 10b, are limited in their analyses to the question whether the lender can bring a securities action against a borrower for misrepresenting the actual value of the shares. These cases do not examine whether a pledge would be considered a sale for the purpose of establishing "concrete benefit" in a scienter analysis.

Finally, because Dabah is obligated to pay back the loan for which the shares are collateral, Dabah receives no concrete benefit at all for the pledge; rather, his benefit is the same as that of every other executive of every public company holding shares in the company, which gain or lose value with the rise and fall of share prices. Thus, Dabah had no more motive to commit fraud than any other executive holding shares of the company. Such a motive is not sufficient to create the requisite scienter to sustain a fraud claim under Rule 10b-5. *See In re: eSpeed*, *Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 281 (S.D.N.Y. 2006) (Plaintiff cannot allege scienter through motives "generally possessed by most corporate directors and officers"), *citing Kalnit*, 264 F.3d at 139.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the CP Mem. and Dabah Mem., we respectfully request that the Court dismiss with prejudice Plaintiff's Consolidated Amended Complaint against Defendant Ezra Dabah.

Dated:  May 13, 2008                                      DECHERT LLP

                                                          By:  _/s/ Robert J. Jossen_____
                                                          Robert J. Jossen
                                                          robert.jossen@dechert.com
                                                          Michael J. Gilbert
                                                          michael.gilbert@dechert.com
                                                          David M. Bigge
                                                          david.bigge@dechert.com
                                                          30 Rockefeller Plaza
                                                          New York, NY 10112-2200
                                                          (212) 698-3500

                                                          *Attorneys for Defendant Ezra Dabah*