UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBRA HALL, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff,<br><br>v.<br><br>THE CHILDREN'S PLACE RETAIL STORES, INC., et al.,<br><br>Defendants. | No. 07 Civ. 08252 (SAS)<br><br>**(Consolidated)**<br><br>CLASS ACTION |

**ANSWER**

Defendants The Children's Place Retail Stores, Inc. ("TCP" or the "Company") and Susan Riley, by and through their attorneys, Weil, Gotshal & Manges LLP, answer the Consolidated Amended Class Action Complaint, dated February 28, 2008 (the "Complaint"), as follows:

1. Deny the allegations contained in Paragraph 1 of the Complaint, except admit that this action purports to be a class action on behalf of purchasers of the common stock of TCP between March 9, 2006 and August 23, 2007, inclusive (the "Putative Class Period"); and that Plaintiffs purport to seek remedies under the statute cited therein.

2. Admit the allegations contained in Paragraph 2 of the Complaint, except that TCP no longer sells apparel and accessories and other children-oriented merchandise under the Disney Store brand name.

3. Deny the allegations contained in Paragraph 3 of the Complaint.

4. Deny the allegations contained in Paragraph 4 of the Complaint, except admit that Defendant Ezra Dabah served as the Company's Chief Executive Officer ("CEO") from 1991 until September 2007.

5. Deny the allegations contained in Paragraph 5 of the Complaint, except admit that TCP filed with the Securities and Exchange Commission (the "SEC") restated financial statements on Form 10-K for the fiscal years 2003, 2004 and 2005 (the "Restatement"), and refer to that filing for its contents.

6. Deny the allegations contained in Paragraph 6 of the Complaint, except admit that (i) in 2004, TCP entered into an agreement with The Walt Disney Company ("Disney") to operate certain of the Disney Stores and sell Disney merchandise, and refer to that agreement for its contents; and (ii) TCP created a wholly-owned subsidiary called "Hoop" as a holding company for entities that managed the Disney franchised operation in the United States and Canada.

7. Deny the allegations contained in Paragraph 7 of the Complaint, except admit that Disney provided TCP with a letter, dated June 6, 2007, alleging 120 instances of default under the agreement between Disney and TCP and that the agreement between Disney and TCP was later amended, and refer to the amendment for its contents.

8. Deny the allegations contained in Paragraph 8 of the Complaint, except admit that an inquiry by the TCP Board revealed that, on two occasions, Dabah pledged shares of his TCP common stock as collateral for a margin loan in his stock brokerage account during a period designated by the Company in which certain transactions in shares by insiders were limited, and refer to TCP's September 26, 2007 press release.

9. Deny the allegations contained in Paragraph 9 of the Complaint, except admit that Deloitte & Touche LLP ("Deloitte") decided not to stand for re-election as TCP's independent auditor.

10. Deny the allegations contained in Paragraph 10 of the Complaint.

11. The allegations contained in Paragraph 11 of the Complaint call for a legal conclusion and do not require an answer.

12. The allegations contained in Paragraph 12 of the Complaint call for a legal conclusion and do not require an answer.

13. Deny the allegations contained in Paragraph 13 of the Complaint, except admit that Plaintiffs purport to establish that venue is proper in this District pursuant to the statutes cited therein.

14. Deny the allegations contained in Paragraph 14.

15. Admit the allegations contained in the first sentence of Paragraph 15 of the Complaint. Deny the allegations contained in the second sentence of Paragraph 15, except deny knowledge or information sufficient to form a belief as to the truth of the allegation that Northern Nevada Laborers Fund ("Lead Plaintiff") purchased common stock of TCP during the Putative Class Period.

16. Admit the allegations contained in Paragraph 16 of the Complaint, except that TCP no longer sells apparel and accessories and other children-oriented merchandise under the Disney Store brand name.

17. (a) Deny the allegations contained in Paragraph 17(a) of the Complaint, except admit that, on September 26, 2007, TCP announced that Dabah had resigned from his position as the Company's CEO.

(b) Admit the allegations contained in Paragraph 17(b).

(c) Paragraph 17(c) does not require a response.

18. Deny the allegations contained in Paragraph 18 of the Complaint, except admit that, during the Putative Class Period, Defendants Riley and Dabah were senior executives with TCP.

19. Deny the allegations contained in Paragraph 19 of the Complaint.

20. Deny the allegations contained in Paragraph 20 of the Complaint.

21. Deny the allegations contained in Paragraph 21 of the Complaint, except admit that TCP's stock is registered with the SEC and is traded on NASDAQ.

22. Deny the allegations in Paragraph 22 of the Complaint.

23. Deny the allegations contained in Paragraph 23 of the Complaint, except admit that Plaintiffs purport to bring this action as a class action on behalf of a class consisting of all those who purchased the common stock of TCP between March 9, 2006 and August 23, 2007.

24. Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 24 of the Complaint, except admit that TCP's stock was traded on NASDAQ throughout the Putative Class Period. Defendants decline to respond to those statements that constitute legal conclusions and therefore require no response.

25. Deny the allegations contained in Paragraph 25 of the Complaint.

26. Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 26 of the Complaint, and decline to respond to those statements that constitute legal conclusions and therefore require no response.

27. Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 27 of the Complaint, and decline to respond to those statements that constitute legal conclusions and therefore require no response.

28. Defendants deny knowledge or information sufficient to form a belief as to the allegations contained in Paragraph 28 of the Complaint, and decline to respond to those statements that constitute legal conclusions and therefore require no response.

29. Deny the allegations contained in Paragraph 29 of the Complaint and state that Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the seven confidential informants ("CI") mentioned in Paragraph 29.

30. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint.

32. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

33. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the Complaint.

35. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 35 of the Complaint.

36. Deny knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 36 of the Complaint.

37. Admit the allegations contained in Paragraph 37 of the Complaint, except that TCP no longer designs, contracts to manufacture or sells merchandise under the licensed Disney Store brand name.

38. Deny the allegations contained in Paragraph 38 of the Complaint, except admit that, in 2004, TCP acquired the Disney Stores retail operations from Disney, which resulted in TCP acquiring a total of 313 Disney Stores.

39. Deny the allegations contained in Paragraph 39 of the Complaint, except admit that on November 23, 2004, TCP issued a press release, and refer to that press release for its contents.

40. Deny the allegations contained in Paragraph 40 of the Complaint, except admit that TCP and Disney entered into a License and Conduct of Business Agreement (the "License Agreement"), and refer to that agreement for its contents.

41. Deny the allegations contained in Paragraph 41 of the Complaint, except admit that, on April 14, 2005, TCP filed with the SEC an annual report on Form 10-K, and refer to that filing for its contents.

42. Deny the allegations contained in Paragraph 42 of the Complaint, except admit that the License Agreement was amended and refer to the amended agreement for its contents.

43. Deny the allegations contained in Paragraph 43 of the Complaint and refer to the License Agreement for the terms and conditions of the relationship between TCP and Disney and the role of the Disney Franchise Board; deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding CI 4.

44. Deny the allegations contained in Paragraph 44 of the Complaint; deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding CI 1.

45. Deny the allegations contained in Paragraph 45 of the Complaint.

46. Deny the allegations contained in Paragraph 46 of the Complaint; deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding CI 1 and CI 5.

47. Deny the allegations contained in Paragraph 47 of the Complaint; deny knowledge or information sufficient to form a belief as to the truth of the allegations regarding CI 1 and CI 2.

48. Deny the allegations contained in Paragraph 48 of the Complaint and refer to the License Agreement for its contents.

49. Deny the allegations contained in Paragraph 49 of the Complaint and refer to the License Agreement for the terms and conditions of the relationship between TCP and Disney.

50. Deny the allegations contained in Paragraph 50 of the Complaint.

51. Deny the allegations contained in Paragraph 51 of the Complaint, except admit that the Disney stores had different store formats and names and refer to the License Agreement, as amended, for its contents.

52. Deny the allegations contained in Paragraph 52 of the Complaint.

53. Deny the allegations contained in Paragraph 53 of the Complaint.

54. Deny the allegations contained in Paragraph 54 of the Complaint and refer to the License Agreement for its contents.

55. Deny the allegations contained in Paragraph 55 of the Complaint.

56. Deny the allegations contained in Paragraph 56 of the Complaint.

57. Deny the allegations contained in Paragraph 57 of the Complaint and refer to the License Agreement, as amended in 2006, for its contents.

58. Deny the allegations contained in Paragraph 58 of the Complaint.

59. Deny the allegations contained in Paragraph 59 of the Complaint, except admit that (i) in June 2007, Disney sent TCP a letter alleging 120 breaches of the License Agreement, and refer to that letter for its contents; and (ii) in June 2007, TCP and Disney entered into a letter agreement (the "June Letter Agreement"), and refer to that agreement for its contents.

60. Deny the allegations contained in Paragraph 60 of the Complaint and refer to the June 2007 Letter Agreement for its contents; admit that, on December 5, 2007, TCP filed with the SEC a financial report on Form 10-Q for the period ended August 4, 2007, and refer to that filing for its contents.

61. Deny the allegations contained in Paragraph 61 of the Complaint and refer to the June Letter Agreement for its contents.

62. Deny the allegations contained in Paragraph 62 of the Complaint, except admit that, in August 2007, TCP made a disclosure regarding the June Letter Agreement, and refer to that disclosure for its contents.

63. Deny the allegations contained in the first sentence of Paragraph 63 of the Complaint. State that the second, third, fourth and fifth sentences of Paragraph 63 of the Complaint do not require a response.

64. Admit that TCP granted stock options to its officers, directors and employees pursuant to the 1997 Stock Option Plan ("1997 Plan") and the 2005 Equity Incentive Plan ("2005 Plan"). Deny the allegations in the last sentence of Paragraph 64.

65. Admit the allegations contained in Paragraph 65 of the Complaint, but refer to the 2005 Plan for its contents.

66. Deny the allegations contained in Paragraph 66 of the Complaint and refer to the report on Form 10-K TCP filed with the SEC on April 12, 2006 (the "2005 10-K") for its contents.

67. Deny the allegations contained in Paragraph 67 of the Complaint and refer to the 2005 10-K for its contents.

68. Deny the allegations contained in Paragraph 68 of the Complaint and refer to TCP's January 31, 2007 press release for a summary of the special committee's investigation and key findings.

69. Admit the allegations contained in Paragraph 69 of the Complaint, but refer to the financial report on Form 10-K for the period ended February 3, 2007 for its contents.

70. Deny the allegations contained in Paragraph 70 of the Complaint, except admit that TCP filed the Restatement with the SEC and refer to that filing for its contents.

71. Deny the allegations contained in the first sentence of Paragraph 71 of the Complaint.

(a) Deny the allegations contained in Paragraph 71(a) of the Complaint, except admit that: (i) on April 29, 2005, TCP granted stock options to several recipients, at the exercise price of $37.66 per share; (ii) on May 5, 2005, the Company issued a press release, and

refer to that press release for its contents; and (iii) the closing price of TCP's shares on May 5, 2005 was $44.72 per share.

(b) Deny the allegations contained in Paragraph 71(b) of the Complaint, except admit that: (i) on April 29, 2005, TCP granted stock options to Dabah at the exercise price of $41.42 per share; (ii) on May 5, 2005, the Company issued a press release, and refer to that press release for its contents; and (iii) the closing price of TCP's shares on May 5, 2005 was $44.72 per share.

72. Deny the allegations contained in Paragraph 72 of the Complaint and refer to TCP's January 31, 2007 press release for a summary of the special committee's investigation and key findings.

73. Deny the allegations contained in Paragraph 73 of the Complaint, but admit that TCP filed the Restatement with the SEC and refer to that filing for its contents.

74. Deny the allegations contained in Paragraph 74 of the Complaint, but admit that TCP filed the Restatement with the SEC and refer to that filing for its contents.

75. Paragraph 75 does not require a response.

76. Admit that, as alleged in Paragraph 76 of the Complaint, on April 12, 2006, TCP filed the 2005 10-K, but refer to that filing for its contents.

77. Deny the allegations contained in Paragraph 77 of the Complaint and refer to the financial reports on Form 10-Q TCP filed with the SEC for their contents.

78. Deny the allegations contained in Paragraph 78 of the Complaint.

79. Deny the allegations contained in Paragraph 79 of the Complaint.

80. Deny the allegations contained in Paragraph 80 of the Complaint and refer to TCP's press release on March 9, 2006 for its contents, and admit that Plaintiffs define the Putative Class Period as beginning on March 9, 2006.

81. Deny the allegations contained in Paragraph 81 of the Complaint and refer to the Restatement for its contents.

82. Deny the allegations contained in Paragraph 82 of the Complaint, except admit that, following the March 9, 2006 press release, TCP held a conference call with analysts and investors, and refer to the transcript of that call for its contents.

83. Deny the allegations contained in Paragraph 83 of the Complaint.

84. Deny the allegations contained in Paragraph 84 of the Complaint and refer to TCP's April 6, 2006 press release for its contents.

85. Deny the allegations contained in Paragraph 85 of the Complaint.

86. Deny the allegations contained in Paragraph 86 of the Complaint and refer to TCP's May 18, 2006 press release for its contents.

87. Deny the allegations contained in Paragraph 87 of the Complaint, except admit that TCP restated its previously filed financial statements for the first fiscal quarter of 2006, and refer to the Restatement for its contents.

88. Deny the allegations contained in Paragraph 88 of the Complaint and refer to TCP's August 3, 2006 press release for its contents.

89. Deny the allegations contained in Paragraph 89 of the Complaint.

90. Deny the allegations contained in Paragraph 90 of the Complaint and refer to TCP's August 17, 2006 press release for its contents.

91. Deny the allegations contained in Paragraph 91 of the Complaint.

92. Deny the allegations contained in Paragraph 92 of the Complaint, except admit that, on August 17, 2006, TCP held a conference call with analysts and investors, and refer to the transcript of that call for its contents.

93. Deny the allegations contained in Paragraph 93 of the Complaint.

94. Deny the allegations contained in Paragraph 94 of the Complaint and refer to TCP's September 7, 2006 press release for its contents.

95. Deny the allegations contained in Paragraph 95 of the Complaint.

96. Admit that, as alleged in Paragraph 96 of the Complaint, TCP issued a press release on October 5, 2006, but refer to that press release for its contents.

97. Admit that, as alleged in Paragraph 97 of the Complaint, on November 13, 2006, TCP issued a press release, but refer to that press release for its contents.

98. Deny the allegations contained in Paragraph 98 of the Complaint.

99. Admit that, as alleged in Paragraph 99 of the Complaint, TCP issued a press release on January 4, 2007, but refer to that press release for its contents.

100. Deny the allegations contained in Paragraph 100 of the Complaint.

101. Deny the allegations contained in Paragraph 101 of the Complaint and refer to TCP's January 31, 2007 press release for its contents.

102. Deny the allegations contained in Paragraph 102 of the Complaint.

103. Admit that, as alleged in Paragraph 103 of the Complaint, TCP issued a press release on February 1, 2007, but refer to that press release for its contents.

104. Deny the allegations contained in Paragraph 104 of the Complaint.

105. Deny the allegations contained in Paragraph 105 of the Complaint and refer to the transcript of the February 1, 2007 conference call for its contents.

106. Deny the allegations contained in Paragraph 106 of the Complaint.

107. Deny the allegations contained in Paragraph 107 of the Complaint.

108. Deny the allegations contained in Paragraph 108 of the Complaint and refer to TCP's March 15, 2007 press release for its contents.

109. Admit the allegations contained in Paragraph 109 of the Complaint but refer to the transcript of the March 15, 2007 conference call for its contents.

110. Deny the allegations contained in Paragraph 110 of the Complaint.

111. Admit that, as alleged in Paragraph 111 of the Complaint, TCP issued a press release on April 12, 2007, but refer to that press release for its contents.

112. Deny the allegations contained in Paragraph 112 of the Complaint, except admit that on April 12, 2007, TCP issued a press release and refer to that press release for its contents.

113. Admit that, as alleged in Paragraph 113 of the Complaint, TCP issued a press release on May 10, 2007, but refer to that press release for its contents.

114. Deny the allegations contained in Paragraph 114 of the Complaint.

115. Deny the allegations contained in Paragraph 115 of the Complaint.

116. Admit that, as alleged in Paragraph 116 of the Complaint, TCP issued a press release on May 22, 2007, but refer to that press release for its contents.

117. Deny the allegations contained in Paragraph 117 of the Complaint.

118. Deny the allegations contained in Paragraph 118 of the Complaint and refer to the transcript of the June 1, 2007 conference call for its contents.

119. Deny the allegations contained in Paragraph 119 of the Complaint.

120. Admit that, as alleged in Paragraph 120 of the Complaint, TCP issued a press release on June 8, 2007, but refer to that press release for its contents.

121. Deny the allegations contained in Paragraph 121 of the Complaint.

122. Admit that, as alleged in Paragraph 122 of the Complaint, TCP issued a press release on July 9, 2007, but refer to that press release for its contents.

123. Deny the allegations contained in Paragraph 123 of the Complaint, except admit that on July 9, 2007, TCP issued a press release and refer to that press release for its contents.

124. Admit that, as alleged in Paragraph 124 of the Complaint, TCP issued a press release on July 11, 2007, but refer to that press release for its contents.

125. Deny the allegations contained in Paragraph 125 of the Complaint.

126. Deny the allegations contained in Paragraph 126 of the Complaint and refer to TCP's August 9, 2007 press release for its contents.

127. Deny the allegations contained in Paragraph 127 of the Complaint, except admit that on August 23, 2007, TCP issued a press release and refer to that press release for its contents.

128. Deny the allegations contained in Paragraph 128 of the Complaint.

129. Deny the allegations contained in Paragraph 129 of the Complaint, except admit that, on August 23, 2007, TCP held a conference call with analysts and investors, and refer to the transcript of that call for its contents.

130. Admit that, as alleged in Paragraph 130 of the Complaint, TCP issued a press release on September 26, 2007, but refer to that press release for its contents.

131. Deny the allegations contained in Paragraph 131 of the Complaint and refer to TCP's September 26, 2007 press release for its contents.

132. Admit that, as alleged in Paragraph 132 of the Complaint, TCP issued a press release on October 11, 2007, but refer to that press release for its contents.

133. Deny the allegations contained in Paragraph 133 of the Complaint, except admit that TCP's common stock was traded on NASDAQ, which is a major stock exchange market.

134. Deny the allegations contained in Paragraph 134 of the Complaint.

135. Deny the allegations contained in Paragraph 135 of the Complaint.

136. Deny the allegations contained in Paragraph 136 of the Complaint.

137. Deny the allegations contained in Paragraph 137 of the Complaint.

138. Deny the allegations contained in Paragraph 138 of the Complaint.

139. Deny the allegations contained in Paragraph 139 of the Complaint.

140. Deny the allegations contained in Paragraph 140 of the Complaint.

141. Deny the allegations contained in Paragraph 141 of the Complaint.

142. Admit the allegations contained in Paragraph 142 of the Complaint.

143. Deny the allegations contained in Paragraph 143 of the Complaint.

144. Deny the allegations contained in Paragraph 144 of the Complaint.

145. Deny the allegations contained in Paragraph 145 of the Complaint, and further repeat, reallege and incorporate herein by reference Defendants' responses to each allegation discussed above as if fully set forth herein.

146. Deny the allegations contained in Paragraph 146 of the Complaint.

147. Deny the allegations contained in Paragraph 147 of the Complaint.

148. Deny the allegations contained in Paragraph 148 of the Complaint.

149. Deny the allegations contained in Paragraph 149 of the Complaint.

150. Deny the allegations contained in Paragraph 150 of the Complaint, and further repeat, reallege and incorporate herein by reference Defendants' responses to each allegation discussed above as if fully set forth herein.

151. Deny the allegations contained in Paragraph 151 of the Complaint.

## JURY TRIAL DEMANDED

152. Defendants hereby demand a jury trial.

## AFFIRMATIVE AND OTHER DEFENSES

Without assuming the burden of proof where such burden properly rests with Plaintiffs and without waiving and hereby expressly reserving the right to assert any and all such defenses at such time and to such extent as discovery and factual developments establish a basis therefor, Defendants hereby assert the following affirmative and other defenses to the claims asserted in the Complaint:

### First Defense

The Complaint, and each and every claim stated therein, fails, in whole or in part, to state a cause of action.

### Second Defense

Plaintiffs, or any persons on whose behalf Plaintiffs purport to act, do not have standing because they did not purchase or sell TCP's securities during the Putative Class Period.

### Third Defense

The Complaint fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995,

15 U.S.C. § 78u-4(b)(1), and otherwise fails to properly identify the alleged false and misleading statements of which Plaintiffs complain.

Fourth Defense

The Complaint fails to state with particularity facts that give rise to a strong inference of scienter, as required by 15 U.S.C. § 78u-4(b)(2)-(3).

Fifth Defense

Defendants are not liable because the alleged misstatements and omissions constitute non-actionable matters of opinion, or are puffery or soft information, rather than matters of material fact.

Sixth Defense

Defendants are not liable because certain alleged misstatements were forward-looking and contained sufficient cautionary language and risk disclosure to be non-actionable under the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-5(c)(1)(A)-(B), and the bespeaks caution doctrine.

Seventh Defense

Defendants are not liable because they did not make the alleged false or misleading statements or omissions of material fact on which Plaintiffs purport to have relied, and are not responsible – whether in law or in fact – for any of the alleged false or misleading statements or omissions of material fact made by others upon which Plaintiffs allege to have relied.

Eighth Defense

Plaintiffs and any persons on whose behalf Plaintiffs purport to act did not, or could not have reasonably relied upon the misstatements or omissions alleged in the Complaint.

Ninth Defense

Defendants are not liable under Section 10(b) of the Exchange Act, or Rule 10b-5 promulgated thereunder, for any statements not made by TCP or its officers, directors or employees.

Tenth Defense

At all relevant times, and with respect to all matters contained in the Complaint, Defendants acted in good faith, exercised reasonable care and did not know, and in the exercise of reasonable care could not have known, of the purported untruths, misstatements and/or omissions alleged in the Complaint.

Eleventh Defense

Defendants are not liable because the alleged misrepresentations, if any, were based on good faith, and were made in reasonable reliance upon the work, opinions, information, representations and advice of others upon whom Defendants were entitled to rely.

Twelfth Defense

Plaintiffs' claims are barred, in whole or in part, by the truth on the market doctrine.

Thirteenth Defense

Defendants are not liable because Plaintiffs knew or had reason to know the truth of the alleged misrepresentations or omissions on which their claims are based.

Fourteenth Defense

Defendants are not liable because Plaintiffs have failed to plead loss causation, in that the alleged drop in TCP's stock price was not caused by any alleged failure by TCP to disclose anything about Disney or stock options.

Fifteenth Defense

Plaintiffs' claims are barred by the statute of limitations.

Sixteenth Defense

This action may not be maintained as a class action.

Seventeenth Defense

Defendants reserve the right to raise any additional defenses not asserted herein of which they become aware through discovery or other investigation .

Dated: August 18, 2008
New York, New York

WEIL, GOTSHAL & MANGES LLP

By: /s/ Jonathan D. Polkes

Jonathan D. Polkes (JP-4265)
Anthony J. Albanese (AA-2595)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone: (212) 310-8000

*Attorneys for Defendants The Children's Place Retail Stores, Inc. and Susan Riley*