UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

DEBRA HALL, Individually and on Behalf of :     Civil Action No. 1:07-cv-08252-SAS
All Others Similarly Situated,              :     **(Consolidated)**
                                        :
               Plaintiff,    :     <u>CLASS ACTION</u>
                                          :
      vs.                                      :
                                          :
THE CHILDREN'S PLACE RETAIL        :
STORES, INC., et al.,                    :
                                          :
               Defendants.    :
                                          :
_____ x

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL............3

III.  THE PROPOSED NOTICE TO THE CLASS MEMBERS, SUMMARY
      NOTICE, AND PROOF OF CLAIM ARE ADEQUATE ..................................4

IV.   THE COURT SHOULD CERTIFY THE CLASS ............................................5

      A.   The Proposed Class Satisfies the Rule 23 Requirements.........................6

           1.   Securities Cases Are Particularly Suited for Class Action
                Treatment ...............................................................................6

           2.   The Standards for Class Certification .........................................8

           3.   The Proposed Class Satisfies Rule 23(a) ....................................9

                a.   The Proposed Class Is so Numerous that Joinder of All
                     Members Is Impracticable...............................................9

                b.   There Exist Questions of Law and Fact Common to the
                     Members of the Class....................................................10

                c.   The Claims of the Lead Plaintiff Are Typical of the Class............12

                d.   Lead Plaintiff and Its Counsel Have Fairly and Adequately
                     Prosecuted the Case on Behalf of the Proposed Class..................14

           4.   Lead Plaintiff Satisfies the Rule 23(b)(3) Requirements..........................15

                a.   Common Questions of Law or Fact Predominate.........................16

                b.   A Class Action Is Superior to Other Available Methods for
                     the Efficient Adjudication of This Controversy...........................18

V.    PROPOSED SCHEDULE ...........................................................................20

VI.   CONCLUSION.........................................................................................21

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997).........................................................................5, 16

*Baffa v. Donaldson*,
    222 F.3d 52 (2d Cir. 2000)................................................................................14

*Basic Inc. v. Levinson*,
    485 U.S. 224, 108 S. Ct. 978 (1988).............................................................6, 17

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...........................................................................17

*Cent. States Se. & Sw. Areas Health & Welfare Fund*
*v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)......................................................................9, 10, 12

*Consol. Edison, Inc. v. Ne. Utils.*,
    332 F. Supp. 2d 639 (S.D.N.Y. 2004)..............................................................5

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995)................................................................................9

*Cosmas v. DelGiorno*,
    No. CV-94-1974, 1995 WL 62598
    (E.D.N.Y. Feb. 8, 1995).....................................................................................7

*Darquea v. Jarden Corp.*,
    No. 06 Civ. 722 (CLB), 2008 WL 622811
    (S.D.N.Y. Mar. 6, 2008) ........................................................................ *passim*

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)..............................................................................4

*Dura-Bilt Corp. v. Chase Manhattan Corp.*,
    89 F.R.D. 87 (S.D.N.Y. 1981) ........................................................................16

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 94 S. Ct. 2140 (1974)................................................................8

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985).............................................................................7

**Page**

*Epstein v. MCA, Inc.*,
    50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds sub nom.*
    *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)...........................7

*Epstein v. Moore*,
    No. 87 Civ. 2984 , 1988 WL 62213
    (D.N.J. June 13, 1988) .................................................................12

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185, 96 S. Ct. 1375 (1976)...............................................6

*Escott v. Barchris Constr. Corp.*,
    340 F.2d 731 (2d Cir. 1965)...........................................................7

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147, 102 S. Ct. 2364 (1982).............................................12

*Genden v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
    114 F.R.D. 48 (S.D.N.Y. 1987) ...............................................12, 16

*Gerber v. Computer Assocs. Int'l*,
    No. 91 CV 3610 (SJ), 1995 WL 228388
    (E.D.N.Y. Apr. 7, 1995)......................................................9, 10, 12

*Green v. Wolf Corp.*,
    406 F.2d 291 (2d Cir. 1968)........................................................5, 9, 20

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89, 101 S. Ct. 2193 (1981)..............................................6

*Hall v. Children's Place Retail Stores, Inc.*,
    580 F. Supp. 2d 212 (S.D.N.Y. 2008)...........................................11

*Herman & MacLean v. Huddleston*,
    459 U.S. 375, 103 S. Ct. 683 (1983)..............................................6

*In re Amerifirst Sec. Litig.*,
    139 F.R.D. 423 (S.D. Fla. 1991)...................................................9

*In re AMF Bowling Sec. Litig.*,
    No. 99 CIV. 3023 (DC), 2002 WL 461513
    (S.D.N.Y. Mar. 26, 2002) ...........................................................19

**Page**

*In re Arakis Energy Corp. Sec. Litig.*,
No. 95-CV-3431 (ARR), 1999 WL 1021819
(E.D.N.Y. Apr. 27, 1999)...................................................................................6, 16, 19

*In re Ashanti Goldfields Sec. Litig.*,
No. CV 00-0717 (DGT), 2004 WL 626810
(E.D.N.Y. Mar. 30, 2004) ........................................................................................7, 8

*In re Avon Sec. Litig.*,
No. 91 CIV. 2287 (LMM), 1998 WL 834366
(S.D.N.Y. Nov. 30, 1998) ........................................................................................7, 8

*In re Baldwin-United Corp.*,
105 F.R.D. 475 (S.D.N.Y. 1984) ................................................................................4

*In re Baldwin-United Corp. Litig.*,
122 F.R.D. 424 (S.D.N.Y. 1986) .........................................................................11, 13

*In re Blech Sec. Litig.*,
187 F.R.D. 97 (S.D.N.Y. 1999) ............................................................................7, 19

*In re Crazy Eddie Sec. Litig.*,
135 F.R.D. 39 (E.D.N.Y. 1991) ...........................................................................13, 14

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) .............................................................................4

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992).......................................................................................13

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
529 F. Supp. 2d 644 (S.D. Tex. 2006) .......................................................................15

*In re Enron Corp. Sec. Litig.*,
No. H-01-3624, 2005 U.S. Dist. LEXIS 39867
(S.D. Tex. Dec. 22, 2005) ....................................................................................14, 15

*In re Frontier Ins. Group Sec. Litig.*,
172 F.R.D. 31 (E.D.N.Y. 1997)..................................................................................10

*In re Gaming Lottery Sec. Litig.*,
58 F. Supp. 2d 62 (S.D.N.Y. 1999) .............................................................................7

**Page**

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ...................................................................8

*In re: Initial Public Offering Sec. Litig.*,
  No. 21 MC 92(SAS), slip op. (June 10, 2009)........................................ *passim*

*In re Interpublic Sec. Litig.*,
  No. 02 Civ. 6527 (DLC), 2003 WL 22509414
  (S.D.N.Y. Nov. 6, 2003) ......................................................................11

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  No. 94 CIV. 3996 (RWS), 1997 WL 805062
  (S.D.N.Y. Dec. 31, 1997)..................................................................2, 4

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  191 F.R.D. 369 (S.D.N.Y. 2000) ....................................................10, 13

*In re Salomon Analyst Metromedia Litig.*,
  544 F.3d 474 (2d Cir. 2008).............................................................17, 18

*In re Twinlab Corp. Sec. Litig.*,
  187 F. Supp. 2d 80 (E.D.N.Y. 2002) .....................................................13

*In re Veeco Instruments, Inc., Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  720 F. Supp. 1379 (D. Ariz. 1989),
  *aff'd sub nom Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...............................................................4

*Kennedy v. Tallant*,
  710 F.2d 711 (11th Cir. 1983) ...............................................................7

*Klein ex rel. Ira v. PDG Remediation*,
  No. 95 Civ. 4954 (DAB), 1999 WL 38179
  (S.D.N.Y. Jan. 28, 1999).......................................................................4

*Korn v. Franchard Corp.*,
  456 F.2d 1206 (2d Cir. 1972).................................................................8

*Lapin v. Goldman Sachs & Co.*,
  254 F.R.D. 168 (S.D.N.Y. 2008) ..........................................................17

**Page**

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002)........................................................................16

*Ohman v. Kahn*,
    No. 87 CIV. 7117 (JFK), 1990 WL 97756
    (S.D.N.Y. June 27, 1990)........................................................................8, 12

*Port Auth. Police Benevolent Ass'n v. Port Auth.*,
    698 F.2d 150 (2d Cir. 1983)........................................................................10

*Robbins v. Moore Med. Corp.*,
    No. 91 Civ. 3701(MEL), 1992 WL 396423
    (S.D.N.Y. Dec. 21, 1992)............................................................................7

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)............................................................................4

*Teachers' Ret. Sys. v. ACLN Ltd.*,
    No. 01 Civ. 11814 (LAP), 2004 WL 2997957
    (S.D.N.Y. Dec. 27, 2004)............................................................................9

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
    No. 05 Civ. 1898 (SAS), 2006 WL 2161887
    (S.D.N.Y. Aug. 1, 2006) ............................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007)........................................................6

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ........................................................................4

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..........................................................................5

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
    Rule 23 ........................................................................ *passim*
    Rule 23(a)..............................................................8, 9, 12, 15
    Rule 23(a)(1)..................................................................9, 10
    Rule 23(a)(2)........................................................................10
    Rule 23(a)(3)........................................................................12
    Rule 23(a)(4)..................................................................14, 15

**Page**

Rule 23(b) ...................................................................................................................15

Rule 23(b)(3) ......................................................................................................8, 15, 18

Rule 23(c)(2) ...................................................................................................................5

Rule 23(e) ........................................................................................................................3

Rule 23(e)(2) ...................................................................................................................4

17 C.F.R.

§240.10b-5 ..................................................................................................................17

**SECONDARY AUTHORITY**

*Manual for Complex Litigation* (4th ed. 2004)

§21.632.........................................................................................................................4

§21.633.........................................................................................................................4

## I.      PRELIMINARY STATEMENT

Lead Plaintiff submits this memorandum in support of its unopposed motion for an order granting preliminary approval of the proposed Settlement of this securities class action, which provides for a settlement consisting of $12,000,000 in cash.[1]

This Litigation involves claims against The Children's Place Retail Stores, Inc. ("TCP" or the "Company") and certain of its officers and directors by purchasers of TCP common stock during the period March 9, 2006 through August 23, 2007, inclusive (the "Class Period"). The complaints filed in the Litigation assert, among other things, that during the Class Period, Defendants concealed and misrepresented certain problems the Company was experiencing with its very important business relationship with The Walt Disney Company ("Disney"), resulting from the Company's violations of the terms of a licensing agreement with Disney. The complaints also allege that Defendants admittedly engaged in a stock options backdating scheme that violated the Company's publicly disclosed stock option policies, as well as its internal controls and Generally Accepted Accounting Principles, resulting in a restatement during the Class Period of nearly four years of the Company's financial results. Lead Plaintiff also alleged that while TCP stock traded at artificially inflated levels as a result of these misrepresentations, the Company's Chief Executive Officer, Defendant Ezra Dabah received mispriced options, exercised options, and violated internal controls by pledging shares of stock as collateral for margin loans in his brokerage account during a black-out period. Dabah's conduct resulted in his forced resignation and the voluntary resignation of the Company's independent auditor which "was no longer willing to rely on his representations in connection with its audits." Defendants have denied and continue to deny all charges of fault, wrongdoing or liability

---

[1]      All capitalized terms not defined herein have the meaning ascribed to them in the Stipulation of Settlement.

against them arising out of any of the conduct, statements, acts or omissions alleged. They deny and continue to deny they have committed any violations of law or engaged in any wrongful act, whether as alleged or otherwise, and deny the Class suffered any damages.

By this motion, the Lead Plaintiff seeks preliminary approval of the settlement of the Litigation and in connection therewith entry of an order providing for approval of the form of notice describing the terms of the Settlement; Class Members' rights with respect thereto; the proposed release of claims against the Released Persons and Lead Plaintiff and the Class; the proposed Plan of Allocation of settlement proceeds, which was developed by Lead Plaintiff's expert; the request for an award of attorneys' fees and expenses to Lead Counsel; and the procedure for filing Proofs of Claim. The Lead Plaintiff also seeks preliminary certification of the Class, and requests that the Court set a date for the hearing to consider final approval of the Settlement and the foregoing matters.

The proposed $12 million cash settlement is a very good result, and the Lead Plaintiff urges the Court's preliminary approval of the proposed Settlement. For purposes of this motion for preliminary approval, the issue before the Court is whether the Settlement, which represents over 5.5% of the estimated maximum provable damages, as calculated by Lead Plaintiff's expert, is within the range of what might be approved as fair, reasonable, and adequate in order to justify mailing and publishing notice of the Settlement, and scheduling a final hearing. "Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations . . . and falls within the range of possible approval, preliminary approval should be granted." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, No. 94 CIV. 3996 (RWS), 1997 WL 805062, at *8 (S.D.N.Y. Dec. 31, 1997). The Court is not required at this point to make a final determination regarding the

reasonableness of the Settlement, and no Class Member's substantive rights will be prejudiced by preliminary approval.

Lead Plaintiff and Lead Counsel are fully conversant with the strengths and weaknesses of this case, as significant investigation and discovery have been undertaken and the Court has ruled on Defendants' comprehensive motions to dismiss. In addition, Lead Counsel have analyzed 1.6 million pages of documents produced by Defendants, and thus can readily evaluate the risks associated with the continued litigation, as well as the fairness of its resolution at this time. Lead Plaintiff submits that the proposed Settlement is an outstanding result for, and is in the best interests of, the Class. The Settlement was the result of arm's-length negotiations with the assistance of Judge Nicholas H. Politan (Ret.) serving as mediator, and warrants preliminary approval for purposes of notifying Class Members.

## II.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that before a class action may be dismissed or compromised, notice must be given in the manner directed by the court, and judicial approval must be obtained. Fed. R. Civ. P. 23(e). At the final approval hearing, the Court will have before it extensive papers submitted in support of the proposed Settlement and will be asked to make a final determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Litigation. Here, however, Lead Plaintiff requests only that the Court grant preliminary approval in order to authorize notifying Class Members of the terms of the Settlement, and of their opportunity to be heard regarding the Settlement at the hearing where final approval of the Settlement will be considered.

The test for granting preliminary approval is whether the proposed settlement is "'at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be

heard.'" *NASDAQ*, 1997 WL 805062, at *8 (quoting *In re Baldwin-United Corp.*, 105 F.R.D. 475,

482 (S.D.N.Y. 1984)).  *See Manual for Complex Litigation* §21.632 (4th ed. 2004).  Here, the

proposed $12 million settlement easily satisfies that standard.

The proposed Settlement is an excellent result, and is well within the range of

reasonableness.  *See Klein ex rel. Ira v. PDG Remediation*, No. 95 Civ. 4954 (DAB), 1999 WL

38179, at *3 (S.D.N.Y. Jan. 28, 1999) (approving settlement that was 21% of the potential recovery);

*In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement that was only

6% of the potential recovery).  *See also Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir.

1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a

hundredth or even a thousandth part of a single percent of the potential recovery."); *Teachers' Ret.

Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)

(citing *Grinnell*, 495 F.2d at 455).  *Accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375

(9th Cir. 1993); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz.

1989), *aff'd sub nom. Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).  Accordingly,

preliminary approval of the $12 million settlement, which represents over 5.5% of the estimated

maximum provable damages, assuming success on all claims, should be granted and notice to the

Class Members permitted.

## III.    THE PROPOSED NOTICE TO THE CLASS MEMBERS, SUMMARY NOTICE, AND PROOF OF CLAIM ARE ADEQUATE

Federal Rule of Civil Procedure 23(e)(2) requires that class members receive notice of any

proposed settlement before final approval by the court.  *Manual for Complex Litigation*, *supra*,

§21.633, at 321-22.  Lead Plaintiff respectfully submits that the proposed notices, which are annexed

as Exhibits A-1 and A-3 to the [Proposed] Order Preliminarily Approving Settlement and Providing

for Notice, submitted herewith, are adequate.  If approved by the Court, the notice in the form of

Exhibit A-1, along with the Proof of Claim in the form of Exhibit A-2, will be sent by first-class mail to each Class Member identified from TCP's transfer records as purchasers of the Company's common stock during the Class Period.  In addition, summary notice in the form of Exhibit A-3 will be published in *Investor's Business Daily* within seven (7) calendar days of the mailing of the notice.

As required by Federal Rule of Civil Procedure 23(c)(2), the notices will inform Class Members of the claims alleged in the action, the terms of the proposed Settlement, and their rights as Class Members to opt out or object to the $12 million cash settlement, or otherwise object to the Plan of Allocation and/or the proposed attorneys' fees and expenses.  *See Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("'Due process requires that the notice to class members "fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."'") (citations omitted); *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982).

Lastly, as part of the preliminary approval of the Settlement, Lead Plaintiff also respectfully requests the appointment of A.B. Data Ltd. ("A.B. Data") as Claims Administrator.  As Claims Administrator, A.B. Data will be responsible for, among other things, mailing the notice to the Class, publishing the summary notice, reviewing claims, compiling a distribution schedule, and mailing distribution checks.  A.B. Data has extensive experience in settlement administration and will adequately fulfill its duties in this case.

## IV.    THE COURT SHOULD CERTIFY THE CLASS

Class certification in this securities fraud class action is consistent with long-established precedent in the Second Circuit and the United States Supreme Court.  *See, e.g.*, *Amchem Prods. v. Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 2250 (1997); *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d Cir. 1968); *In re: Initial Public Offering Sec. Litig.*, No. 21 MC 92 (SAS), slip op. at 12 ("IPO Preliminary Approval"), Opinion and Order (June 10, 2009); *Darquea v. Jarden Corp.*, No. 06 Civ.

722 (CLB), 2008 WL 622811 (S.D.N.Y. Mar. 6, 2008); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *4 (E.D.N.Y. Apr. 27, 1999) (observing that "the Second Circuit has expressed a strong preference for use of the class action device in resolving securities law claims"). Here, Lead Plaintiff, like all other putative Class Members, seeks to prove a uniform and concerted common course of wrongful conduct with respect to Defendants' materially false and misleading statements made during the Class Period. Lead Plaintiff, through the Court-appointed lead counsel, has thus far successfully prosecuted this action on behalf of the proposed Class by, among other things, investigating, researching and drafting the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("Complaint"), defeating Defendants' motions to dismiss, engaging in extensive document discovery, and reaching the proposed $12 million settlement following protracted mediation before Judge Politan.

Because the benefits of the underlying litigation apply equally to the Class as a whole and, as set forth in detail below, because this open-market securities fraud action satisfies all applicable requirements under Rule 23 of the Federal Rules of Civil Procedure, Lead Plaintiff respectfully requests this Court certify the Class for settlement purposes.

### A.    The Proposed Class Satisfies the Rule 23 Requirements

#### 1.    Securities Cases Are Particularly Suited for Class Action Treatment

"Class actions serve an important function in our system of civil justice," *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99, 101 S. Ct. 2193, 2199 (1981), and have been recognized repeatedly as an important means of enforcing the federal securities laws. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 321 n.4, 127 S. Ct. 2499, 2504, 2508 n.4 (2007); *Basic Inc. v. Levinson*, 485 U.S. 224, 230-32, 108 S. Ct. 978, 982-84 (1988); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 380 n.10, 103 S. Ct. 683, 686 n.10 (1983); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

196, 96 S. Ct. 1375, 1382 (1976); *Darquea*, 2008 WL 622811; *Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995) (holding that securities actions alleging misstatements or omissions fit the requirements of Rule 23 "like a glove"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996).

Rule 23 allows for the effective enforcement of the securities laws for large numbers of investors who have suffered injuries but do not have a sufficient economic interest to incur the expense or inconvenience of an individual lawsuit. *See, e.g.*, *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965). As a result, securities law claims are routinely found to be appropriate for class treatment. *See, e.g.*, *In re Ashanti Goldfields Sec. Litig.*, No. CV 00-0717 (DGT), 2004 WL 626810 (E.D.N.Y. Mar. 30, 2004); *In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62 (S.D.N.Y. 1999); *In re Avon Sec. Litig.*, No. 91 CIV. 2287 (LMM), 1998 WL 834366 (S.D.N.Y. Nov. 30, 1998); *Cosmas v. DelGiorno*, No. CV-94-1974, 1995 WL 62598 (E.D.N.Y. Feb. 8, 1995); *Robbins v. Moore Med. Corp.*, No. 91 Civ. 3701(MEL), 1992 WL 396423 (S.D.N.Y. Dec. 21, 1992).

Furthermore, by providing a single forum in which to litigate the same or similar claims, a class action affords an indispensable mechanism for the conservation of judicial resources. *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (holding that "'the effectiveness of the securities laws may depend in large measure on the application of the class action device'") (citation omitted); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Rule 23, therefore, is broadly structured so as to facilitate certification of class actions. "Accordingly, in an alleged securities fraud case, when a court is in doubt as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward." *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999); *see also Eisenberg*, 766 F.2d at 785 ("'The interests of justice require that

in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action.'") (citation omitted).

### 2.    The Standards for Class Certification

"[A] district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006) ("*IPO*"). In making those determinations, the Second Circuit has instructed courts to be "mindful of the admonition of liberality toward demands for class suit status in securities litigation." *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972); *Ashanti*, 2004 WL 626810, at *10 ("A liberal standard is in accord with the Second Circuit's preference for the use of class actions in securities law claims."); *Avon*, 1998 WL 834366, at *4 ("In light of the importance of the class action device in securities litigation, courts in this circuit apply Rule 23 according to a liberal standard."); *Ohman v. Kahn*, No. 87 CIV. 7117 (JFK), 1990 WL 97756, at *1 (S.D.N.Y. June 27, 1990) ("Rule 23's factors 'are to be construed liberally' . . . when the proposed class includes alleged victims of securities fraud.") (citation omitted).

Thus, in considering a class certification motion, a court will focus only on whether the prerequisites of Rule 23 are met. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S. Ct. 2140, 2152 (1974). While a court may resolve factual issues concerning the prerequisites of Rule 23 when those issues overlap with issues relating to the merits (*IPO*, 471 F.3d at 41), here there are no merits-based issues that impact the Court's consideration of class certification.

As demonstrated below, Lead Plaintiff satisfies the prerequisites of Rule 23(a) and the requirement of Rule 23(b)(3), in that common questions of law and fact predominate and that a class action is superior to alternative methods for the fair and efficient adjudication of Defendants' alleged violations of the Securities Exchange Act of 1934. Class certification is therefore appropriate, and the Court should certify the Class for purposes of settlement.

### 3.    The Proposed Class Satisfies Rule 23(a)

#### a.    The Proposed Class Is so Numerous that Joinder of All Members Is Impracticable

For a class action to be appropriate, the proposed class must be so numerous that joinder of all of its individual members would be impracticable.  Fed. R. Civ. P. 23(a)(1).  Rule 23 does not require joinder to be impossible, but "the difficulty or inconvenience of joining all members of the class [must] make [the] use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Numerosity is presumed when a class consists of forty or more members.  *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995), *IPO Preliminary Approval*, slip op. at 20. Moreover, "the numerosity requirement of Rule 23(a)(1) is generally assumed to have been met in class action suits, such as the one here, involving nationally traded securities." *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).

In fact, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, 'the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.'" *Teachers' Ret. Sys. v. ACLN Ltd.*, No. 01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) (citation omitted); *Gerber v. Computer Assocs. Int'l*, No. 91 CV 3610 (SJ), 1995 WL 228388, at *2 (E.D.N.Y. Apr. 7, 1995) ("[Defendant's] common stock was listed and actively traded on the New York Stock Exchange; therefore, it is likely that [defendant's] stockholders are not concentrated in any one geographic location, but rather, are widely dispersed.  Hence, given that there will be a variety of residences and numerous claims, joinder would be impractical.") (citing *Green*, 406 F.2d at 298).

During the Class Period, TCP had approximately 29 million shares of common stock issued and outstanding, with such stock actively traded on the NASDAQ National Market, an open and

efficient market.  As such, there are hundreds or thousands of members of the proposed Class, thus more than satisfying the numerosity requirement.  *See In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

Accordingly, Lead Plaintiff has satisfied the numerosity requirement of Rule 23(a)(1).

### b.    There Exist Questions of Law and Fact Common to the Members of the Class

Rule 23(a)(2) requires that "'plaintiffs' grievances share a common question of law or of fact.'"  *Cent. States*, 504 F.3d at 245 (citation omitted); *IPO Preliminary Approval*, slip op. at 20. The Court already has sustained the allegations of the Complaint regarding the Class Period for which Lead Plaintiff seeks certification.  Evidentiary proof of the claims that the Court has sustained is necessarily common to all members of the Class.  Indeed, in determining whether common questions exist, Rule 23(a)(2) "requires only that there be 'a common nucleus of operative fact,' not that there be an absolute identity of facts."  *Gerber*, 1995 WL 228388, at *2 (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth.*, 698 F.2d 150, 153-54 (2d Cir. 1983)); *see also In re Veeco Instruments, Inc., Sec. Litig.,* 235 F.R.D. 220, 238 (S.D.N.Y. 2006); *Oxford*, 191 F.R.D. at 374 ("Where, as here, there exists a common nucleus of operative facts affecting all members, common questions unquestionably prevail.").

Common questions of law and fact are present where, as here, the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public and filed with the SEC, press releases, and statements provided to the investment community and the media, and investor conference calls.  *See, e.g.*, *In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) (disseminating statements that omitted or misrepresented material facts deemed common questions).  Indeed, among the many questions of fact or law common to members of the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts and omissions;

(b)    whether Defendants participated in and pursued the fraudulent scheme or course of conduct alleged;

(c)    whether the Company's publicly disseminated press releases and statements during the Class Period omitted and/or misrepresented material facts;

(d)    whether Defendants acted willfully, with knowledge or recklessly, in omitting and/or misrepresenting material facts;

(e)    whether the market price of TCP shares during the Class Period was artificially inflated due to Defendants' wrongful conduct; and

(f)    whether the members of the Class have sustained damages and, if so, the proper measure of damages.

*See Hall v. Children's Place Retail Stores, Inc.*, 580 F. Supp. 2d 212, 228 (S.D.N.Y. 2008) ("Plaintiffs assert that Dabah and Riley made material misstatements and omissions by reporting artificially inflated financial results, failing to disclose serious problems with the Disney Stores and violating the Company's internal control polices.  Plaintiffs further allege that Dabah and Riley's certifications regarding internal controls were fraudulent.").

The repeated misrepresentations alleged here are of the sort that courts routinely hold to satisfy the "common question" requirement.  *See, e.g., In re Interpublic Sec. Litig.*, No. 02 Civ. 6527 (DLC), 2003 WL 22509414, at *3 (S.D.N.Y. Nov. 6, 2003) ("Plaintiffs have raised a number of common issues of law and fact.  Among them are whether [defendants'] public filings and statements contained material misstatements, whether the defendants acted knowingly or with reckless disregard for the truth in misrepresenting material facts in [defendants'] public filings and press releases, and whether the damages to the investors were caused by the defendants' misstatements."); *In re Baldwin-United Corp. Litig.*, 122 F.R.D. 424, 426 (S.D.N.Y. 1986) ("The nub of plaintiffs' claims is that material information was withheld from the entire putative class in each action, either by written or oral communication.  Essentially, this is a course of conduct case,

which as pled satisfies the commonality requirement of Rule 23."); *Genden v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y. 1987) ("The liability issue in this action will concern defendant's alleged duty to disclose and the materiality of the alleged omission. . . . [P]laintiffs have shown these issues to be common to the class.").

In denying Defendants' motions to dismiss, this Court held that the Complaint adequately alleged the existence of material misrepresentations as well as Defendants' scienter. These misrepresentations and scienter, which form the basis of Lead Plaintiff's claims, are necessarily common to all members of the proposed Class. Thus, the commonality requirement is satisfied.

### c.    The Claims of the Lead Plaintiff Are Typical of the Class

Rule 23(a)(3) requires that "the claims . . . of the representative parties [be] typical of the claims . . . of the class."[2]  The Second Circuit has held that the typicality requirement is satisfied "'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Cent. States*, 504 F.3d at 245 (citation omitted); *IPO Preliminary Approval*, slip op. at 21.  The claims here satisfy the typicality requirement in that they all arise from the same false and misleading statements and require similar arguments by Class Members concerning liability.

In order to meet the typicality requirement, "[t]he claims need not be identical, but must derive from 'the same general, over-all course of fraudulent conduct.'"  *Gerber*, 1995 WL 228388, at *3 (quoting *Epstein v. Moore*, No. 87 Civ. 2984 , 1988 WL 62213 (D.N.J. June 13, 1988)); *see also*

---

[2]    The Supreme Court noted that the "commonality and typicality requirements of Rule 23(a) tend to merge."  *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 158 n.13, 102 S. Ct. 2364, 2371 (1982); *accord Ohman*, 1990 WL 97756, at *4 ("The typicality requirement of Rule 23(a)(3) is a close cousin of the commonality requirement.").  Accordingly, inasmuch as commonality has been established, typicality has been established as well.

*Oxford*, 191 F.R.D. at 375 (holding that "[t]ypicality does not require that the situations of the named representatives and the class members be identical").  Thus:

> Because this [typicality] inquiry focuses on the nature of the claims asserted, factual differences involving the date, type and manner of the purchase, the investor's perception of the transaction, or even the information furnished to him at the time will not destroy typicality if each class member was the victim of the same material omissions and the same consistent course of conduct.

*Baldwin-United*, 122 F.R.D. at 428.  *See also Darquea*, 2008 WL 622811, at *3 (holding that "[a] claim is typical where 'each class member's claim arises from the same course of events, and each class member make similar legal arguments to prove the defendant's liability.'") (quoting *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992)).

Lead Plaintiff has claims that are not only similar to, but virtually identical to, those of the members of the Class.  All members of the Class seek to prove that Defendants made materially false and misleading statements during the Class Period and failed to disclose material adverse facts about TCP.  As such, Lead Plaintiff and the other members of the Class have been injured by the same course of conduct by the Defendants.  Moreover, the damages that they seek arise from the purchase of TCP's shares at prices that were artificially inflated as a result of Defendants' false and misleading statements, and the subsequent decline in the price of TCP stock when the fraud was revealed.  Thus, Lead Plaintiff stands in precisely the same position as other purchasers of the Company's shares during the Class Period.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) ("[T]he element of typicality is met because the class members have been allegedly harmed by the same course of conduct (the distribution of false and misleading information which artificially inflated the stock.)").  Therefore, as in *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39 (E.D.N.Y. 1991):

> Plaintiffs' claims are typical of those of absent class members.  They allege injury resulting from the same course of conduct that injured the absent class members and are based on the same theories of recovery.

- 13 -

*Id.* at 40.  Accordingly, Lead Plaintiff's claims are typical of those of the Class.

> **d.    Lead Plaintiff and Its Counsel Have Fairly and Adequately Prosecuted the Case on Behalf of the Proposed Class**

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  This requirement is met if a plaintiff does not have interests that are antagonistic to those of the class, and his chosen counsel is qualified, experienced, and generally able to conduct the litigation.  *See Baffa v. Donaldson*, 222 F.3d 52, 50 (2d Cir. 2000).

Lead Plaintiff satisfies both prongs of the adequacy test.  Indeed, it already has successfully represented the interests of the proposed Class and demonstrated its adequacy to prosecute this action by, among other things, defeating Defendants' motions to dismiss, aggressively pursuing discovery, and negotiating a settlement.  Moreover, none of Lead Plaintiff's interests are antagonistic to those of the Class.  As discussed above, all members of the Class allege claims arising from the same wrongful conduct and are based on the same legal theories as the claims advanced by Lead Plaintiff.  Lead Plaintiff is committed to the vigorous prosecution of this action.  The interests of the other members of the Class, therefore, will be protected by Lead Plaintiff, as they have been since the inception of this action.

As to the second prong regarding adequacy of counsel, Lead Plaintiff has retained the law firm of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as Lead Counsel for the proposed Class, a firm that has substantial experience in the prosecution of securities class actions.  For example, among other noteworthy securities fraud cases, Coughlin Stoia has served as sole lead counsel in *In re Enron Corp. Sec. Litig.*, No. H-01-3624, 2005 U.S. Dist. LEXIS 39867 (S.D. Tex. Dec. 22, 2005), in which Coughlin Stoia has obtained recoveries to date which collectively represent

the largest recovery ever obtained in a putative shareholder class action.[3]  Specifically, the court in

*Enron* stated:

> The firm is comprised of probably the most prominent securities class action attorneys in the country.  It is not surprising that Defendants have not argued that counsel is not adequate.  Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities is evident throughout this suit.

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 529 F. Supp. 2d 644, 675 (S.D. Tex. 2006).

Coughlin Stoia is clearly qualified to represent the Class and, along with Lead Plaintiff, has vigorously protected the interests of the proposed Class.  Indeed, the Court-appointed Lead Counsel has successfully prosecuted the action thus far, having drafted the Complaint, successfully defeated Defendants' motions to dismiss, and engaged in complex documentary discovery, all of which resulted in the $12 million proposed settlement.  Thus, the requirements of Rule 23(a)(4) are satisfied.

### 4.      Lead Plaintiff Satisfies the Rule 23(b)(3) Requirements

In addition to meeting the requirements of Rule 23(a), the present action also satisfies the requirements of Rule 23(b).  Rule 23(b)(3) requires a proposed class representative to establish that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available means of adjudication.  Here, common questions of law and fact predominate, and a class action is the superior (if not the only) method available to fairly and efficiently litigate this securities fraud lawsuit.

---

[3]      The firm résumé of Coughlin Stoia is attached hereto as Exhibit A.

a.      **Common Questions of Law or Fact Predominate**

It is well established that in determining whether common questions predominate, a court's inquiry should be directed primarily toward whether the issue of liability is common to members of the class.  "Generally, the predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *IPO Preliminary Approval*, slip op. at 24. Indeed, "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also Genden*, 114 F.R.D. at 52 ("When determining whether common questions predominate courts 'focus on the liability issue . . . and if the liability issue is common to the class, common questions are held to predominate over individual questions.'") (quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).

The Supreme Court has noted that the predominance requirement "is a test readily met in certain cases alleging consumer or securities fraud."  *Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250. In addition, courts have recognized that common issues of law and fact will generally predominate in actions alleging that materially false representations were made to large groups of investors.  *See, e.g.*, *Arakis Energy*, 1999 WL 1021819, at *10 ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues."). Where, as here, a complaint alleges that the defendants have made false and misleading representations, the issues of law and fact that flow from that conduct predominate over any individual issues, rendering class treatment appropriate:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.  Confronted with a class of purchasers allegedly defrauded over a period of time by similar

- 16 -

> misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

As noted in the discussion of commonality, above, the nature of this case and the elements of Lead Plaintiff's claims involve issues primarily focusing on Defendants' misrepresentations and false statements – in short, Defendants' liability to the proposed Class. *See Darquea*, 2008 WL 62281, at *5 (observing that "each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the Defendants in order to prove liability."). The Complaint alleges that Defendants issued materially false and misleading statements during the Class Period and failed to disclose material adverse facts regarding, among other things, TCP's financial performance and its compliance with its stated internal controls. Moreover, the Complaint alleges that Defendants pursued a common course of conduct that injured Lead Plaintiff and the other members of the Class.

Reliance is also a question common to all proposed Class Members. The claims asserted under §10(b) and Rule 10b-5 rely on the fraud-on-the-market doctrine, where reliance is presumed, and plaintiffs are not required to prove awareness of any particular misstatement or omission. *Basic*, 485 U.S. at 227, 108 S. Ct. at 981. *See also In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 481-82 (2d Cir. 2008). Courts in this Circuit apply the fraud-on-the-market doctrine's presumption of reliance where the company's securities traded in an efficient market. *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 181 (S.D.N.Y. 2008). The Second Circuit recently clarified that plaintiffs do not need to demonstrate a material affect on market price in order to invoke the fraud-on-the-market presumption. *Salomon Analyst*, 544 F.3d at 482-83. Indeed, "plaintiffs do not bear the burden of showing an impact on price. The point of *Basic* is that an effect on market price is **presumed** based

- 17 -

on the materiality of information and a well-developed market's ability to readily incorporate that information into the price of securities." *Id.* at 483 (emphasis in original). Indeed, as this Court previously noted, "[a]t the class certification stage, the securities' trading record may create certain rebuttable legal presumptions about market efficiency. If, for example, a security is listed on the NYSE, AMEX, NASDAQ, or a similar national market, the market for that security is presumed to be efficient." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898 (SAS), 2006 WL 2161887, at *8 (S.D.N.Y. Aug. 1, 2006). Here, because the Company's stock traded on the NASDAQ, Lead Plaintiff is entitled to the presumption of market efficiency.

As noted in the discussion of commonality above, the nature of this case and the elements of Lead Plaintiff's claims involve issues primarily relating to Defendants' misrepresentations, false statements, and omissions – in short, Defendants' liability to the proposed Class. *See Darquea*, 2008 WL 622811, at *5 (observing that "each class member, if they were to bring individual actions, would be required to prove the existence of the alleged activities of the Defendants in order to prove liability.").

Thus, all members of the Class are substantially – if not identically – situated with respect to those claims. In this case, it is difficult to discern any liability issues that are not common to the claims of each member of the Class. Once common questions of liability are resolved, all that remains is the ministerial act of computing the amount of damages suffered by each Class Member. Thus, the predominance requirement is satisfied.

      **b.**    **A Class Action Is Superior to Other Available Methods for the Efficient Adjudication of This Controversy**

Not only do common questions predominate in the present litigation, but, as further required by Rule 23(b)(3), "a class action is superior to other available methods for fairly and efficiently

- 18 -

adjudicating the controversy." Rule 23 (b)(3) identifies factors to be considered in making a "superiority" determination:

> (a)    the interest of members of the class individually controlling the prosecution of separate actions;
>
> (b)    the extent and nature of any litigation concerning the controversy already commenced by members of the class;
>
> (c)    the desirability of concentrating the litigation of the claims in the particular forum; and
>
> (d)    the difficulties likely to be encountered in the management of a class action.

In this Litigation, the interest of members of the Class in individually controlling the prosecution of separate actions is minimal, because the costs and expenses of individual actions, when weighed against the individual recoveries potentially obtainable, would be prohibitive. Thus, the first superiority factor is satisfied. *See Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient").

In addition, Lead Plaintiff is not aware of any similar individual suits currently pending against Defendants. As such, there is no dispute that this Court is a desirable forum for concentrating the litigation of Class Members' claims. *See In re AMF Bowling Sec. Litig.*, No. 99 CIV. 3023 (DC), 2002 WL 461513, at *8 (S.D.N.Y. Mar. 26, 2002) ("For each investor to litigate individually 'would risk disparate results among those seeking redress, . . . would exponentially increase the costs of litigation for all, and would be a particularly inefficient use of judicial resources.'") (citation omitted); *Arakis Energy*, 1999 WL 1021819, at *11 ("In addition, were plaintiffs required to bring individual actions, the potential for duplicative litigation and consequent waste of judicial and party resources would be significant."). Indeed, the actions that form this consolidated matter were consolidated here. Thus, the second and third superiority factors are satisfied.

- 19 -

Finally, Lead Plaintiff does not envision any significant difficulties likely to be encountered in the management of this case as a class action or the administration of the proposed Settlement. This action is appropriate for class treatment, embodying all of the hallmarks, both in form and in substance, of the types of securities actions that are routinely certified in this Circuit and elsewhere. Thus, as the Second Circuit has recognized, a class action is superior to other available methods – particularly duplicative individual lawsuits – for the fair and efficient adjudication of a controversy affecting a large number of securities holders injured by violations of the federal securities laws:

> [A] class action [in a federal securities action] may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no one person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf.

*Green*, 406 F.2d at 296.

## V.    PROPOSED SCHEDULE

Lead Plaintiff proposes the following schedule:

| | |
|---|---|
| Notice mailed to Class Members ("Notice Date") | 10 days from preliminary approval |
| Summary Notice published | 7 days from Notice Date |
| Last day to request exclusion from or object to Settlement | 14 days prior to final approval hearing |
| Date by which to file papers in support of Settlement, Plan of Allocation, and request for attorneys' fees and expenses | 21 calendar days prior to final approval hearing |
| Date by which to file reply papers in support of Settlement, Plan of Allocation, and request for attorneys' fees and expenses | 7 calendar days prior to final approval hearing |
| Final approval hearing | Approximately 90 days from Notice Date, at the Court's convenience |
| Last day for Class Members to file Proofs of Claim | 90 days from Notice Date |

This schedule is similar to those used in numerous class action settlements and provides due process to Class Members with respect to their rights concerning the Settlement.

## VI.    CONCLUSION

Lead Plaintiff requests approval of the motion for an order preliminarily approving the proposed Settlement, directing notice be sent to all Class Members and summary notice to be published, certifying the Class, and setting a hearing date for final approval.

DATED:  June 26, 2009                     Respectfully submitted,

                                          COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          SAMUEL H. RUDMAN
                                          ROBERT M. ROTHMAN


                                                  s/ Robert M. Rothman
                                          _____
                                             ROBERT M. ROTHMAN

                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

                                          COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          ELLEN GUSIKOFF STEWART
                                          JONAH H. GOLDSTEIN
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          SEAN K. COLLINS
                                          9601 Wilshire Blvd., Suite 510
                                          Los Angeles, CA  90210
                                          Telephone:  310/859-3100
                                          310/278-2148 (fax)

                                          Lead Counsel for Plaintiffs

- 21 -

JENKINS & CARTER
NATHAN M. JENKINS
501 Hammill Lane
Reno, NV  89511-1004
Telephone:  775/829-7800
775/829-0511 (fax)

Additional Counsel for Plaintiff

Document1

CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 26, 2009.

s/ Robert M. Rothman
ROBERT M. ROTHMAN

COUGHLIN STOIA GELLER
    RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

E-mail:rrothman@csgrr.com

# Mailing Information for a Case 1:07-cv-08252-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Michael J. Gilbert**
  michael.gilbert@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Jonah H. Goldstein**
  Jgoldstein@csgrr.com

- **Robert Jeffrey Jossen**
  robert.jossen@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Fainna Kagan**
  fkagan@csgrr.com

- **Jonathan D Polkes**
  scott.woller@weil.com,jonathan.polkes@weil.com,georgia.magno@weil.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Robert M. Rothman**
  rrothman@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Richard P. Swanson**
  richard_swanson@aporter.com,anthony_boccanfuso@aporter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual List
*Hall v. The Children's Place Retail Stores, Inc., et al.*
Civil Action No. 1:07-cv-08252-SAS


Nathan M. Jenkins
Jenkins & Carter
501 Hammill Lane
Reno, NV  89511-1004