UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x

DEBRA HALL, Individually and on Behalf of :   Civil Action No. 1:07-cv-08252-SAS
All Others Similarly Situated,             :   **(Consolidated)**
                                         :
                  Plaintiff,    :   <u>CLASS ACTION</u>
                                           :
      vs.                                :
                                           :
THE CHILDREN'S PLACE RETAIL        :
STORES, INC., et al.,                   :
                                           :
                 Defendants.    :
                                           :

——————————————————— x


LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL
APPROVAL OF SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT
PROCEEDS

# TABLE OF CONTENTS

Page

I.     PRELIMINARY STATEMENT ................................................................................1

II.    HISTORY AND BACKGROUND OF THE ACTION ........................................4

III.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND
       ADEQUATE AND SHOULD BE APPROVED BY THE COURT.................................4

       A.     The Law Favors and Encourages Settlements .........................................4

       B.     The Settlement Is Procedurally Fair ......................................................5

       C.     The Second Circuit's Standards Governing the Substantive Fairness of
              Class Action Settlements ......................................................................6

       D.     The Settlement Satisfies the Second Circuit Criteria for Approval........................7

              1.     The Complexity, Expense, and Likely Duration of the Litigation
                     Justifies the Settlement ................................................................7

              2.     The Reaction of the Class to the Settlement ................................8

              3.     The Stage of the Proceedings and Discovery Completed............................9

              4.     The Risk of Establishing Liability ................................................10

                     a.     Defendants' Liability Defenses......................................11

                     b.     Defenses to Loss Causation .........................................12

              5.     The Considerable Risk of Establishing Damages ......................................13

              6.     The Risks of Maintaining the Class Action Through Trial........................14

              7.     The Reasonableness of the Settlement in Light of the Best Possible
                     Recovery and the Attendant Risks of Litigation........................................15

              8.     The Ability of the Defendants to Withstand a Greater Judgment.............16

IV.    THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND
       REASONABLE AND SHOULD BE APPROVED BY THE COURT ..........................17

V.     THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET
       AND THE CLASS SHOULD BE CERTIFIED................................................................18

       A.     Numerosity, Commonality, and Typicality .........................................19

**Page**

B.     Adequacy of Representation .......................................................................20

C.     Predominance of Common Issues and Superiority ................................20

VI.    CONCLUSION ..........................................................................................21

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231 (1997)...............................................19, 20, 21

*Beecher v. Able*,
    575 F.2d 1010 (2d Cir. 1978)..............................................................17

*Berger v. Compaq Computer Corp.*,
    257 F.3d 475 (5th Cir. 2001) ..............................................................15

*Carpe v. Aquila, Inc.*,
    No. 02-0388-CV-W-FJG, slip. op.
    (W.D. Mo. Mar. 23, 2005)...................................................................14

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................15

*Cross v. 21st Century Holding Co.*,
    No. 00 Civ. 4333 (MBM), 2004 WL 307306
    (S.D.N.Y. Feb. 18, 2004) ...................................................................19

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................5, 9

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................... *passim*

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336, 125 S. Ct. 1627 (2005).................................................12

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
    343 F.3d 189 (2d Cir. 2003)...............................................................12

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185, 96 S. Ct. 1375 (1976)...................................................11

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) .....................................................................8

*In re "Agent Orange" Prod. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984),
    *aff'd*, 818 F.2d 145 (2d Cir. 1987)......................................................15

**Page**

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 Civ. 1597 (WHP), 2004 WL 2750089
   (S.D.N.Y. Dec. 2, 2004)..................................................................5

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)....................................10, 17

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   No. MDL 1500, 2006 WL 903236
   (S.D.N.Y. Apr. 6, 2006)........................................11, 16, 20

*In re Ashanti Goldfields Sec. Litig.*,
   No. CV-00-717 (DGT), 2005 WL 3050284
   (E.D.N.Y. Nov. 15, 2005)..............................................................4

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000).............................................9, 10

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)........................................................14

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................7, 9, 18

*In re Holocaust Victim Assets Litig.*,
   413 F.3d 183 (2d Cir. 2001)........................................................18

*In re Host Am. Corp. Sec. Litig.*,
   No. 05-CV-1250 (VLB), 2007 WL 3048865
   (D. Conn. Oct. 18, 2007)..............................................................20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676
   (S.D.N.Y. Sept. 29, 2003)..................................................12, 13, 15

*In re Initial Pub. Offering Sec. Litig.*,
   No. 21 MC 92 (SAS), 2009 WL 1649704
   (S.D.N.Y. June 10, 2009)..............................................................20

*In re Luxottica Group S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ...........................................5, 6, 8

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
   246 F.R.D. 156 (S.D.N.Y. 2007) ..................................................4

Page

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
No. 02 MDL 1484 (JFK), 2007 WL 4526593
(S.D.N.Y. Dec. 20, 2007).............................................................................6

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 46 (S.D.N.Y. 1993) .................................................................10

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y.), *aff'd*,
117 F.3d 721 (2d Cir. 1997).............................................................. *passim*

*In re Salomon Analyst Metromedia Litig.*,
236 F.R.D. 208 (S.D.N.Y. 2006) ...............................................................21

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
No. 06 Civ. 5173 (RPP), 2008 WL 1956267
(S.D.N.Y. May 1, 2008)....................................................................8, 9, 17

*In re Time Warner Sec. Litig.*,
9 F.3d 259 (2d Cir. 1993)...........................................................................11

*In re Veeco Instruments, Inc., Sec. Litig.*,
235 F.R.D. 220 (S.D.N.Y. 2006) ...............................................................19

*In re Veeco Instruments Sec. Litig.*,
No. 05 MDL 01695 (CM), 2007 WL 4115809
(S.D.N.Y. Nov. 7, 2007) .................................................................. *passim*

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004)........................................................................16

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd*,
798 F.2d 35 (2d Cir. 1986)..........................................................................14

*In re WorldCom, Inc. Sec. Litig.*,
388 F. Supp. 2d 319 (S.D.N.Y. 2005)..........................................................17

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000)..........................................................................4

*Kaufman v. Motorola, Inc.*,
No. 95 C 1069, 2000 WL 1506892
(N.D. Ill. Sept. 21, 2000) ............................................................................14

**Page**

*Lewis v. Newman*,
    59 F.R.D. 525 (S.D.N.Y. 1973) ...................................................................................10

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................16, 17, 18

*Milstein v. Huck*,
    600 F. Supp. 254 (E.D.N.Y. 1984) ...............................................................................7

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)...................................................................................5, 15

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000).........................................................................................11

*Plummer v. Chem. Bank*,
    668 F.2d 654 (2d Cir. 1982)..........................................................................................9

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................................7, 8

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493
    (S.D.N.Y. Jan. 31, 2007).................................................................................................4

*Teachers' Ret. Sys. v. A.C.L.N.*,
    No. 01-CV-11814 (MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004)..............................................................................................10

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438, 96 S. Ct. 2126 (1976)............................................................................11

*Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005).................................................................................4, 15, 17

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..........................................................................................4, 5

*Whalen v. Hibernia Foods PLC*,
    No. 04 Civ 3182, 2005 WL 1799370
    (S.D.N.Y. Aug. 1, 2005) ..............................................................................................11

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)...........................................................................4

**Page**

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ...................................................................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §78u-4(a)(3)(B)(i) ......................................................................................................20

Federal Rules of Civil Procedure
    Rule 23(a).............................................................................................................3, 19, 21
    Rule 23(a)(1)-(3) .............................................................................................................19
    Rule 23(a)(4) ...................................................................................................................20
    Rule 23(b)(3)............................................................................................................ *passim*
    Rule 23(e).....................................................................................................................1, 4

## SECONDARY AUTHORITIES

4 Alba Conte, Herbert B. Newberg,
*Newberg on Class Actions* (4th ed. 2002)
    §11.45..............................................................................................................................9

Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions:*
*Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements*
*Hit New High* (NERA 2007) ......................................................................................16

Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements,*
*2008 Review and Analysis* (Cornerstone Research 2009)............................................16

Pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Laborers Pension Trust Fund for Northern Nevada, by and through its counsel ("Lead Counsel"), respectfully move this Court for an order approving the proposed settlement of the above-captioned class action (the "Action"), certifying the Class for settlement purposes, and approving the proposed Plan of Allocation of settlement proceeds, each of which this Court preliminarily approved by its Order Preliminarily Approving Settlement and Providing for Notice dated July 17, 2009 (the "Preliminary Approval Order").[1]

## I.    PRELIMINARY STATEMENT

Under the terms of the proposed settlement (the "Settlement"), as set forth in the Stipulation of Settlement dated June 26, 2009 (the "Stipulation"), the Defendants have caused to be paid Twelve Million Dollars ($12,000,000) in cash (the "Settlement Amount") into an interest-bearing escrow account on behalf of the Class, in exchange for the dismissal of all claims brought against the Defendants in this Action and a full release of claims. The Settlement Fund (the Settlement Amount plus all interest earned thereon) will be used for the payment of taxes, notice and administrative costs, and for attorneys' fees and expenses. The cash remainder after these expenditures, the "Net Settlement Fund," will be distributed to Class Members who are not otherwise excluded and who timely submit valid Proof of Claim and Release forms to the Claims Administrator ("Authorized Claimants"). Each Authorized Claimant shall be allocated a percentage of the Net Settlement Fund based upon the relationship that each Authorized Claimant's claim bears to the total of all Authorized Claimants' claims, as explained in the Notice of Proposed Settlement of Shareholder Class Action, Hearing Thereon, and Right to Appear (the "Notice") at pages 7 through 9.

---

[1]    Unless otherwise defined, all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement.

Lead Counsel respectfully submit that this Settlement is an excellent recovery for the Class under the circumstances, given the serious obstacles to recovery. This Settlement was reached by Lead Counsel, with the support of the Lead Plaintiff, as a result of their creative and aggressive litigation efforts, and following mediation before a retired federal district judge. When viewed in light of the risks that Defendants could prevail at summary judgment or at trial, based on their defenses to materiality, loss causation, scienter and damages, the Settlement is a substantial result for the Class. The Settlement also saves the Class the considerable expense and delay posed by continued litigation, especially here, where much of the evidence consists of stock option grants going back a number of years and other complex accounting documents. As fully discussed below and in the Declaration of Robert M. Rothman in Support of (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiff's Expenses ("Rothman Decl."), submitted herewith, the significant risks involved in taking this case further in litigation, and possibly on to trial, when measured against the benefit of the Settlement, support approval of this Settlement.

On July 17, 2009, the Court entered its Preliminary Approval Order, which directed that a hearing be held to determine the fairness, reasonableness, and adequacy of the Settlement (the "Settlement Hearing"). Pursuant to the Preliminary Approval Order, the Notice was mailed to over 38,500 potential Class Members commencing on July 31, 2009.[2] The Summary Notice was also published in the national edition of *Investor's Business Daily* on August 6, 2008. *See* La Count Aff., ¶17.

---

[2]    *See* ¶¶10-11 of the Affidavit of Michelle M. La Count, Esq. ("La Count Aff."), which is submitted herewith.

The Notice, attached to the La Count Affidavit as Exhibit A, contains a detailed description of the nature and procedural history of the Action, as well as the material terms of the Settlement, including (i) Lead Plaintiff's estimate of the average per share recovery; (ii) the manner in which the Net Settlement Fund (as defined above) will be allocated among participating Class Members; (iii) a description of the claims that will be released in the Settlement; (iv) the right and mechanism for Class Members to opt-out or exclude themselves from the Class; and (v) the right and mechanism for Class Members to object to the Settlement.

The reaction of Class Members to the Settlement confirms the wisdom of Lead Plaintiff's decision to resolve the Action against the Defendants for $12 million. As of the date preceding the filing of this memorandum, which is after the deadline for the submission of objections or requests for exclusion, no objections have been filed to the amount of the Settlement or the Plan of Allocation. Only one Class Member has submitted a valid request for exclusion from the proposed Settlement. Therefore, the reaction of the Class strongly supports the inference that the Class agrees that the Settlement and Plan of Allocation are fair, reasonable, and adequate.

In light of Lead Counsel's informed assessment of the strengths and weaknesses of the claims and defenses asserted, based on their extensive investigation and review of over one and one-half million pages of documents produced by Defendants, the absence of opposition to the Settlement, and the considerable risks and delays associated with continued litigation and trial, Lead Plaintiff and Lead Counsel believe that the Settlement is eminently fair, reasonable, and adequate and provides a substantial result for the Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of this Settlement. In addition, the proposed Class meets all of the elements of Federal Rules of Civil Procedure 23(a) and (b)(3); therefore, the Court should grant final certification of the Class. Finally, the Plan of Allocation, which was developed with the assistance

of Lead Plaintiff's damage consultant, is a fair and reasonable method for distributing the Net Settlement Fund to Class Members, and should also be approved by the Court.

## II.      HISTORY AND BACKGROUND OF THE ACTION

The Court is respectfully referred to the accompanying Rothman Declaration for a full discussion of, *inter alia*, the factual background and procedural history of the Action, the litigation efforts of Lead Counsel, the significant risks of continued litigation, and a discussion of the negotiations leading to this Settlement.

## III.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

### A.      The Law Favors and Encourages Settlements

Rule 23(e) requires that the settlement of a class action be approved by the court. A court may approve a settlement that is binding on the class only if it determines that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). This evaluation requires the court to consider "both the settlement's terms and the negotiating process leading to settlement." *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *Wright v. Stern*, 553 F. Supp. 2d 337, 343 (S.D.N.Y. 2008); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 246 F.R.D. 156, 165 (S.D.N.Y. 2007). While the decision to grant or deny approval of a settlement lies within the broad discretion of the trial court, a general policy favoring settlement exists, especially with respect to class actions. *Wright*, 553 F. Supp. 2d at 344; *In re Veeco Instruments Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115809, at *5 (S.D.N.Y. Nov. 7, 2007); *In re Ashanti Goldfields Sec. Litig.*, No. CV-00-717 (DGT), 2005 WL 3050284, at *1 (E.D.N.Y. Nov. 15, 2005); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *4 (S.D.N.Y. Jan. 31, 2007). *See also Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) (The settlement of complex class action litigations are clearly favored by the courts.).

Moreover, "[c]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation." *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Weinberger*, 698 F.2d at 73 ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation.").

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, the Second Circuit has cautioned that, while a court should not give "rubber stamp approval" to a proposed settlement, it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974); *Veeco*, 2007 WL 4115809, at *5. As stated by the court in *Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972),

> the role of a court in passing upon the propriety of the settlement of a derivative or other class action is a delicate one. . . . [W]e recognized that since "'the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation', the court must not turn the settlement hearing 'into a trial or a rehearsal of the trial'."

*Id.* at 691-92 (citation omitted).

## B.    The Settlement Is Procedurally Fair

A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation. *Luxottica Group*, 233 F.R.D. at 315; *see also In re Alloy, Inc. Sec. Litig.*, No. 03 Civ. 1597 (WHP), 2004 WL 2750089, at *1-*2 (S.D.N.Y. Dec. 2, 2004). A court may find the negotiating process is fair where, as here, "the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability . . . necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)

(citation omitted); *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y.) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

This initial presumption of fairness and adequacy applies here because the Settlement was reached by experienced, fully-informed counsel after arm's-length negotiations, with the assistance of a retired federal district judge serving as mediator.  In addition, no question exists that Lead Counsel – equipped with knowledge from an extensive investigation and evaluation of Lead Plaintiff's claims, including expert consultation and the review of non-public documents produced by Defendants – were fully informed of the merits and weaknesses of the case by the time the Settlement was consummated.  Thus, little doubt exists that this Settlement is entitled to the presumption of procedural fairness dictated by Second Circuit law.

### C.    The Second Circuit's Standards Governing the Substantive Fairness of Class Action Settlements

As stated above, courts within the Second Circuit observe the universal standard for determining whether a proposed class settlement is substantively fair: whether the proposed settlement is "'fair, reasonable, and adequate.'"  *Luxottica Group*, 233 F.R.D. at 310 (citation omitted).  The Second Circuit has identified nine factors that courts should consider in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 463 (citations omitted).  All nine factors need not be satisfied.  Instead, the court should look at the totality of these factors in light of the specific circumstances involved. *In re*

*Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 4526593, at

*9-*10 (S.D.N.Y. Dec. 20, 2007); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 456

(S.D.N.Y. 2004).

 As demonstrated below, the Settlement satisfies each of the relevant criteria set forth above.

Indeed, this Settlement represents an excellent recovery for the Class, and, in the judgment of Lead

Counsel, there is serious doubt that a more favorable result was possible. As such, the Settlement

clearly warrants this Court's final approval.

 **D.** **The Settlement Satisfies the Second Circuit Criteria for Approval**

  **1.** **The Complexity, Expense, and Likely Duration of the Litigation Justifies the Settlement**

 "The expense and possible duration of the litigation should be considered in evaluating the

reasonableness of [a] settlement." *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984). *See*

*Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("'[I]t is beyond cavil that continued

litigation in this multi-district securities class action would be complex, lengthy, and expensive, with

no guarantee of recovery by the class members.'") (citation omitted). Here, the securities claims

advanced by Lead Plaintiff involve numerous complex legal and factual issues relating to, among

other things, stock options granting processes, and the accounting implications thereof, which would

require extensive additional discovery, including voluminous document review and many

depositions as well as extensive expert discovery and testimony. In addition, the legal issues in this

Action are equally as complex – proving falsity, materiality, scienter, causation, and damages – and

would also require expert testimony from both sides.

 There can be no doubt that because this Action is settling against the Defendants at this time,

the litigants have been spared the delay and expense of continued litigation. Many hours of the

Court's time and resources have also been spared. Even if the Class could recover a larger judgment

after a trial, the additional delay through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing its value. *See In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173 (RPP), 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008) ("*Sony*"); *Strougo*, 258 F. Supp. 2d at 261 ("even if a shareholder or class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and] justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

The $12 million settlement at this juncture results in an immediate and substantial tangible recovery without the considerable risk, expense, and delay of trial. Lead Counsel submit that the Court should find that this factor weighs heavily in favor of the proposed Settlement.

### 2.    The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also Luxottica Group*, 233 F.R.D. at 311-12. One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *Veeco*, 2007 WL 4115809, at *7 (citation omitted). Here, in response to a wide-ranging Court-approved notice program, not a single Class Member has objected, and only one shareholder has requested exclusion from the Class. Thus, the reaction of the Class, those affected by the Settlement, underscores the propriety of the Settlement and should provide additional evidence to this Court that the Settlement is fair, reasonable, and adequate.

- 8 -

### 3.    The Stage of the Proceedings and Discovery Completed

"There is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact.  It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation. . . .  At minimum, the court must possess sufficient information to raise its decision above mere conjecture."  4 Alba Conte, Herbert B. Newberg, *Newberg on Class Actions* §11.45, at 127, 128 (4th ed. 2002).  As previously noted, "[f]ormal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."  *Global Crossing*, 225 F.R.D. at 458.  *See also In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000) (not necessary for court to find parties engaged in extensive discovery; must merely find that they engaged in sufficient investigation to enable court to make intelligent appraisal of case) (citing *Plummer v. Chem. Bank*, 668 F.2d 654 (2d Cir. 1982)), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *see also Veeco*, 2007 WL 4115809, at *7 ("the parties need not have engaged in full discovery for a settlement to be approved as fair"); *Sony*, 2008 WL 1956267, at *7 (same).[3]

Here, Lead Counsel negotiated a substantial settlement only after conducting an extensive factual investigation and analysis relating to the events and transactions alleged in the Complaint. Lead  Counsel reviewed scores of publicly available documents and The Children's Place Retail Stores, Inc.'s ("TCP" or the "Company") regulatory filings to gain a full and complete understanding of the Company's business.  Lead Counsel also interviewed former TCP and Disney employees regarding Lead Plaintiff's allegations.  Lead Counsel also researched the applicable law with respect

---

[3]    In fact, in cases such as this one brought under the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), no formal discovery may proceed until the motion to dismiss is denied.

to Lead Plaintiff's claims and the Defendants' potential defenses, consulted with forensic accountants concerning the alleged financial fraud and economists who provided advice and assistance on issues relating to class certification, damages, causation, and materiality. In addition, following the denial of Defendants' motions to dismiss, Lead Counsel received and reviewed 1.6 million pages of non-public documents produced by Defendants. Rothman Decl., ¶8. Thus, Lead Counsel had a clear picture of the strengths and weaknesses of this case and of the legal and factual defenses that Defendants would likely raise at trial. *Teachers' Ret. Sys. v. A.C.L.N.*, No. 01-CV-11814 (MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) (finding action had advanced to a stage where parties "'have a clear view of the strengths and weaknesses of their cases'") (citation omitted). As such, Lead Counsel had sufficient information to intelligently negotiate the terms of the Settlement that is before the Court for approval. *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 426 (S.D.N.Y. 2001). Therefore, this Court should find that this factor also supports the Settlement.

### 4.      The Risk of Establishing Liability

In assessing the Settlement, the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation. *See Grinnell*, 495 F.2d at 463; *Veeco*, 2007 U.S. WL 4115809, at *8; *Austrian & German Bank*, 80 F. Supp. 2d at 177. While Lead Counsel believe that Lead Plaintiff could survive Defendants' motions for summary judgment, it is also clear that ultimate success is not assured, and this substantial Settlement, when viewed in light of the risks of proving liability, is undoubtedly fair, adequate, and reasonable. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) (when evaluating securities class action settlements, courts have long recognized such litigation to be "'notably difficult and notoriously uncertain'") (quoting *Lewis v. Newman*, 59 F.R.D. 525, 528

(S.D.N.Y. 1973)); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971)

("Stockholder litigation is notably difficult and unpredictable.").

Lead Plaintiff faced numerous hurdles to establishing liability. This Action involves claims

for relief under the Securities Exchange Act of 1934 (the "Exchange Act"). To prevail on its claims,

Lead Plaintiff must demonstrate that Defendants made misstatements or omissions of material fact

with scienter in connection with the sale or purchase of securities – that Defendants intentionally

engaged in this conduct for the purpose of misleading investors.[4] *Ernst & Ernst v. Hochfelder*, 425

U.S. 185, 193 n.12, 96 S. Ct. 1375, 1381 n.12 (1976). Based on the defenses that Defendants have

raised, Lead Counsel recognize that establishing liability at trial was not guaranteed. *See In re AOL*

*Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6,

2006) ("[t]he difficulty of establishing liability is a common risk of securities litigation").

### a.    Defendants' Liability Defenses

Lead Plaintiff faced significant risks in proving that the alleged misstatements were

materially false or misleading. *See In re Time Warner Sec. Litig.*, 9 F.3d 259, 264 (2d Cir. 1993) (to

prove materiality, plaintiffs have the burden of demonstrating defendants' misrepresentations and

omissions were materially false or misleading when made); *TSC Indus. v. Northway, Inc.*, 426 U.S.

438, 449, 96 S. Ct. 2126, 2132 (1976). In their response to Lead Plaintiff's claims, Defendants have

argued that TCP had, in fact, disclosed that its agreement with Disney could be terminated upon any

material breach, and issued multiple statements when there was even the suggestion of a breach.

---

[4]    Proof of scienter can be established "'(a) by alleging facts to show that defendants had both
motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial
evidence of conscious misbehavior or recklessness.'" *Whalen v. Hibernia Foods PLC*, No. 04 Civ.
3182, 2005 WL 1799370, at *2 (S.D.N.Y. Aug. 1, 2005) (citation omitted). Although recklessness
has been held to satisfy the scienter requirement, *Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000),
this too is a difficult standard.

Rothman Decl., ¶31.  Defendants further claimed that the backdating of stock options was unintentional and the resulting restatement resulted in no significant stock drop, defeating any loss causation with respect to that claim.  *Id.*  Defendants also contended that Lead Plaintiff would be unable to demonstrate that Defendants made any of the alleged misstatements or omissions with the requisite scienter.  *Id.*  Finally, Defendants argued that any alleged misstatements and omissions were immaterial statements of optimism and puffery, and therefore protected by the PSLRA's safe harbor provision and the bespeaks caution doctrine.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *3 (S.D.N.Y. Sept. 29, 2003) (noting difficulty of proving scienter).  By the time the parties agreed to the proposed Settlement, Lead Counsel had come to the conclusion that the defenses raised by Defendants could have certain jury appeal, and would render the inherently difficult burden of proving all of the elements of Lead Plaintiff's claims as to all of the Defendants even more difficult.

### b.    Defenses to Loss Causation

Even if Defendants' defenses to materiality and scienter could be overcome, Lead Plaintiff must also make the requisite showing of loss causation.  *See, e.g.*, *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 196-97 (2d Cir. 2003) (finding that plaintiffs adequately plead loss causation and proximate causation).  Lead Plaintiff faced an uphill battle to prove loss causation, *i.e.*, that Defendants' fraud caused Lead Plaintiff and the Class to suffer economic loss.  Under the Supreme Court's holding in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 338, 125 S. Ct. 1627, 1629 (2005), a "private plaintiff who claims securities fraud must prove that the defendant's fraud caused an economic loss."  Defendants viewed as one of their strongest defenses that Lead Plaintiff had not, and could not, properly account for the damages attributable to Defendants' alleged misrepresentations.  Specifically, Defendants argued that the decline in TCP's stock price was not related to, or proximately caused by, revelations concerning the alleged

misstatements or omissions.  In fact, their expert opined that the Company revealed no facts on July 9, 2007, or August 22, 2007, that concerned the allegedly concealed information.  Rothman Decl., ¶75.  Although Lead Plaintiff countered those contentions with arguments of its own, significant risk of proving damages for the entirety of the Class Period existed.  *Id.*, ¶76.

While Lead Plaintiff remained confident in its ability to ultimately prove its claims and to counter any asserted affirmative defense, the risks of this Action being dismissed at the summary judgment stage, or of losing at trial, weighed against the immediate and substantial benefits of settlement, indicate that the Settlement is in the best interest of the Class.

### 5.    The Considerable Risk of Establishing Damages

Even if it successfully established liability, Lead Plaintiff also faced substantial risk in proving the existence and the amount of damages.  *See Indep. Energy*, 2003 WL 22244676, at *3-*4 (noting difficulty of proving damages in securities cases).  In order to prevail on its Exchange Act claims, Lead Plaintiff would be required to prove that the Defendants' false and misleading statements inflated the price of TCP common stock, and would also be required to prove the amount of the artificial inflation.  Lead Counsel, with the assistance of their economic consultant, calculated the artificial inflation in the market price of TCP common stock that in their opinion is attributable to the alleged wrongdoing.  This figure assumes that every element of the Class's damages theory is accepted by a jury as being correct and recoverable.  It also assumes that the Class Period would remain as alleged.  As such, its viability as an actual calculation for damages could be affected by many factors that arise in the Action, such as Defendants' rebuttals and defenses to Lead Plaintiff's damage calculations and expert testimony.

The presentation of damages is a complex matter which would require the presentation of expert testimony.  As a result, Lead Counsel already know that the Class will ultimately face a "battle of experts" – a battle in which no party is ever assured to prevail, and a battle which had

- 13 -

already arisen at the class certification stage. While Lead Counsel believe that reliable and

convincing expert testimony can be provided on the damages question, and that a judgment could

ultimately be obtained for the full amount of damages available under the law, meaningful obstacles

remain. First, the Court must determine that Lead Plaintiff's damages model is admissible - and

only then may a jury determine whether Lead Plaintiff's or Defendants' model is more accurate.

The Class is by no means assured of a ruling in their favor. *See, e.g.*, *Carpe v. Aquila, Inc.*, No. 02-

0388-CV-W-FJG, slip. op. (W.D. Mo. Mar. 23, 2005) (granting defendants' motion to exclude

plaintiffs' expert testimony);[5] *Kaufman v. Motorola, Inc.*, No. 95 C 1069, 2000 WL 1506892, at *2

(N.D. Ill. Sept. 21, 2000) (precluding in part plaintiffs' expert testimony). It is then possible that, in

the unavoidable "battle of experts," a jury might disagree with the Class's expert, or merely find

Defendants' expert more persuasive.[6] As a result of the aforementioned considerations, the

likelihood of proving damages, even assuming the Class prevailed on the liability issue, is somewhat

difficult. *See Veeco*, 2007 WL 4115809, at *9. As a result, this factor also weighs in favor of the

Settlement.

### 6.    The Risks of Maintaining the Class Action Through Trial

Had the Settlement not been reached, there is no assurance of obtaining and maintaining

Class status, since a court may exercise its discretion to re-evaluate the appropriateness of class

---

[5]     All unreported authorities referred to herein are attached hereto.

[6]     *See, e.g.*, *PaineWebber*, 171 F.R.D. at 129 (noting unpredictability of outcome of battle of
damage experts); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985)
("In this 'battle of experts,' it is virtually impossible to predict with any certainty which testimony
would be credited, and ultimately, which damages would be found to have been caused by
actionable, rather than the myriad nonactionable factors such as general market conditions."), *aff'd*,
798 F.2d 35 (2d Cir. 1986). *See also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001)
("establishing damages at trial would lead to a 'battle of experts' . . . with no guarantee whom the
jury would believe").

certification at any time. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."); *see also Berger v. Compaq Computer Corp.*, 257 F.3d 475 (5th Cir. 2001) (decertifying class, finding proposed class representatives did not sufficiently remain apprised of status and claims of litigation). Absent settlement, Defendants would continue to oppose class certification and they would likely thereafter seek to have the Class decertified if their defenses were initially unsuccessful. The Settlement avoids any uncertainty with respect to these issues.

### 7. The Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). "[T]he Court is not to compare the terms of the Settlement with a hypothetical or speculative measure of a recovery that might be achieved by prosecution of the litigation to a successful conclusion." *Veeco*, 2007 WL 4115809, at *11. The Court need only determine whether the Settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted); *Newman*, 464 F.2d at 693 ("[I]n any case there is a range of reasonableness with respect to a settlement."). *See also Indep. Energy*, 2003 WL 22244676, at *4 (noting few cases tried before jury result in full amount of damages claimed). The Second Circuit has described the "'range of reasonableness'" as "'a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in . . . any litigation.'" *Wal-Mart Stores*, 396 F.3d at 119 (quoting *Newman*, 464 F.2d at 693). Nevertheless, this Settlement, which represents a range of 5% to 12% of Lead Plaintiff's estimate of maximum provable damages, exceeds the average recovery in shareholder litigation.

Rothman Decl., ¶67.  *See also* Ellen M. Ryan, Laura E. Simmons, *Securities Class Action Settlements, 2008 Review and Analysis*, at 6 (Cornerstone Research 2009) (settlements as a percentage of "estimated damages" averaged 3.2% in 2008); Stephanie Plancich, Ph.D., Brian Saxton, Svetlana Starkyh, *Recent Trends in Shareholder Class Actions:  Filings Return to 2005 Levels as Subprime Cases Take Off; Average Settlements Hit New High*, at 14 (NERA 2007) (median ratio of settlements to investor losses in 2007 was 2.4%).

Finally, in analyzing the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road, without any further risk to the Class.  *See AOL Time Warner*, 2006 WL 903236, at *13 (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").  In light of the complex legal and factual issues typically present in securities class actions, the unpredictability of a lengthy and complex trial and the appellate process that would most likely follow, the fairness of a substantial settlement is clearly apparent.  *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002).[7]

### 8.  The Ability of the Defendants to Withstand a Greater Judgment

The court may also consider the defendants' ability to withstand a judgment greater than that secured by settlement.  *Grinnell*, 495 F.2d at 463.  The fact that TCP could have paid more money does not render the Settlement unreasonable, however.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004) ("[T]he fact that [the defendant] could afford to pay more does not

---

[7]     Not surprisingly, Defendants calculated damages, if any, at significantly less than Lead Plaintiff.

mean that it is obligated to pay any more than what the . . . class members are entitled to under the theories of liability that existed at the time the settlement was reached."); *Sony*, 2008 WL 1956267, at *8 ("a defendant is not required to 'empty its coffers' before a settlement can be found adequate") (citation omitted). "Where, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest the settlement is unfair." *Id.*

Accordingly, Lead Counsel submit that this Court should find that the *Grinnell* factors, taken together, weigh in favor of the Settlement and that the Settlement should be approved.

## IV. THE PLAN OF ALLOCATION OF THE SETTLEMENT FUND IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT

The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367 (citation omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 343 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Am. Bank Note*, 127 F. Supp. 2d at 429-30 (citation omitted); *see also WorldCom*, 388 F. Supp. 2d at 344 (same). Further, courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978).

The Plan of Allocation, which was fully described in the Notice, has a rational basis and was formulated by Lead Counsel, in consultation with damage experts, ensuring its fairness and reliability. Rothman Decl., ¶86. *See Veeco*, 2007 WL 4115809, at *13. Under the proposed Plan of

Allocation, each Authorized Claimant (as defined in ¶1.2 of the Stipulation) will receive a *pro rata* share of the Net Settlement Fund (*i.e.*, the settlement consideration less taxes, approved costs, fees, and expenses), with that share to be determined by the ratio that the Authorized Claimant's allowed claim bears to the total allowed claims of all Authorized Claimants.

The Plan of Allocation takes into account when Class Members purchased and when and whether Class Members sold their TCP common stock. Accordingly, some shareholders may benefit more from the Settlement than others depending upon when they made their transactions. This is fair and reasonable, as there is no rule that a settlement benefit all class members equally. *Veeco*, 2007 WL 4115809, at *13; *Global Crossing*, 225 F.R.D. at 462. Indeed, it is appropriate for interclass allocations to be based upon, among other things, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue. *See In re Holocaust Victim Assets Litig.*, 413 F.3d 183, 186 (2d Cir. 2001). Otherwise, certain class members may receive an inequitable windfall, to the detriment of others. *PaineWebber*, 171 F.R.D. at 133.

Lead Counsel believe that the Plan of Allocation is fair and reasonable, and respectfully submit that it should be approved by the Court. It should be noted that not one objection to the Plan of Allocation has been filed, which also supports approval by the Court. *See Veeco*, 2007 WL 4115809, at *14; *Maley*, 186 F. Supp. 2d at 367.

## V.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

The parties have stipulated to certification of the Class for settlement purposes, and Lead Plaintiff's motion for preliminary approval of the Settlement contained an extensive discussion on

the appropriateness of certifying the proposed Class.[8]  That portion of the supplemental preliminary

approval brief is respectfully incorporated herein.  The ultimate decision regarding certification rests

with the Court.  In its July 17, 2009 Preliminary Approval Order, the Court conditionally certified

the Class for purposes of settlement.  Because all the requirements for class certification have been

met, *see* Federal Rules of Civil Procedure 23(a) and 23(b)(3), and in light of the substantial benefits

the Settlement confers on the Class, Lead Plaintiff respectfully requests that the Court now grant this

Action final class certification for the purposes of the Settlement.

### A.    Numerosity, Commonality, and Typicality

The Class meets the numerosity, commonality, and typicality standards of Rule 23(a)(1)-(3).

Over 38,500 copies of the Notice were sent to potential Class Members who purchased TCP

common stock between March 9, 2006 and August 23, 2007, inclusive.  *See* La Count Aff., ¶¶10-11.

*See also Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 (MBM), 2004 WL 307306, at *1

(S.D.N.Y. Feb. 18, 2004) ("[c]ommon sense dictates" that class members in securities cases exceed

100).  Moreover, there are substantial questions of law and fact common to all Class Members (*e.g.*,

whether Defendants violated the federal securities laws and whether members of the Class sustained

damages as a result of the misrepresentations and/or omissions, and the extent of those damages).

In *Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250, the Supreme Court noted that the common

issues test is readily met in securities cases.  *See also In re Veeco Instruments, Inc., Sec. Litig.*, 235

F.R.D. 220, 238 (S.D.N.Y. 2006) ("The commonality requirement has been applied permissively in

the context of securities fraud litigation.").  Further, Lead Plaintiff's claims are "typical" of other

---

[8]    The use of a settlement class allows the parties to concede, for purposes of settlement
negotiations, the propriety of a class action.  The Supreme Court has expressly approved the use of
this device.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 117 S. Ct. 2231 (1997).

Class Members' claims because it purchased TCP common stock during the period of asserted price inflation and thus has alleged damages similar to other Class Members. *See In re Host Am. Corp. Sec. Litig.*, No. 05-CV-1250 (VLB), 2007 WL 3048865, at *5 (D. Conn. Oct. 18, 2007) (finding typicality where plaintiffs alleged defendants committed same acts, in same manner against all class members).

### B.    Adequacy of Representation

The adequacy requirement of Rule 23(a)(4) requires Lead Plaintiff to demonstrate that (1) there is no conflict of interest between Lead Plaintiff and the other Class Members; and (2) Lead Counsel are qualified, experienced, and capable of conducting the Action. *AOL Time Warner*, 2006 WL 903236, at *5. Here, this Court has already designated the proposed class representative as a lead plaintiff pursuant to the PSLRA, which provides that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). Furthermore, Lead Plaintiff has retained highly competent counsel with extensive experience litigating complex securities class actions. Thus, Lead Plaintiff and its counsel have diligently advanced the interests of the Class.

### C.    Predominance of Common Issues and Superiority

Certification of a class under Rule 23(b)(3) requires that common issues predominate over individual issues and that the class action mechanism is superior to other methods of adjudicating the controversy. *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2009 WL 1649704, at *7 (S.D.N.Y. June 10, 2009). In this Action, both of these requirements are satisfied. First, in order to satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. As the Supreme Court recognized in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud

or violations of the antitrust laws." *Amchem*, 521 U.S. at 625, 117 S. Ct. at 2250. Here, the issues of liability and causation are common to all members of the Class and clearly predominate over any individual issues. Second, resolution of this Action through a class action is far superior to litigating thousands of individual claims where the expense for a single investor in pursuing a separate action would likely exceed the individual's loss in TCP common stock. *In re Salomon Analyst Metromedia Litig.*, 236 F.R.D. 208, 218 (S.D.N.Y. 2006) ("[i]t is beyond dispute . . . that in determining whether defendants made false representations or omitted material facts, with scienter, and in connection with the purchase or sale of securities . . . common issues will predominate over individual ones").

In light of the foregoing, all of the requirements of Rules 23(a) and 23(b)(3) are satisfied, and thus, the Court should certify this Class for settlement purposes.

## VI.    CONCLUSION

The Settlement reached in this Action is an excellent result under the circumstances present here. For the foregoing reasons, the $12 million all-cash Settlement and Plan of Allocation of the Settlement proceeds are fair, reasonable, and adequate and should be granted the Court's final approval. Additionally, all the requirements for certification have been met, and Lead Counsel respectfully submit that the Court should certify the Class for settlement purposes.

DATED: October 2, 2009              Respectfully submitted,

                                    COUGHLIN STOIA GELLER
                                      RUDMAN & ROBBINS LLP
                                    SAMUEL H. RUDMAN
                                    ROBERT M. ROTHMAN
                                    58 South Service Road, Suite 200
                                    Melville, NY 11747
                                    Telephone: 631/367-7100
                                    631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
ELLEN GUSIKOFF STEWART
JONAH H. GOLDSTEIN


_____
        *s/ Ellen Gusikoff Stewart*
        ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiffs

JENKINS & CARTER
NATHAN M. JENKINS
501 Hammill Lane
Reno, NV  89511-1004
Telephone:  775/829-7800
775/829-0511 (fax)

Additional Counsel for Plaintiff


Document1

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 2, 2009.

_s/ Ellen Gusikoff Stewart_
ELLEN GUSIKOFF STEWART

COUGHLIN STOIA GELLER
      RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:07-cv-08252-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Michael J. Gilbert**
  michael.gilbert@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Jonah H. Goldstein**
  Jgoldstein@csgrr.com

- **Robert Jeffrey Jossen**
  robert.jossen@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Fainna Kagan**
  fkagan@csgrr.com

- **Jonathan D Polkes**
  scott.woller@weil.com,jonathan.polkes@weil.com,georgia.magno@weil.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Robert M. Rothman**
  rrothman@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Richard P. Swanson**
  richard_swanson@aporter.com,anthony_boccanfuso@aporter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual List
*Hall v. The Children's Place Retail Stores, Inc., et al.*
Civil Action No. 1:07-cv-08252-SAS

Nathan M. Jenkins
Jenkins & Carter
501 Hammill Lane
Reno, NV  89511-1004