UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
DEBRA HALL, Individually and on Behalf of  :    Civil Action No. 1:07-cv-08252-SAS
All Others Similarly Situated,            :    **(Consolidated)**
                                  :
              Plaintiff,    :    <u>CLASS ACTION</u>
                                    :
      vs.                         :
                                    :
THE CHILDREN'S PLACE RETAIL        :
STORES, INC., et al.,                :
                                    :
              Defendants.    :
                                    :
——————————————————— x

LEAD PLAINTIFF'S COUNSEL'S MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND REIMBURSEMENT OF
LEAD PLAINTIFF'S EXPENSES

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    PRELIMINARY STATEMENT .........................................................................1

III.   HISTORY OF THE LITIGATION ....................................................................3

IV.    ARGUMENT.........................................................................................................5

    A.    Lead Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund..................................................................5

    B.    The Court Should Award a Reasonable Percentage of the Common Fund............6

    C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable ..................8

        1.    The Time and Labor Expended by Counsel .................................................9

        2.    The Risks of the Litigation ......................................................................11

            a.    The Contingent Nature of Lead Plaintiff's Counsel's Representation Supports the Requested Fee ...................................11

            b.    Litigation Risks...................................................................13

            c.    Risk as to Loss Causation and Damages........................................14

        3.    The Magnitude and Complexity of the Litigation ....................................15

        4.    The Quality of Representation ..................................................................16

        5.    Public Policy Considerations ...................................................................17

    D.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method .....................................18

    E.    The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check...................................................................................20

    F.    The Class's Reaction to the Fee Request ...............................................23

V.     LEAD PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION .........23

VI.    LEAD PLAINTIFF REIMBURSEMENT.........................................................24

**Page**

VII.    CONCLUSION..................................................................................................................25

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ....................................................................12

*Basic Inc. v. Levinson*,
    485 U.S. 224, 108 S. Ct. 978 (1988) ...........................................................17

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299, 105 S. Ct. 2622 (1985).......................................................6, 17

*Blum v. Stenson*,
    465 U.S. 886, 104 S. Ct. 1541 (1984) ..........................................................19

*Boeing Co. v. Van Gemert*,
    444 U.S. 472, 100 S. Ct. 745 (1980).............................................................5

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) .....................................................................7

*Camden I Condo. Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) .....................................................................7

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ..........................................................15, 18

*Cosgrove v. Sullivan*,
    759 F. Supp. 166 (S.D.N.Y. 1991) ..............................................................22

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).......................................................................11

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................. *passim*

*Harman v. Lyphomed, Inc.*,
    945 F.2d 969 (7th Cir. 1991) ......................................................................7

*Hicks v. Morgan Stanley & Co.*,
    No. 01 Civ. 10071 (RJH), 2005 WL 2757792
    (S.D.N.Y. Oct. 24, 2005) ........................................................................8, 19

**Page**

*In re Acclaim Entm't, Inc. Sec. Litig.*,
  No. 2:03-CV-1270 (JS) (ETB),
  slip op. (E.D.N.Y. Oct. 2, 2007) ...................................................19

*In re Am. Bank Note Holographics*,
  127 F. Supp. 2d 418 (S.D.N.Y. 2001)......................................7, 8, 11

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
  No. MDL 1500, 2006 WL 903236
  (S.D.N.Y. Apr. 6, 2006)...................................................................15

*In re Apollo Group, Inc. Sec. Litig.*,
  No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995
  (D. Ariz. Aug. 4, 2008) ...................................................................12

*In re AremisSoft Corp. Sec. Litig.*,
  210 F.R.D. 109 (D.N.J. 2002)..........................................................10

*In re Brown Co. Sec. Litig.*,
  355 F. Supp. 574 (S.D.N.Y. 1973) ..................................................16

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992) ...........................................................11

*In re Doral Fin. Corp. Sec. Litig.*,
  No. 1:05-md-01706-RO, slip op.
  (S.D.N.Y. July 17, 2007) ............................................................8, 21

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .................................................7, 24

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995).................................................................7

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ......................................................8

*In re Harrah's Entm't*,
  No. 95-3925, 1998 WL 832574
  (E.D. La. Nov. 25, 1998) ................................................................22

*In re Ikon Office Solutions, Inc.*,
  194 F.R.D. 166 (E.D. Pa. 2000)...................................................15, 22

**Page**

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    302 F. Supp. 2d 180 (S.D.N.Y. 2003).............................................................................23

*In re Interpublic Sec. Litig.*,
    No. Civ. 6527 (DLC), 2004 WL 2397190
    (S.D.N.Y. Oct. 26, 2004) .............................................................................................6

*In re Ivan F. Boesky Sec. Litig.*,
    888 F. Supp. 551 (S.D.N.Y. 1995) ............................................................................20

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. C-02-1486 CW, Verdict Question Form
    (N.D. Cal. Nov. 27, 2007)........................................................................................12

*In re LaBranche Sec. Litig.*,
    No. 03-CV-8201 (RWS), slip op.
    (S.D.N.Y. Jan. 22, 2009)......................................................................................7, 19

*In re Lloyd's Am. Trust Fund Litig.*,
    2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..........................................................8

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488
    (S.D. Cal. Aug. 30, 1990) .........................................................................................10

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 WL 661515
    (E.D.N.Y. Aug. 7, 1998) ..........................................................................................17

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474
    (S.D.N.Y. Feb. 1, 2007) ...........................................................................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................21

*In re OSI Pharms., Inc. Sec. Litig.*,
    No. 2:04-CV-05505-JS-WDW, slip op.
    (E.D.N.Y. Aug. 22, 2008).....................................................................................8, 19

*In re Prudential Sec. Ltd. P'ships Litig.*,
    985 F. Supp. 410 (S.D.N.Y. 1997) ...........................................................................11

**Page**

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005)...........................................................................23

*In re RJR Nabisco Sec. Litig.*,
    No. MDL 818 (MBM), 1992 WL 210138
    (S.D.N.Y. Aug. 24, 1992) .............................................................................21

*In re Sumitomo Copper Litig.*,
    74 F. Supp. 2d 393 (S.D.N.Y. 1999)...............................................................8

*In re Superior Beverage/Glass Container Consol. Pretrial*,
    133 F.R.D. 119 (N.D. Ill. 1990).....................................................................22

*In re Tommy Hilfiger Sec. Litig.*,
    No. 1:04-CV-07678-SAS,
    slip op. (S.D.N.Y. Oct. 8, 2008) ......................................................................8

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160 (S.D.N.Y. 1989) ................................................................18

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
    No. 1:03-CV-8284 (RWS), slip op.
    (S.D.N.Y. Dec. 6, 2006)................................................................................19

*In re Veeco Instruments Inc. Sec. Litig.*,
    No. 05 MDL 01695 (CM), 2007 WL 4115808
    (S.D.N.Y. Nov. 7, 2007) ..................................................................6, 7, 8, 19

*In re Warner Commc'ns Sec. Litig.*,
    618 F. Supp. 735 (S.D.N.Y. 1985),
    *aff'd*, 798 F.2d 35 (2d Cir. 1986) .............................................................18, 20

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005).............................................................18

*In re Xcel Energy, Inc.*,
    364 F. Supp. 2d 980 (D. Minn. 2005)..................................................10, 11, 22

*J.I. Case Co. v. Borak*,
    377 U.S. 426 (1964)..........................................................................................6

*Johnston v. Comerica Mortgage Corp.*,
    83 F.3d 241 (8th Cir. 1996) ...............................................................................7

**Page**

*Kurzweil v. Philip Morris Cos.*,
No. 94 Civ. 2373 (MBM), 1999 WL 1076105
(S.D.N.Y. Nov. 30, 1999) ....................................................................21

*Liberty Capital Group, Inc. v. KongZhong Corp.*,
No. 1:04-CV-06746-SAS, slip op.
(S.D.N.Y. Apr. 14, 2006) ....................................................................19

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973).................................................................20

*Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976) ................................................................20

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)..................................... *passim*

*Mathes v. Roberts*,
85 F.R.D. 710 (S.D.N.Y. 1980) ...........................................................15

*McKenzie Constr., Inc. v. Maynard*,
758 F.2d 97 (3d Cir. 1985)...................................................................10

*Missouri v. Jenkins*,
491 U.S. 274, 109 S. Ct. 2463 (1989)...........................................19, 21

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
711 F.2d 1136 (2d Cir. 1983)...............................................................21

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) .................................................................7

*Rabin v. Concord Assets Group*,
No. 89 CIV 6130 (LBS), 1991 WL 275757
(S.D.N.Y. Dec. 19, 1991).....................................................................22

*Rawlings v. Prudential-Bache Props.*,
9 F.3d 513 (6th Cir. 1993) .....................................................................7

*Ressler v. Jacobson*,
149 F.R.D. 651 (M.D. Fla. 1992)....................................................16, 17

*Robbins v. Koger Props.*,
116 F.3d 1441 (11th Cir. 1997) ...........................................................12

**Page**

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................................22

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999)...................................................................................5, 7

*Silverberg v. People's Bank*,
    23 Fed. Appx. 46 (2d Cir. 2001) .................................................................................19

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .................................................................................7

*Spann v. AOL Time Warner, Inc.*,
    No. 02 Civ. 8238 (DLC), 2005 WL 1330937
    (S.D.N.Y. June 7, 2005) .................................................................................20

*Stefaniak v. HSBC Bank USA, N.A.*,
    No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872
    (W.D.N.Y. July 8, 2008)...............................................................................8, 19

*Swedish Hosp. Corp. v. Shalala*,
    1 F.3d 1261 (D.C. Cir. 1993) .................................................................................7

*Taft v. Ackermans*,
    No. 02 Civ. 7951 (PKL), 2007 WL 414493
    (S.D.N.Y. Jan. 31, 2007)...............................................................................18, 19

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
    No. 01-CV-11814(MP), 2004 WL 1087261
    (S.D.N.Y. May 14, 2004) .................................................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308, 127 S. Ct. 2499 (2007)...............................................................6, 17

*TSC Indus. v. Northway, Inc.*,
    426 U.S. 438, 96 S. Ct. 2126 (1976)...............................................................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)...............................................................................7

*Weiss v. Mercedes-Benz of N. Am.*,
    899 F. Supp. 1297 (D.N.J. 1995) .................................................................................21

- viii -

**Page**

*Zerkle v. Cleveland-Cliffs Iron Co.*,
    52 F.R.D. 151 (S.D.N.Y. 1971) ...................................................................15

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) .........................................................................................24
    §78u-4(a)(6) ................................................................................2, 7, 25
    §78u-5(i)(1) ...........................................................................................14

Federal Rules of Civil Procedure
    Rule 1 .............................................................................................10, 11

**SECONDARY AUTHORITIES**

1 Alba Conte, *Attorney Fee Awards* (2d ed. 1993)
    §2.06 ......................................................................................................22

Charles Alan Wright, Arthur R. Miller, Mary Kay Kane,
*Federal Practice and Procedure*:  Civil 3d (3d ed. 2005)
    §1803 .......................................................................................................5

Third Circuit Task Force, *Court Awarded Attorney Fees*
    108 F.R.D. 237 (Oct. 8, 1985) .............................................................7

## I.    INTRODUCTION

Lead Plaintiff's counsel ("Lead Plaintiff's Counsel") have succeeded in obtaining a cash settlement fund of $12 million for the benefit of the Class.[1]  This excellent result, obtained despite serious obstacles to recovery, is a credit to Lead Plaintiff's Counsel's vigorous prosecution.  Lead Plaintiff's Counsel now respectfully move this Court for an award of attorneys' fees in the amount of 27% of the Settlement Fund.[2]  In addition, Lead Plaintiff's Counsel respectfully request $291,553.76 in expenses that were reasonably and necessarily incurred in prosecuting this consolidated class action (the "Litigation") and obtaining this substantial settlement for the benefit of the Class.[3]  Finally, Lead Plaintiff Laborers Pension Trust Fund for Northern Nevada seeks reimbursement of expenses of $5,798.10 directly incurred by it in service to the Class as Lead Plaintiff.

## II.    PRELIMINARY STATEMENT

The $12 million settlement obtained by Lead Plaintiff's Counsel is an excellent result when considering the risk that the case could be summarily disposed of after years of litigation, upon

---

[1]    Unless otherwise defined, all capitalized terms have the meaning ascribed to them in the Stipulation of Settlement.

[2]    The notice mailed to members of the Class stated that Lead Plaintiff's Counsel would seek a fee not to exceed 27% of the Settlement Fund and expenses not to exceed $400,000, plus interest on both amounts.

[3]    In support of this application for attorneys' fees and expenses, Lead Plaintiff's Counsel also submit herewith the Declaration of Robert M. Rothman in Support (1) Final Approval of Settlement and Plan of Allocation of Settlement Proceeds; and (2) Award of Attorneys' Fees and Expenses and Reimbursement of Lead Plaintiff's Expenses ("Rothman Decl.").  The Rothman Declaration is an integral part of this submission.  The Court is respectfully referred to it for a detailed description of the factual and procedural history of the Litigation, the claims asserted, Lead Plaintiff's and Lead Plaintiff's Counsel's investigation and litigation efforts, and the negotiations leading to the Settlement.

Defendants' motions for summary judgment following the close of fact discovery, or at trial.[4]  As explained below and in the Rothman Declaration, Lead Plaintiff's Counsel expended significant time and expenses and overcame significant potential obstacles to reach this substantial resolution for the Class.  Specifically, Lead Plaintiff faced significant challenges to proving materiality, falsity, scienter, and loss causation.  If Defendants succeeded in establishing any of these defenses, the amount of (and in fact the existence of) damages the Class may recover would be affected, and damages could have been significantly less than Lead Plaintiff's consultants had calculated, and the recovery for the Class could have been significantly less than that obtained here.  Thus, Lead Plaintiff's Counsel's efforts have resulted in a substantial recovery.

For their efforts and the risks and contingencies they faced, Lead Plaintiff's Counsel respectfully request that the Court award attorneys' fees in the amount of 27% of the Settlement Fund, plus expenses in the amount of $291,553.76, plus interest on both amounts at the same rate that is earned by the Settlement Fund.[5]  Following an extensive Court-ordered notice program, not a single Class Member has objected to this fee and expense request, and Lead Plaintiff's Counsel respectfully submit that these amounts are fair and reasonable under the circumstances.[6]  In addition,

---

[4]     The Defendants are The Children's Place Retail Stores, Inc. ("TCP" or the "Company"), Susan Riley, and Ezra Dabah.

[5]     Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), fees and expenses awarded to counsel for the Class include "prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6).

[6]     As of the filing of this fee memorandum, which is after the September 25, 2009 deadline for filing objections, Lead Plaintiff's Counsel have not received any objections to the fee request. Pursuant to the Court's July 17, 2009 Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), more than 38,500 copies of the Notice of Proposed Settlement of Shareholder Class Action, Hearing Thereon, and Right to Appear (the "Notice") were mailed to potential members of the Class, advising that Lead Plaintiff's Counsel intended to apply to

Lead Plaintiff seeks $5,798.10 in reimbursement of expenses incurred by it in its representation of the Class.

## III.    HISTORY OF THE LITIGATION

The first complaint in this Litigation was filed on September 21, 2007, seeking to recover for Defendants' alleged violations of the Securities Exchange Act of 1934 ("Exchange Act"). By Order dated December 17, 2007, the Court consolidated the pending complaints, appointed the Lead Plaintiff, and approved Lead Plaintiff's selection of Lead Counsel.

On February 28, 2008, Lead Plaintiff filed the Consolidated Amended Class Action Complaint for Violations of Federal Securities Laws ("CAC"). The CAC included the fruits of Lead Plaintiff's Counsel's extensive investigation, and detailed Defendants' misrepresentations and omissions concerning (i) the Company's relationship with The Walt Disney Company ("Disney"), pursuant to which the Company was operating the Disney Stores; (ii) the Company's stock option practices; and (iii) the Company's internal controls.

Defendants filed motions to dismiss the CAC, arguing that TCP had, in fact, disclosed that its agreement with Disney could be terminated upon any material breach, and issued multiple statements when there was even the suggestion of a breach. Rothman Decl., ¶31. Defendants further claimed that the backdating of stock options was unintentional and the resulting restatement resulted in no significant stock drop, defeating any loss causation with respect to that claim. *Id.* Defendants also contended that Lead Plaintiff would be unable to demonstrate that Defendants made any of the alleged misstatements or omissions with the requisite scienter. *Id.* Finally, Defendants

---

the Court for an award of attorneys' fees not to exceed 27% of the Settlement Fund, plus expenses of no greater than $400,000.

argued that any misstatements or omissions were immaterial statements of optimism and puffery, and therefore protected by the PSLRA's safe harbor provision and the bespeaks caution doctrine. *Id.*

Lead Plaintiff opposed Defendants' motions, and by Order dated July 18, 2008, the Court denied the motions to dismiss in their entirety. On July 31, 2008, the Court entered a scheduling order setting the schedule for the remainder of the case. Pursuant to the Court's scheduling order, Lead Plaintiff served its initial document request and its initial disclosure statement. Immediately thereafter, the parties negotiated and entered into a Confidentiality Agreement and Protective Order, which was entered by the Court.

The parties conducted thorough negotiations regarding the scope of discovery, and were able to resolve nearly all of their disagreements. The parties provided the Court with written submissions concerning the outstanding issues, and appeared before the Court on November 6, 2008, at which conference the outstanding issues were resolved. Defendants ultimately produced 1.6 million pages of documents to Lead Plaintiff's Counsel, which were carefully reviewed and analyzed. Lead Plaintiff's Counsel also retained experts and consultants to assist them in preparing their case. These experts and consultants included forensic accountants, who assisted with the options backdating claims, and economists, who advised on class certification, damages, causation, and materiality.

Lead Plaintiff moved for class certification on November 14, 2008, and in support of its motion, submitted the declaration of its expert Steven P. Feinstein. A representative of Lead Plaintiff was deposed by Defendants on December 23, 2008, following the production of documents. Defendants filed their opposition to Lead Plaintiff's motion on December 31, 2008, accompanied by the expert declaration of Vincent Warther. Lead Plaintiff filed its reply brief on January 20, 2009. Following a conference with the Court, and in light of upcoming settlement mediations, Lead Plaintiff withdrew, without prejudice to refiling, its motion for class certification.

Following the filing of the class certification motion, the parties discussed a potential settlement of the Litigation. The parties agreed to attempt to mediate the case before the Honorable Nicholas H. Politan (Ret.). The parties met with Judge Politan on March 26, 2009, but did not reach an agreement. At Judge Politan's suggestion, a second mediation was scheduled. Judge Politan held telephone conversations with the parties in the interim. On April 30, 2009, the parties attended the second mediation session, and at the end of the day, an agreement to settle the case for $12 million was reached. The parties then negotiated and finalized the Stipulation of Settlement and supporting exhibits, and moved for preliminary approval of the Settlement. Following additional briefing, that motion was granted by the Court on July 17, 2009.

## IV.    ARGUMENT

### A.    Lead Plaintiff's Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 749 (1980); *see also Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999). "The court's authority to reimburse the representative parties . . . stems from the fact that the class-action device is a creature of equity and the allowance of attorney-related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure*: Civil 3d §1803, at 325 (3d ed. 2005). The purpose of the common fund doctrine is to fairly and adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *See*

*also Goldberger*, 209 F.3d at 47; *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007).

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310, 105 S. Ct. 2622, 2628 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S. Ct. 2499 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. Civ. 6527 (DLC), 2004 WL 2397190, at \*10 (S.D.N.Y. Oct. 26, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id.*

## B.   The Court Should Award a Reasonable Percentage of the Common Fund

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Veeco*, 2007 WL 4115808, at \*3. In expressly approving the

percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48-49;[7] *Savoie*, 166 F.3d at 460 (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases).[8]

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *In re LaBranche Sec. Litig.*, No. 03-CV-

---

[7]    The use of the percentage-of-the-fund method in common fund cases has been approved by every other Court of Appeals that has addressed the issue. *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993). Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases. *Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

[8]    The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §78u-4(a)(6) (emphasis added). Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions. *See Veeco*, 2007 WL 4115808, at *3; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

8201 (RWS), slip op. (S.D.N.Y. Jan. 22, 2009);[9] *In re Tommy Hilfiger Sec. Litig.*, No. 1:04-CV-07678-SAS, slip op. (S.D.N.Y. Oct. 8, 2008); *In re OSI Pharms., Inc. Sec. Litig.*, No. 2:04-CV-05505-JS-WDW, slip op. (E.D.N.Y. Aug. 22, 2008); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. July 8, 2008); *Veeco*, 2007 WL 4115808, at *3; *In re Doral Fin. Corp. Sec. Litig.*, No. 1:05-md-01706-RO, slip op. (S.D.N.Y. July 17, 2007); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *Maley*, 186 F. Supp. 2d at 370 (noting that the trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available"). The percentage approach not only aligns the interests of counsel and the class, *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note Holographics*, 127 F. Supp. 2d at 432.

### C.    The Relevant Factors Confirm that the Requested Fee Is Reasonable

The Second Circuit in *Goldberger* explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

---

[9]    All unreported authorities referred to herein are attached hereto.

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

209 F.3d at 50. An analysis of these factors demonstrates that the requested fee is fair and reasonable.

### 1.     The Time and Labor Expended by Counsel

Lead Plaintiff's Counsel have expended substantial time and effort pursuing this Litigation on behalf of the Class. Since its inception over two years ago, Lead Plaintiff's Counsel and their paraprofessionals devoted 1,881.65 hours to this Litigation. As discussed more fully above and in the Rothman Declaration, Lead Plaintiff's Counsel conducted an extensive investigation of the issues involved in this case. This investigation included a review of all publicly available information about the Company, interviews of former TCP and Disney employees, and consultation with economists and forensic accountants. Lead Plaintiff's Counsel undertook this investigation while the PSLRA-mandated discovery stay was in effect. Once formal discovery commenced, upon resolution of Defendants' motions to dismiss, Lead Plaintiff's Counsel reviewed over one and one-half million pages of documents produced by Defendants, briefed class certification, retained and consulted with experts, and also engaged in arm's-length negotiations with Defendants, assisted by Judge Politan. Moreover, Lead Plaintiff's Counsel, with the assistance of their damage consultant, calculated the estimated damages suffered by the Class and prepared the proposed Plan of Allocation. The legal work on this Litigation will not end with the Court's approval of the proposed Settlement.

Additional hours and resources will necessarily be expended assisting members of the Class with their Proof of Claim and Release forms, shepherding the claims process, and responding to Class Member inquiries. The tremendous time and effort devoted to this case by Lead Plaintiff's Counsel to obtain a $12 million settlement confirm that the 27% fee request is reasonable.

In addition, in reviewing applications for attorneys' fees in common fund cases, courts do not penalize counsel for obtaining settlements for class members at a relatively early juncture in the case. As stated by the court in *Maley*:

> [E]fficient prosecution of plaintiffs' claims weighs in favor of a finding of the quality of Plaintiffs' Class Counsel's representation here, especially given the dire financial straits of [defendant]. "[A] prompt and efficient attorney who achieves a fair settlement without litigation serves both his client and the interests of justice." In the context of a complex class action, early settlement has far reaching benefits in the judicial system.

186 F. Supp. 2d at 373 (quoting *McKenzie Constr., Inc. v. Maynard*, 758 F.2d 97, 101-02 (3d Cir. 1985)). *Accord In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133 (D.N.J. 2002) ("Informal discovery leading to an early settlement that avoids such costs [of formal discovery] favors approval of the fee application."); *In re M.D.C. Holdings Sec. Litig.*, No. CV 89-0090 E (M), 1990 U.S. Dist. LEXIS 15488, at *21 (S.D. Cal. Aug. 30, 1990) ("Early settlements benefit everyone involved in the process and everything that can be done to encourage such settlements – especially in complex class action cases – should be done.").

As stated by Judge David S. Doty of the United States District Court for the District of Minnesota in *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 992 (D. Minn. 2005), early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, which "'shall be construed and administered to ensure the ***just, speedy, and inexpensive determination*** of every action.'" (quoting Fed. R. Civ. P. 1) (emphasis in original). "Under Rule 1, as officers of the court, attorneys share the responsibility with the court of ensuring that cases are 'resolved not only fairly, but without

- 10 -

undue cost or delay.'" *Xcel*, 364 F. Supp. 2d at 992 (quoting Fed. R. Civ. P. 1 advisory committee's notes on 1993 amendments). The *Xcel* court complimented counsel for promptly resolving the litigation, and acknowledged that the modest lodestar presented to the court was a result of the efficient prosecution of the case. Here, Lead Plaintiff's Counsel have likewise litigated efficiently, and, for their efforts, seek a 27% fee.

### 2.    The Risks of the Litigation

#### a.    The Contingent Nature of Lead Plaintiff's Counsel's Representation Supports the Requested Fee

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended."

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted). "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Lead Plaintiff's Counsel in prosecuting this class action. Lead Plaintiff's Counsel undertook this action on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this action without a guarantee of compensation or even the recovery of out-of-pocket expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Plaintiff's Counsel have not been compensated for any time or expenses since this case began, and would have received no compensation or even reimbursement of expenses had this case not been successful.[10]

From the outset, Lead Plaintiff's Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for the enormous investment of time and money the case would require. In undertaking that responsibility, Lead Plaintiff's Counsel were obligated to assure that sufficient attorney and paraprofessional resources were dedicated to the prosecution of the Litigation and that funds were available to compensate staff and to pay for the considerable out-of-pocket costs which a case such as this entails. Rothman Decl., ¶¶98-106. Because of the nature of a contingent practice where cases are

---

[10]     The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g.*, *In re Apollo Group, Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2008 U.S. Dist. LEXIS 61995 (D. Ariz. Aug. 4, 2008) (on a motion for judgment as a matter of law, court overturned a jury verdict of $277 million in favor of shareholders based on insufficient evidence presented at trial to establish loss causation); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, Verdict Question Form (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiff against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiff in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

predominantly complex lasting several years, not only do contingent litigation firms have to pay regular overhead, but they also must advance the expenses of the litigation. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. *Id*.

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive. As a result, the fees that are awarded in successful litigations are used to cover enormous overhead expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.

### b.    Litigation Risks

While Lead Plaintiff remains confident in its ability to prove its claims and to effectively rebut Defendants' defenses, proving liability was far from certain. To succeed on its claims under the Exchange Act, Lead Plaintiff must establish that each Defendant was responsible for an omission or a misstatement that was material and that caused damage to the Class and that Defendants acted with scienter. *See TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 96 S. Ct. 2126 (1976).

As set forth in the Rothman Declaration and in the memorandum in support of settlement approval, Defendants countered the existence of materiality, scienter, and loss causation and convincingly presented their defenses during settlement discussions. Rothman Decl., ¶¶69-77. For instance, Defendants steadfastly maintained that Lead Plaintiff would not be able to prove its allegations because, for example, the dispute with Disney was an ordinary business dispute that they were not obligated to disclose. Rothman Decl., ¶70. Defendants pressed this argument by pointing to the fact that Disney had not actually exercised its option to cancel its agreement with the Company prior to Defendants' disclosures. According to Defendants, because Disney and the Company were attempting to resolve their issues amicably, this was nothing more than an immaterial business dispute that did not warrant disclosure. *Id.* Defendants also claimed that the statements

upon which Lead Plaintiff based the CAC fell squarely within the PSLRA's definition of forward-looking statements because they concerned management's plans and objectives for future operations; were statements of future economic performance; or were statements concerning management's expectations, beliefs, and optimistic anticipations. 15 U.S.C. §78u-5(i)(1). *See also* Rothman Decl., ¶71. Defendants also contended that many of the alleged misstatements were non-actionable statements of optimism or puffery. *Id.*

        In addition, Defendants argued that their statements were protected by the so-called "truth-on-the-market" defense, because much of the allegedly misrepresented information had been previously disclosed by Defendants or was otherwise publicly known. *Id.*, ¶72. Finally, Defendants vigorously challenged Lead Plaintiff's scienter allegations. Defendants argued that Lead Plaintiff did not plead particularized facts that any of the Company's statements regarding Disney or the Company's stock option grant practices and the resulting overstatement of TCP net income in 2005 and 2006 were made with knowledge or the belief they were false, or that they deliberately participated in any fraud, or that they were reckless for not knowing the purported falsity of the Company's statements. Defendants also maintained that Lead Plaintiff's motive and opportunity scienter allegations were insufficient. Defendants would never concede their liability and would press these defenses in motions for summary judgment, and ultimately, at trial.

### c.    Risk as to Loss Causation and Damages

        Whether Lead Plaintiff could even prove its estimate of damage was also unsettled. Rothman Decl., ¶75. Defendants strenuously disagreed with Lead Plaintiff's damage estimates, claiming that Lead Plaintiff would be unable to prove that the decline in the Company's stock price was related to, or proximately caused by, revelations concerning the alleged misstatements or omissions, as opposed to other potential causes. Defendants' expert opined that the Company revealed no facts on July 9, 2007, or August 22, 2007, that concerned the allegedly concealed information. *Id.* In order for the

- 14 -

Class to recover damages at the level estimated by Lead Plaintiff's expert, Lead Plaintiff would have to prevail on each and every one of the claims alleged, and for the entire Class Period. In addition, the damage assessments of the parties' trial experts would be sure to vary substantially, and trial would become a "battle of experts," as it had at the class certification stage. The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class's losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions. Thus, even if Lead Plaintiff prevailed as to liability at trial, the judgment obtained could well have been but for a fraction of the damages claimed. Despite these risks, Lead Plaintiff's Counsel obtained a $12 million settlement.

### 3.     The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992). It is widely recognized that shareholder actions are notoriously complex and difficult to prove. *See Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co*., 52 F.R.D. 151, 159 (S.D.N.Y. 1971). "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000). *See also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages. These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation."). This Litigation is no different from the cases referenced above, it involved difficult and complex issues. Lead Plaintiff's Counsel undertook their investigation on a

contingent basis. Completing discovery, including depositions and expert discovery, would take additional time, and would have cost several hundred thousand dollars more.

In addition, the expense and length of the Litigation would have been further exacerbated because Defendants would have undoubtedly filed motions for summary judgment. Briefing and discovery to resolve those motions would have entailed further substantial expenditure of time and effort. Assuming Lead Plaintiff survived Defendants' motions, trial preparation would have required many additional hours of work, at great expense. The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions, and the considerable expenditures of judicial resources. The "normal" cost of litigation, including copying, travel, depositions, computer support services, and other necessary expenses, are quite high. This Litigation was vigorously contested, and Defendants were represented by very experienced and qualified attorneys. *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel). Accordingly, this factor supports the conclusion that the requested fee is reasonable and fair.

### 4.    The Quality of Representation

The quality of the representation by Lead Plaintiff's Counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee. *See Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). It took a great deal of skill to achieve a settlement at this level in this particular case. Lead Plaintiff's Counsel are nationally known leaders in the fields of securities class actions and complex litigation. This Settlement represents a highly favorable result for the Class, one that is attributable to the diligence, determination, hard work, and reputation of Lead Plaintiff's Counsel, who developed, litigated, and successfully negotiated the settlement of this Litigation, an immediate cash recovery in a very difficult case, without the risk of

- 16 -

further litigation.  In light of these facts, Lead Plaintiff's Counsel's request for 27% of the Settlement Fund is fair and reasonable.

### 5.     Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31, 108 S. Ct. 978, 982-83 (1988).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310, 105 S. Ct. at 2628 (citation omitted); *Tellabs*, 551 U.S. at 313, 127 S. Ct. at 2504 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions).  Plaintiff's counsel in these types of cases are typically retained on a contingent basis, largely due to the huge commitment of time and expense required.  The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves.  Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases.  Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'"  *Ressler*, 149 F.R.D. at 657.  Thus, "public policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions."  *Id.*[11]

───────────────

[11]     *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-*

As actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives."); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *11 (S.D.N.Y. Jan. 31, 2007) ("'the class action mechanism and its associated percentage-of-recovery fee award solve the collective action problem otherwise encountered by which it would not be worthwhile for individual investors to take the time and effort to initiate the action'") (citation omitted).

### D.    The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47. The fee requested in this case is well within the range of fees awarded by courts in this Circuit, whether

---

*Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *8 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986). As former Chief Judge Brieant observed in *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160 (S.D.N.Y. 1989):

> Enforcement of the federal securities laws should be encouraged in order to carry out the statutory purpose of protecting investors and assuring compliance. A large segment of the public might be denied a remedy for violations of the securities laws if contingent fees awarded by the courts did not fairly compensate counsel for the services provided and the risks undertaken.

*Id.* at 169 (citation omitted).

considered as a percentage of the fund or as a multiple of the lodestar. In selecting an appropriate percentage award, the Supreme Court recognizes that an appropriate fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285, 109 S. Ct. 2463, 2470 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903*, 104 S. Ct. 1541, 1551* (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit. *Silverberg v. People's Bank*, 23 Fed. Appx. 46, 47-49 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund). Indeed, the requested fee is equal to or below what courts in this Circuit commonly award in common fund cases. *See Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *10 (awarding 33% of $2.9 million settlement, finding it "typical in class action settlements in the Second Circuit"); *LaBranche*, slip op. at 1 (awarding 30% of $13 million fund); *OSI Pharms.*, slip op. at 1 (awarding 30% of $9 million fund); *Veeco*, 2007 WL 4115808, at *12 (awarding 30% of $5.5 million fund); *In re Acclaim Entm't, Inc. Sec. Litig.*, No. 2:03-CV-1270 (JS) (ETB), slip op. at 9 (E.D.N.Y. Oct. 2, 2007) (awarding 30% of $13.65 million fund); *Taft*, 2007 WL 414493, at *11 (awarding 30% of $15.175 million fund); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (awarding 33-1/3% of $8 million fund); *Hicks*, 2005 WL 2757792, at *8, *9 (awarding 30% of $10 million settlement fund, stating a "30% fee is consistent with fees awarded in comparable class action settlements in the Second Circuit" and does not produce a "windfall"); *Liberty Capital Group, Inc. v. KongZhong Corp.*, No. 1:04-CV-

06746-SAS, slip op. at 1 (S.D.N.Y. Apr. 14, 2006) (awarding 30% of $3.5 million settlement fund); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 WL 1330937, at *8 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *Eastman Kodak*, 228 F.R.D. at 189 (awarding 40% of settlement fund, and noting that due to the relatively small settlement fund, the requested fee award was necessary to compensate counsel adequately); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).

### E.  The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages the district courts to cross check the proposed award against counsel's lodestar. *Goldberger*, 209 F.3d at 50. Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work. *See, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-69 (3d Cir. 1973), subsequently refined in *Lindy Bros. Builders v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 116-18 (3d Cir. 1976) (*en banc*). "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Lead Plaintiff's Counsel is reasonable and should be approved.

Lead Plaintiff's Counsel and their paraprofessionals have spent, in the aggregate, 1,881.65 hours in the prosecution of this case. *See* declarations of Lead Plaintiff's Counsel, submitted

herewith.  The resulting lodestar is $864,070.50, and requires a slight multiplier of approximately 3.75 to equate with the requested 27% of the Settlement Fund.[12]

In determining whether the rates are reasonable, the court should take into account the attorneys' legal reputation, experience, and status.  As Lead Plaintiff's Counsel's lodestar and expense submissions set forth, Lead Plaintiff's Counsel are among the most prominent, experienced, and well-regarded securities practitioners in the nation.  Therefore, their hourly rates are reasonable here.  *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL 313474, at *22 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates).

The multiplier reflected here falls within the range of multipliers found reasonable for cross-check purposes by courts in this Circuit and elsewhere and is fully justified here given the effort required, the risks faced and overcome, and the results achieved.  *See, e.g.*, *Doral*, slip op. at 5 (awarding multiplier of 10.26 on $130 million settlement fund); *Maley*, 186 F. Supp. 2d at 371 ("it clearly appears that the modest multiplier of 4.65 is fair and reasonable"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (approving multiplier of 3.97 and noting that "'[i]n recent years multipliers of between 3 and 4.5 have become common'") (citation omitted); *Kurzweil v. Philip Morris Cos.*, No. 94 Civ. 2373 (MBM), 1999 WL 1076105, at *3 (S.D.N.Y. Nov. 30, 1999) (same); *In re RJR Nabisco Sec. Litig.*, No. MDL 818 (MBM), 1992 WL 210138, at *8 (S.D.N.Y. Aug. 24, 1992) (approving fees of over $17.7 million, notwithstanding objection that such an award of fees represented a multiplier of 6); *Weiss v. Mercedes-Benz of N.*

---

[12]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds.  *See Jenkins*, 491 U.S. at 283-84, 109 S. Ct. at 2469; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1153 (2d Cir. 1983) (use of current rates appropriate where services were provided within two or three years of application).

*Am.*, 899 F. Supp. 1297, 1304 (D.N.J. 1995) (awarding fee resulting in 9.3 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (multiplier of 8.74); *Rabin v. Concord Assets Group*, No. 89 CIV 6130 (LBS), 1991 WL 275757, at *1-*2 (S.D.N.Y. Dec. 19, 1991) (multiplier of 4.4); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (multiplier of 5.5); *see also* 1 Alba Conte, *Attorney Fee Awards* §2.06, at 39 (2d ed. 1993) ("When a large common fund has been recovered and the hours are relatively small, some courts reach a reasonable fee determination based on large multiples of 5 or 10 times the lodestar.").

As the court noted in *In re Superior Beverage/Glass Container Consol. Pretrial*, 133 F.R.D. 119, 131 (N.D. Ill. 1990): "There should be no arbitrary ceiling on multipliers." This is especially true when a lodestar/multiplier is used merely as a cross-check on reasonableness. To find otherwise undermines the principles supporting the percentage approach and encourages needless lodestar building litigation. *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the requested award simply for the sake of doing so when every other factor ordinarily considered weighs in favor of approving class counsel's request of thirty percent."). Indeed, the multiplier here is amply supported by the substantial nature of the recovery.

Finally, the time involved is just one factor of many to be considered by the court in awarding a fair fee. *See In re Harrah's Entm't*, No. 95-3925, 1998 WL 832574, at *5 (E.D. La. Nov. 25, 1998) ("Because counsel prosecuted this action on a contingent fee basis, the Court would rather focus on results obtained. To overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services."). *See also Xcel*, 364 F. Supp. 2d at 992 (early settlements are consistent with the purposes of the Federal Rules of Civil Procedure, and modest lodestars are the result of efficient

case prosecution). Here, Lead Plaintiff's Counsel served the Class well by effectively and efficiently litigating the case.

### F.    The Class's Reaction to the Fee Request

To date, the Claims Administrator has sent over 38,500 copies of the Notice to members of the Class informing them, *inter alia*, that Lead Plaintiff's Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 27% of the Settlement Fund, plus expenses not to exceed $400,000, plus interest on both amounts. The time to object to the fee request expired on September 25, 2009. Not a single objection to the fee and expense request has been received. "[S]uch a low level of objection is a 'rare phenomenon.'" *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (citation omitted). Moreover, "a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object [to the settlement] had they believed [the settlement was unfair or] the requested fees were excessive." *Id*. The fact that no objections were received is compelling evidence of the fairness of the fee request.

## V.    LEAD PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS ACTION

Lead Plaintiff's Counsel also respectfully request $291,553.76 in expenses incurred while prosecuting this action. Lead Plaintiff's Counsel have submitted separate attestations regarding the accuracy of these expenses, which are properly recovered by counsel. *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable out-of-pocket expenses necessary to the representation of the class). Most of Lead Plaintiff's Counsel's expenses were incurred for professional services rendered by Lead Plaintiff's investigators, experts, and consultants. The remaining expenses are attributable to the costs of computerized research, copying documents, and other incidental expenses incurred in the course of litigation. These expenses were critical to Lead Plaintiff's success in achieving the

proposed Settlement. *See Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [and] [f]or this reason, they are properly chargeable to the Settlement fund."). Not a single objection to the expense request has been received. Accordingly, Lead Plaintiff's Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VI.    LEAD PLAINTIFF REIMBURSEMENT

Under the PSLRA, the Court may also award "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of the class." *See* 15 U.S.C. §78u-4(a)(4). Lead Plaintiff Laborers Pension Trust Fund for Northern Nevada requests $5,798.10 as reimbursement for expenses actually incurred by it for its participation in the Litigation. As set forth in the accompanying Declaration of Richard Daley ("Daley Decl."), the fund paid $2,000 to James Mace, a representative of the fund's third-party administrator, for time spent giving deposition testimony and for other work spent on the case. In addition, the fund incurred $3,798.10 in travel expenses for Mr. Mace's travel from Reno, Nevada, to New York to give his deposition. Daly Decl., ¶4; Rothman Decl., ¶¶109-113. Lead Plaintiff's Counsel believe this reimbursement is reasonable and furthers the PSLRA's goals of seeking adequate representation for aggrieved shareholders.

## VII.     CONCLUSION

Based on the foregoing and the entire record herein, Lead Plaintiff's Counsel respectfully request that the Court award attorneys' fees of 27% of the Settlement Fund plus expenses in the amount of $291,553.76, plus interest on both amounts, as provided for by 15 U.S.C. §78u-4(a)(6). In addition, Lead Plaintiff's Counsel request that the Court award Lead Plaintiff Laborers Pension Trust Fund for Northern Nevada $5,798.10 in reimbursement of costs and expenses pursuant to 15 U.S.C. §78u-4(a)(4).

DATED:  October 2, 2009                    Respectfully submitted,

                                           COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                           SAMUEL H. RUDMAN
                                           ROBERT M. ROTHMAN
                                           58 South Service Road, Suite 200
                                           Melville, NY  11747
                                           Telephone:  631/367-7100
                                           631/367-1173 (fax)

                                           COUGHLIN STOIA GELLER
                                             RUDMAN & ROBBINS LLP
                                           ELLEN GUSIKOFF STEWART
                                           JONAH H. GOLDSTEIN


                                                    *s/ Ellen Gusikoff Stewart*
                                           _____
                                               ELLEN GUSIKOFF STEWART

                                           655 West Broadway, Suite 1900
                                           San Diego, CA  92101
                                           Telephone:  619/231-1058
                                           619/231-7423 (fax)

                                           Lead Counsel for Plaintiffs

JENKINS & CARTER
NATHAN M. JENKINS
501 Hammill Lane
Reno, NV  89511-1004
Telephone:  775/829-7800
775/829-0511 (fax)

Additional Counsel for Plaintiff

Document1

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 2, 2009.

                             *s/ Ellen Gusikoff Stewart*
                             ELLEN GUSIKOFF STEWART

                             COUGHLIN STOIA GELLER
                                 RUDMAN & ROBBINS LLP
                             655 West Broadway, Suite 1900
                             San Diego, CA  92101-3301
                             Telephone: 619/231-1058
                             619/231-7423 (fax)

                             E-mail:elleng@csgrr.com

# Mailing Information for a Case 1:07-cv-08252-SAS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mario Alba , Jr**
  malba@csgrr.com,e_file_ny@csgrr.com,drosenfeld@csgrr.com

- **Michael J. Gilbert**
  michael.gilbert@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Jonah H. Goldstein**
  Jgoldstein@csgrr.com

- **Robert Jeffrey Jossen**
  robert.jossen@dechert.com,bryan.block@dechert.com,luis.lopez@dechert.com

- **Fainna Kagan**
  fkagan@csgrr.com

- **Jonathan D Polkes**
  scott.woller@weil.com,jonathan.polkes@weil.com,georgia.magno@weil.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com

- **Robert M. Rothman**
  rrothman@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Ellen Anne Gusikoff Stewart**
  elleng@csgrr.com

- **Richard P. Swanson**
  richard_swanson@aporter.com,anthony_boccanfuso@aporter.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

Manual List
*Hall v. The Children's Place Retail Stores, Inc., et al.*
Civil Action No. 1:07-cv-08252-SAS


Nathan M. Jenkins
Jenkins & Carter
501 Hammill Lane
Reno, NV  89511-1004